Case No. 3:21-cv-01895-D

---

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

---

In the Matter of: Highland Capital Management, L.P.,

      Debtor.

---

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust,

      Appellants,

v.

Highland Capital Management, L.P.,

      Appellee.

---

## JOINT OPENING BRIEF OF THE APPELLANTS

---

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

| | |
|---|---|
| Davor Rukavina, Esq.<br>Julian P. Vasek, Esq.<br>**MUNSCH HARDT KOPF & HARR, P.C.**<br>500 North Akard St., Ste. 3800<br>Dallas, Texas 75201-6659<br>Telephone: (214) 855-7500<br>Facsimile: (214) 855-7584<br><br>**ATTORNEYS FOR APPELLANT NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.** | Douglas Scott Draper, Esq.<br>**HELLER, DRAPER & HORN, L.L.C.**<br>650 Poydras Street, Suite 2500<br>New Orleans, LA 70130-0000<br><br>**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST** |

---

Case No. 3:21-cv-01895-D

---

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

In the Matter of: Highland Capital Management, L.P.,

     Debtor.

---

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust,

     Appellants,

v.

Highland Capital Management, L.P.,

     Appellee.

---

## CERTIFICATE OF INTERESTED PERSONS

---

     The undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

    **1.**    **Appellants filing this brief**:

        **NexPoint Advisors, L.P.**
            Owned by:
                The Dugaboy Investment Trust
                NexPoint Advisors GP, LLC
                    Owned by James Dondero

**Highland Capital Management Fund Advisors, L.P.**
    Owned by:
        Highland Capital Management Services, Inc.
        Strand Advisors XVI, Inc.
        Okada Family Revocable Trust

**The Dugaboy Investment Trust**

    Trustees:
        Grant Scott
        Nancy Dondero

2.    <u>**Appellee:**</u>

**Highland Capital Management, L.P.**

    <u>Counsel</u>:
    Melissa Sue Hayward, Esq.
    Zachery Z. Annable, Esq.
    Hayward P.L.L.C.
    10501 N. Central Expy. Ste. 106
    Dallas, TX 75231

    Jeffrey N. Pomerantz
    Pachulski Stang Ziehl & Jones, LLP
    10100 Santa Monica Boulevard, 13th Floor
    Los Angeles, CA 90067

        By:  /s/ Davor Rukavina
            Davor Rukavina, Esq.

        By:  /s/ Douglas Draper
            Douglas Draper, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................v

I.    STATEMENT OF JURISDICTION ..............................................1

II.   STATEMENT OF THE ISSUES ...................................................1

III.  STATEMENT OF THE CASE ........................................................2

    A.    THE PARTIES ....................................................................2
    B.    THE PLAN ........................................................................2
    C.    THE INDEMNIFICATION TRUST ORDER ..................................5

IV.   SUMMARY OF THE ARGUMENT ..............................................6

V.    ARGUMENT....................................................................................8

    A.    STANDARD OF APPELLATE REVIEW.......................................8
    B.    IMPORTANCE OF THE ISSUE/DEMOCRATIC PLAN AND
           MODIFICATION CONFIRMATION PROCESS................................8
    C.    PLAN MODIFICATION UNDER THE BANKRUPTCY CODE.......................11
    D.    THE INDEMNIFICATION TRUST ORDER IS A PLAN MODIFICATION ........13

VI.   CONCLUSION................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Boudreaux v. U.S.*, 280 F.3d 461, 466 (5th Cir. 2002) .............................................8

*Electric Reliability Council of Tex. Inc. v. May (In the Matter of Texas Comm. Energy)*, 607 F.3d 153, 158 (5th Cir. 2010) ...............................................8

*In re Joint Eastern & Southern District Asbestos Ltig.*, 982 F.2d 721,747-749 (2d Cir. 1992) ........................................................13, 20, 21, 22

*In re Ionosphere Clubs Inc.*, 208 BR 812, 815 (S.D.N.Y. 1997) ...........................13

*In re MF Global Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015).....................9, 12

*In re Oakhurst Lodge Inc.*, 582 B.R. 784, 798 (Bankr. E.D. Cal. 2018).................13

*In re Paige*, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990).......................................10

*In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002).............13, 14, 15, 20

## Statutes and Rules

11 U.S.C. § 363(b) .................................................................................................9

11 U.S.C. § 1127 ................................................................................................9, 11

11 U.S.C. § 1129 ................................................................................................9, 11

11 U.S.C. § 1142(b) ..............................................................................................20

28 U.S.C. § 158(a)(1)..............................................................................................1

## JOINT OPENING BRIEF OF THE APPELLANTS

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust (collectively, the "Appellants"), hereby submit this *Joint Opening Brief of the Appellants* (the "Brief"), in support of which they would respectfully state as follows:

## I.      STATEMENT OF JURISDICTION

On July 21, 2021, the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") entered its *Order Approving Debtor's Motion for Entry of an Order (I) Authorizing the (a) Creation of an Indemnity Subtrust and (a) Entry Into an Indemnity Trust Agreement and (II) Granting Related Relief* (the "Indemnification Trust Order"). R.6-8. The Appellants timely filed their notice of appeal of the Indemnification Trust Order on August 4, 2021. R.1-5. Accordingly, this Court has subject matter jurisdiction over this Appeal under 28 U.S.C. § 158(a)(1).

## II.      STATEMENT OF THE ISSUES

1.      Did the Bankruptcy Court err as a matter of law in entering the Indemnification Trust Order because the Indemnification Trust Order was a "modification" to the Debtor's confirmed Chapter 11 Plan, such that approval of the modification required compliance with 11 U.S.C. § 1127(b) as opposed to a mere motion governed by 11 U.S.C. § 363(b); *i.e.* confirmation of the modification under 11 U.S.C. § 1129 as opposed to granting a motion?

### III.   STATEMENT OF THE CASE

The Background facts necessary to adjudicate this Appeal are few, simple, and uncontested, even though the facts of the underlying bankruptcy case itself, and the parties' various litigation, are voluminous.

### A.   THE PARTIES

The appellee, Highland Capital Management, L.P. (the "Debtor"), filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on October 16, 2019.  R.482.  The Debtor' business consists primarily of advising investors and managing various investments totaling billions of dollars. R.482.  The Appellants are creditors of the Debtor and in the bankruptcy case, and defendants in various adversary proceedings commenced by the Debtor.

### B.   THE PLAN

On February 22, 2021, the Bankruptcy Court entered its *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified) and (ii) Granting Related Relief* (the "Confirmation Order").  R.476.  The Confirmation Order is presently on direct appeal to the Fifth Circuit, with the Appellants in this Appeal being co-appellants with various other parties.

By the Confirmation Order, the Bankruptcy Court confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the "Plan").  R.567.  Because Class 8 under the Plan (general unsecured

creditors) rejected the Plan, the Bankruptcy Court confirmed the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code over the dissenting vote of Class 8.   R.517; R.520.   Two classes of partnership interests (equity holders) likewise rejected the Plan and the Bankruptcy Court confirmed the Plan on "cramdown" over their rejection.   *See id*.

The Plan allegedly reorganizes the Debtor and, after confirmation, the Debtor will continue to manage various funds and investments as it winds down its operations.   R.480.   With respect to creditors, the Plan creates the "Claimant Trust," a trust "established for the benefit of the Claimant Trust Beneficiaries." R.420.   The Plan transfers much of the property of the Debtor and its estate to the Claimant Trust, to be liquidated for the benefit of the Debtor's creditors.   R.506. The Plan also creates the "Litigation Sub-Trust," as a sub-trust of the Claimant Trust, and vests in the Litigation Sub-Trust most unliquidated causes of action of the Debtor and its estate.   *See id*.   As summarized by the Bankruptcy Court:

> The parties have repeatedly referred to the Plan as an "asset monetization plan" because it involves the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds, subject to the oversight of the Claimant Trust Oversight Board.   The Plan provides for a Claimant Trust to, among other things, manage and monetize the Claimant Trust Assets for the benefit of the Debtor's economic stakeholders.   The Claimant Trustee is responsible for this process, among other duties specified in the Plan's Claimant Trust Agreement.   There is also anticipated to be a Litigation Sub-trust established for the purpose of pursuing certain avoidance or other causes of action for the benefit of the Debtor's economic constituents.

R.480-81.

Among the assets to be transferred to the Claimant Trust is "Available Cash." R.576. "Available Cash" is defined as "any Cash in excess of the amount needed for the Claimant Trust and Reorganized Debtor to maintain business operations as determined in the sole discretion of the Claimant Trustee." R.575. Nowhere in the Plan is the Claimant Trust saddled with any debt in the nature of a promissory note, although the Claimant Trust is responsible for its expenses and ultimately to provide returns to its beneficiaries; *i.e.* the Debtor's creditors. With respect to indemnification, the Plan provides that the Claimant Trust may provide for "reasonable and customary . . . indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Board." R.601. The Plan does not provide for the Claimant Trust to indemnify anyone else.

Recognizing that the Claimant Trust and the reorganized Debtor would engage in litigation and business operations, the Plan required, as a condition precedent to its effectiveness, that the Debtor obtain acceptable directors' and officers' insurance coverage. R-617-18. However, the Plan provided that the Debtor, with the consent of the creditors' committee, could waive this condition precedent. R.617.

## C.   THE INDEMNIFICATION TRUST ORDER

After confirmation of the Plan, but before the Plan became effective, the Debtor was not able to purchase appropriate directors' and officers' insurance as required by the Plan.  R.638.  Accordingly, on June 25, 2021, the Debtor filed with the Bankruptcy Court its *Debtor's Motion for Entry of Order (i) Authorizing the (a) Creation of an Indemnity Subtrust and (b) Entry Into an Indemnity Trust Agreement and (ii) Granting Related Relief* (the "Indemnification Trust Motion"). R.637.

By the Indemnification Trust Motion, the Debtor sought authority to enter into and provide for the following things, different from what the Plan provides for or contemplates:

(i)   in lieu of D&O insurance, a third trust, the "Indemnification Trust," is created, solely to pay for indemnification obligations;

(ii)   the Indemnification Trust is funded with $2.5 million of cash that would otherwise go to the Claimant Trust;

(iii)   in addition, the Claimant Trust issues a promissory note to the Indemnification Trust in the amount of $22.5 million, meaning that, together, up to $25 million of value that would otherwise have been paid to creditors is used to fund the Indemnification Trust; and

(iv)   the universe of entities and people indemnified by the Claimant Trust is greatly expanded from the three provided for in the Plan to now also include the reorganized Debtor, its general partner, and the employees, agents, officers, members, directors, and professionals.

R.643-45.

The Appellants objected to the Indemnification Trust Motion, arguing that the motion represented a "modification" of the Plan, requiring solicitation, voting, and confirmation under section 1127(b) of the Bankruptcy Code, as opposed to simple motion practice governed by the Debtor's business judgment.  After a hearing held on July 19, 2021, the Bankruptcy Court overruled these objections and granted the Indemnification Trust Motion.

On July 21, 2021, the Bankruptcy Court entered its Indemnification Trust Order, and this Appeal followed.

## IV.   SUMMARY OF ARGUMENT

The issue before the Court boils down to one question: does the Indemnification Trust Order represent a "modification" to the confirmed Plan?  If it does, then the Bankruptcy Court erred as a matter of law in entering the Indemnification Trust Order, as a modification to a confirmed plan can only be approved by going through the strict, multi-element confirmation process itself, with related disclosure, solicitation, and voting, as opposed to a simple motion based on the Debtor's business judgment.

The Indemnification Trust Order represents a plan modification as a matter of law because it alters key provisions of the Plan and it alters creditor treatment under the Plan.  Most obviously, it greatly expands the universe of persons and entities who will now be indemnified from those identified in the Plan, and also now includes the reorganized Debtor's and its general partner's employees and

agents, with the Debtor's creditors now indemnifying the Debtor's future operations. The increase in the number of persons covered from those who were to be covered by the D&O insurance raises serious questions as to whether the justification for the new trust is even valid. The expansion of the parties indemnified is itself a Plan modification since it insulates a wider group from liability than that which was anticipated by the confirmed Plan and paid by the creditors.

In addition, whereas the Plan creates two trusts, the Indemnification Trust Order creates yet a third trust, which will use assets otherwise available to pay creditors to pay potential indemnification costs. And, those additional assets amount to **$25 million**, a very material amount which, at a minimum, will be tied up for years instead of promptly distributed to creditors, if not used wholly or in part to pay for indemnification costs. If this is not a modification to a confirmed plan, then it is difficult to envision what would be.

And this is important; this Appeal is not based on procedure. The Plan is a new contract between the Debtor and its creditors, including the Appellants. The Debtor obtained confirmation only upon a trial on the merits of the many strict elements required for confirmation. Creditors voted on the Plan. With the Indemnification Trust Order, however, there was no voting. There were no strict elements to meet. There was only a very deferential "business judgment" standard to apply. In effect, the Debtor found a new way to unilaterally change an accepted

contract, to the prejudice of the contract's counterparties.  But that is precisely why the Bankruptcy Code requires that a modification be approved only upon the satisfaction of the strict confirmation elements; to prevent a debtor from unilaterally changing the treatment that had been solicited, voted on, and confirmed.

## V.   ARGUMENT

### A.   STANDARDS OF APPELLATE REVIEW

This Court reviews the Bankruptcy Court's findings of fact for "clear error," while conclusions of law are reviewed *de novo*.  *See Electric Reliability Council of Tex. Inc. v. May (In the Matter of Texas Comm. Energy)*, 607 F.3d 153, 158 (5th Cir. 2010).  "A finding is clearly erroneous if a review of the record leaves a definite and firm conviction that a mistake has been committed." *Boudreaux v. U.S.*, 280 F.3d 461, 466 (5th Cir. 2002) (internal quotation omitted).  The Appellants submit that this Appeal raises an issue of law only; *i.e.* whether the Indemnification Trust Order represented an impermissible "modification" of the Plan.

### B.   IMPORTANCE OF THE ISSUE/DEMOCRATIC PLAN AND MODIFICATION CONFIRMATION PROCESS

While this Appeal seemingly raises a procedural issue, in fact the issue is very much one of substance.  This Appeal raises the question of whether a

confirmed Chapter 11 plan was modified as a result of the Indemnification Trust Order.

The Debtor proceeded to obtain the order by motion practice, arguing that it could do so pursuant to its business judgment under section 363(b) of the Bankruptcy Code—a fairly easy standard to meet because the Debtor is entitled to deference on its business judgment. *See, e.g., In re MF Global Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015) (business judgment "is entitled to great deference"). The Appellants argued that the Debtor could obtain the relief it sought only by complying with the Bankruptcy Code's provisions for the modification of a confirmed plan, as found in section 1127(b) of the Bankruptcy Code; basically that such relief could be obtained only by satisfaction all of the various and strict elements governing the confirmation of a plan. *See* 11 U.S.C. §§ 1127(b); 1129(a) & (b). This is not merely a procedural difference.

It goes without saying that a debtor cannot confirm a plan as a business transaction under section 363(b) of the Code pursuant to its business judgment. Rather, the confirmation of a Chapter 11 plan is difficult, requires that more than one dozen elements be met, and that the creditors, by class, affirmatively accept the plan. *See* 11 U.S.C. § 1129(a). If a class of creditors rejects the plan, as happened here, then additional strict elements apply before a bankruptcy court can force the plan on the dissenting creditors. *See* 11 U.S.C. § 1129(b). Once a bankruptcy court confirms a plan, the plan is a "<u>binding contract</u> between the

9

debtor and the creditors and controls their rights and obligations." *In re Paige*, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990) (emphasis added).  As a contract, the plan takes mutual consent to modify.  Just as a contract party cannot be permitted to unilaterally change a contract once the contract has been accepted by the counterparty, so too can a Chapter 11 plan not be changed by a debtor without effectively going through the whole confirmation process again.

That is the whole point and the real importance of this appeal: the Debtor cannot unilaterally, through motion practice, modify its "new contract" with its creditors no matter how justified its business decision may be.  Those creditors are entitled to a vote.  If they reject the modification, as they almost certainly would have here,[1] then the Debtor would be held to a very high standard, upon a trial on the merits, of convincing the Bankruptcy Court that the modification is confirmable under "cramdown," something that the Appellants do not believe the Debtor could have obtained.[2]  If a debtor can simply modify a confirmed plan based on its business judgment, including negatively as occurred here, then one may as well not have a confirmation process at all and the courts may as well rubber-stamp whatever a debtor proposes in its reasonable business judgment.

---

[1]     As general unsecured creditors rejected the Plan originally, it is difficult to believe that they would have accepted a modification that decreases their recoveries by up to $25 million.

[2]     The Appellants question whether the Debtor would have obtained the necessary acceptance of a modification by at least one class of impaired creditors, as a condition precedent to "cramdown," and whether the modification would have been approved on "cramdown" as "fair and equitable" in light of the expanded universe of indemnified parties and the materially reduced treatment of unsecured creditors.

C.   PLAN MODIFICATION UNDER THE BANKRUPTCY CODE

The Bankruptcy Code provides for two mechanism for how a Chapter 11 plan may be modified.  Prior to confirmation of the plan, only a plan modification need be filed.  *See* 11 U.S.C. § 1127(a).  The situation is far different, however, once the plan has been confirmed by the bankruptcy court:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

*Id*. at § 1127(b) (emphasis added).

Section 1129 of the Bankruptcy Code is the section governing the confirmation of plan; *i.e.* all of the elements that must be met before a plan can be confirmed, including affirmative creditor acceptance, solicitation by a court-approved disclosure statement, good faith, compliance with the law, and "fair and equitable" treatment under the cramdown standards.  *See* 11 U.S.C. § 1129(a) (confirmation where creditors have accepted plan) & (b) (confirmation under cramdown of creditors who reject the plan).  Thus, where a confirmed plan is being modified, all of the various and strict elements that govern confirmation itself must be satisfied.

There is no question here that the Debtor did not follow this confirmation process, proceeding instead with a simple motion.  Namely, the Indemnification Trust Motion was premised on section 363(b) of the Bankruptcy Code, which governs whether a debtor may engage in transactions outside the ordinary course of its business.  R.645.  As noted above, the standard applicable to a section 363(b) transaction is whether the proposed action is within the Debtor's sound business judgment; a very deferential standard.  *See, e.g., In re MF Global Ltd.*, 535 B.R. 596, 605 (Bankr. S.D.N.Y. 2015).  The Debtor repeatedly argued at the hearing that section 363(b) and not section 1127(b) applied.  R.3652 (22:15-25); 3679 (49:14-16).  Most importantly, the Bankruptcy Court concluded that section 363(b) controlled:

> So I find 363(b)(1) is actually the statute that applies here, and I find that the evidence demonstrated this is a valid exercise of business judgment. Certainly, sound business justification, there's a sound business justification supporting it.

R.3687 (57:10-14).  In fact, the Bankruptcy Court expressly concluded that the Indemnification Trust Motion did not represent a plan modification and that section 1127(b) was inapplicable.  R. 3685 (55:18-20).

The only question, therefore, is whether the Indemnification Trust Motion and the Indemnification Trust Order represent a "modification" of the Plan within the meaning and operation of section 1127(b) of the Bankruptcy Code: if they were a modification, then the Debtor failed to follow the required and exclusive means

to obtain approval of the modification and the Bankruptcy Court erred as a matter of law in entering the Indemnification Trust Order.

## D.    THE INDEMNIFICATION TRUST ORDER IS A PLAN MODIFICATION

While the Bankruptcy Code provides the requirements for how a modification to a confirmed plan becomes approved or not, the Bankruptcy Code does not define what a modification to a confirmed plan is.  Case law, however, confirms that *any* change of creditor treatment under a confirmed plan, or to the legal relationship between the debtor and its creditors, is a modification subject to the requirements of section 1127(b) of the Bankruptcy Code.

In *In Re Ionosphere Clubs Inc*., 208 BR 812, 815 (S.D.N.Y. 1997), the Court found that a modification occurs when there is an alteration of the "legal relationships among the debtor and its creditors and other parties in interest" or when the change to the plan affected the legal relationship among them.  In *In re Joint Eastern & Southern District Asbestos Ltig*., 982 F.2d 721,747-749 (2d Cir. 1992), the Court found a modification occurred when the change to the plan "effectively altered" a creditor's right to payment.  *Accord In re Oakhurst Lodge Inc.*, 582 B.R. 784, 798 (Bankr. E.D. Cal. 2018) ("settlement that 'alters the legal relationships among the debtor and its creditors' under the confirmed plan constitutes a plan modification").

In this respect, the Fifth Circuit's opinion in *United States Brass Corp.* is directly on point and is binding.  *In re United States Brass Corp.*, 301 F.3d 296

(5th Cir. 2002). The confirmed plan in that case provided that the claims of certain key creditors, which claims were subject to disputed insurance coverage, would be litigated in courts of competent jurisdiction. *See id*. at 300-01. After confirmation of the plan, the debtor filed a motion with the bankruptcy court to approve a limited agreement between the debtor and the creditors to arbitrate the underlying claims instead, to which the insurers objected. *See id*. at 302. As here, the Fifth Circuit noted that "the true issue is whether the proposed agreement constitutes an impermissible attempt to modify the plan."[3]  *Id*. at 307.

The Fifth Circuit had little trouble in concluding that the seemingly small change from trying the claims in a court to trying the claims through arbitration was a "modification" within the meaning and scope of section 1127(b) of the Bankruptcy Code. *See id*. at 307. As explained by the circuit:

> As confirmed, the plan contemplates liquidation of the claims through 'litigation in a court of competent jurisdiction' rather than arbitration. Although the plan permits the Appellants to end the required litigation by settling the claims, the Insurers were confident at the time of confirmation that a voluntary settlement reducing the claims to a fixed dollar amount would be subject to their approval under the terms of the policies. And if the Appellants chose, instead, to pursue the claims to final judgment, the proceedings would be adversarial and each side would enjoy the safeguards associated with a judicial forum. Accordingly, under either method of determination, 'settlement or final judgment,' there were factors minimizing the risk of collusion. The Insurers now fear that, through arbitration, the Appellants will collusively generate a binding award that is inconsistent with the facts

---

[3] Unlike here, the plan in *United States Brass Corp.* had been substantially consummated at the time of the debtor's motion, and section 1127(b) provides that no modification to a plan is possible where the plan has been substantially consummated.

and applicable law, but enforceable against the Insurers as if it were a final judgment.  Whether this fear is well-founded is immaterial, for we are persuaded that the Insurers would not have withdrawn their objections to confirmation if the plan's process for resolving the Shell/CNA claims did not ensure the substantive, procedural, and evidentiary protections of litigation.

*Id*. at 307-08.

In other words, it did not even matter that the economics of the plan's treatment of the claims were affected or not affected, or that the timing of payments was affected or not affected, or that the relationship between the debtor and its creditors was affected or not affected.  All that mattered was that a provision of the confirmed plan itself was being modified and, as the original plan effectuated the intentions and expectations of the parties, those intentions and expectations could not be unilaterally changed.

Applying the foregoing, it is clear that the Indemnification Trust Order is a "modification" of the confirmed Plan:

(i)     whereas the Plan created two trusts, the Indemnification Trust Order crates a third trust, the Indemnity Trust, with its own trustee;

(ii)    whereas the Plan contemplated that the Debtor would procure directors and officers liability insurance, which was a (waivable) condition precedent to the effectiveness of the Plan, under the Indemnification Trust Order no such insurance is paid and indemnification obligations are instead paid from the Indemnity Trust;

(iii)   $2.5 million of cash that the Plan requires be paid to the Claimant Trust, for the benefit of creditors, is instead transferred to the

Indemnity Trust, and is thus unavailable to pay creditors, thereby lowering their expected and solicited distribution;[4]

(iv)    in addition, the Claimant Trust, which the Plan creates to pay creditors over time by liquidating various assets, executes a note in the amount of $22.5 million payable to the Indemnity Trust, which new liability of the Claimant Trust is nowhere provided for in the Plan or disclosed to creditors, and which liability must be paid before the beneficiaries of the creditor trust can be paid;

(v)     the effect of all of this is that, while the Debtor always had certain indemnification obligations, whereas the Plan required D&O insurance to pay for the same, the Indemnification Trust Order now instead provides for up to $25 million of creditor recoveries being used to pay these obligations, thus significantly reducing distributions to creditors (and, even if not a penny of these funds is actually used to pay indemnification, certainly delaying the distribution of these funds by a period of years as limitations on possible indemnification claims expire); and

(vi)    the persons now indemnified has been greatly expanded from those who were to receive protection pursuant to the Plan to include a large amount of new entities and persons.

Not only does all of the foregoing modify creditor rights and expectations under the Plan, but the Indemnification Trust Order directly contradicts the express provisions of the Plan. The Plan expressly lists the purposes of the Creditor Trust:

The Claimant Trust shall be established for the purpose of (i) managing and monetizing the Claimant Trust Assets, subject to the terms of the Claimant Trust Agreement and the oversight of the Claimant Trust Oversight Committee, (ii) serving as the limited partner of, and holding the limited partnership interests in, the

---

[4]    The Debtor may argue that these funds would be returned to the Claimant Trust if no indemnification claims are paid. However, this would only be years into the future, and the Indemnification Trust is certain to have large fees and expenses of maintaining its existence, administering its assets, and addressing indemnification claims. In all likelihood that is why $2.5 million is funded in cash and the rest with debt; because the fees and expenses of administering the Claimant Trust will be this amount over the years.

> Reorganized Debtor, (iii) serving as the sole member and manager of New GP LLC, the Reorganized Debtor's general partner, (iv) in its capacity as the sole member and manager of New GP LLC, overseeing the management and monetization of the Reorganized Debtor Assets pursuant to the terms of the Reorganized Limited Partnership Agreement; and (v) administering the Disputed Claims Reserve and serving as Distribution Agent with respect to Disputed Claims in Class 7 or Class 8.
>
> In its management of the Claimant Trust Assets, the Claimant Trust will also reconcile and object to the General Unsecured Claims, Subordinated Claims, Class B/C Limited Partnership Interests, and Class A Limited Partnership Interests, as provided for in this Plan and the Claimant Trust Agreement, and make Trust Distributions to the Claimant Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

R.442-43.  None of these purposes have anything to do with indemnification.  That being said, the Creditor Trust is responsible for certain indemnification, with respect to which the Plan provides that:

> Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.
>
>                *      *      *
>
> The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee.  Any such indemnification shall be the sole responsibility

<u>of the Claimant Trust and payable solely from the Claimant Trust Assets</u>.

R.444 (emphasis added).

This is important.  Under the Plan the Claimant Trust may indemnify its own trustee, the litigation subtrust trustee, and the members of the trust oversight board—all fine and normal.  And it may do so "solely" from its assets.  Under the Indemnification Trust Order, however, the scope of this indemnification is much broader and now includes the "Indemnified Parties," which, unlike the Plan, now include: a new Delaware trustee, all employees, agents, and professionals of any trustee or the members of the oversight board, the new general partner created for the reorganized Debtor, and employees, members, partners, directors, officers, and agents of the reorganized Debtor and its general partner.  R.643 (at n.8) & R.644. Indeed, the Creditor Trust, created to benefit old creditors, now also effectively indemnifies the reorganized Debtor, its general partner, and all of their employees, their attorneys, etc., for their future business operations having nothing to do with the Creditor Trust.  And, whereas the Plan contemplated that the Creditor Trust would create a reserve to pay for potential future indemnification claims, the Indemnification Trust Order requires that $2.5 million of its actual, hard assets be transferred, and that it obligate itself for $22.5 million more of priority debt, for a period of many years to come.

Under any metric and analysis, therefore, the Indemnification Trust Order is a "modification" of the Plan. Instead of insurance paying most if not all indemnification claims, a new trust pays the claims. $2.5 million of money set aside for creditors is immediately transferred to the new trust, instead of vesting in the Creditor Trust. The Creditor Trust incurs debt of $22.5 million in priority to the rights of beneficiaries to be paid on their claims. Numerous new persons and entities are indemnified, including entities and persons who operate a business into the future, instead of merely administering a trust.

The Bankruptcy Court concluded that the Indemnification Trust Order was not a modification of the Plan.

> I overrule the objection notion that 1127 applies here, that this is a proposed plan modification postconfirmation. I think, clearly, the plan -- this is certainly within the literal terms of the plan, what is happening here. As pointed out in opening argument, the plan at Article IV(B)(5) contained a provision addressing that a reserve might be established for potential indemnification claims. Then, as pointed out, Section 6.1(a) and (d) of the Claimant Trust Agreement contemplated a potential reserve. The Litigation Trust Agreement also contemplated it. The Limited Partnership Agreement for the Reorganized Debtor contemplates it. And I don't think what we have here with this new Indemnification Sub-Trust is anything that goes materially astray from the concepts built into the plan.
>
>          *     *     *
>
> Moreover, as pointed out in the presentations, there's certainly nothing in the plan that explicitly prohibits this mechanic of an Indemnification Trust. Parties cited to Article IV(D) of the plan, which is a provision that essentially allows implementation actions, mechanics, documents, in furtherance of the plan. And I find that's exactly what this is.

R.3685-86 (55:18-56:20).

This was error as a matter of law. First, *United States Brass Corp.* forecloses the conclusion that a modification of a plan is permissible as an aid in the consummation of a plan. *In re United States Brass Corp.*, 301 F.3d 296 (5th Cir. 2002). In that opinion, the Fifth Circuit considered section 1142(b) of the Bankruptcy Code, which generally authorizes a bankruptcy court to enter orders "necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Unlike here, where the Debtor predicated its motion on section 363(b) of the Bankruptcy Code, the *United States Brass Corp.* debtor predicated its motion on this separate section of the Bankruptcy Code, arguing that its request was appropriate and necessary to consummate the plan. Although the Fifth Circuit did not directly conclude section 1142(b) is not an exception to section 1127(b), the result makes that clear: the Fifth Circuit could not have concluded that the bankruptcy court erred as a matter of law because section 1127(b) applied to the debtor's arbitration agreement if section 1142(b) somehow controlled instead. Indeed, to permit section 1142(b) to control would be to effectively write section 1127(b) out of the Bankruptcy Code: any order would be approvable if necessary to consummate a plan, even if it actually or effectively modified the terms of a confirmed plan.

Second, the Bankruptcy Court's rationale is foreclosed by the Second Circuit's opinion in *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 982 F.2d 721 (2d Cir. 1992). That opinion reversed post-confirmation changes to the

governing documents of a trust created under a Chapter 11 plan.   The plan contained a mechanism designed to satisfy past and future asbestos claimants.   *See id*. at 725.   This was to be effectuated through a trust, which would be funded with various assets, including insurance claims, cash, receivables, stock, and future profits from the reorganized debtor.   *See id*.   The plan also contained an injunction channeling all asbestos claims into the trust.   *See id*. at 726.   Asbestos claimants would be required to attempt to settle their claims with the trust and, if no settlement was reached, the claimant may elect mediation, arbitration, or traditional tort ligation.   *See id*.   After the plan was confirmed, the trust was inundated with claims and was deeply insolvent, soon to run out of money.   *See id*. at 727-28. This led to a settlement whereby trust claimants would only be paid pursuant to a new "trust distribution process," which included placing asbestos claims into differing levels of severity.   *See id*. at 729.   The bankruptcy court approved this settlement by motion practice.   The Second Circuit had no difficulty reversing this approval as an impermissible plan "modification":

> Even if the concept of 'modification' implies some distinction between significant changes of substance, which are prohibited, and minor changes of procedure, which might be allowed, the alterations accomplished by the Settlement are both substantive and significant. Health claimants who formerly stood on an equal footing, entitled to payment in the order their claims were filed, and with jury trial rights unimpaired, emerged divided into two groups, with differing rights as to maximum amounts recoverable and as to timing and rate of payments. The FIFO ordering of payments was scrapped.   For all claimants, the opportunity to have a jury determine the amount of their damages was drastically curtailed by the disincentive created by

the payment of jury verdicts in excess of offers or arbitration awards
only out of a secondary pool of money, unlikely to have sufficient
resources to meet its obligations.

*Id*. at 747-48.

Perhaps more important was the secondary argument by the debtor, to the
effect that it was not the plan itself being modified but rather an ancillary plan
document, and then one where the original, approved document provided that "The
Company . . . and the Trustees . . . may, after consultation with Selected Counsel
for the Beneficiaries, modify, supplement or amend this Trust Agreement [with
exceptions not relevant to this dispute] in any respect." *Id*. at 746.  The Second
Circuit rejected this argument:

> The question remains whether a change that would contravene section
> 1127(b) if made in the provisions of a plan can be accomplished by
> modifying the provisions of a plan-related document.  The answer
> must be no.  The rights of creditors, bargained for during the
> negotiations that preceded the presentation and confirmation of the
> Plan cannot depend on whether those rights were spelled out in a
> document labeled 'plan' or in an attached document labeled 'exhibit'
> or 'annex.'  What controls is the substance of the change, not the title
> of the document that is changed.  In this case, the Plan requires
> payment of the full amount of all allowed Class-4 claims.  The change
> effectively alters that payment right.  It cannot be that the change
> would be barred if it dealt directly with the language of section 3.4 of
> the Plan, defining the rights of Class-4 creditors, but can just as
> effectively be accomplished by amending Annex B (Claims
> Resolution Procedures) of Exhibit C (Trust Agreement) of the Plan.

*Id*. at 748.

Likewise here, it does not matter that the Plan may have contemplated
subsequent amendments to its governing documents or other documents approved

at confirmation, and that the same may be said to be the implementation of the Plan, as the Bankruptcy Court concluded: when the changes modify rights vested under a confirmed Plan, then the changes are a plan modification that can only be approved as such and not by way of motion practice.  And, as noted above, there is no question here that the Indemnification Trust Order modified rights and expectations after voting and confirmation: a new trust, $2.5 million of cash, $22.5 million of new debt, and a large number of new parties being indemnified, all at the expense of the Debtor's creditors and their recoveries under the Plan.

## VI.    CONCLUSION

The Indemnification Trust Order represents a modification of the Plan because it alters the rights of creditors, alters the legal relationship provided for in the Plan, alter the treatment of $25 million of Claimant Trust assets and recoveries, and greatly expands the universe of persons indemnified from that expressly provided for in the Plan.  As such, the Indemnification Trust Order could only have been entered upon the Debtor's satisfaction of all confirmation element required by section 1129(a) and (b) of the Bankruptcy Code, as opposed to the Debtor's business judgment upon simple motion practice.  The Bankruptcy Court therefore erred as a matter of law in entering the Indemnification Trust Order and this Court should reverse and render judgment accordingly.

RESPECTFULLY SUBMITTED this 18th day of October, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Davor Rukavina

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
500 N. Akard St., Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: drukavina@munsch.com
Email: jvasek@munsch.com

**ATTORNEYS FOR APPELLANTS
NEXPOINT ADVISORS, L.P. AND
HIGHLAND CAPITAL MANAGE-
MENT FUND ADVISORS, L.P.**

-- and --

**HELLER, DRAPER & HORN, L.L.C.**

By:  /s/ Douglas Draper

Douglas Scott Draper, Esq.
650 Poydras Street
Suite 2500
New Orleans, LA 70130-0000
Email: ddraper@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY
INVESTMENT TRUST**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 18th day of October, 2021, he caused a true and a correct copy of the foregoing document to be served on counsel for the Appellee, Highland Capital Management, L.P., including through Jeff Pomerantz , Esq., one of its counsel of record.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)</u>

1.     This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because this brief contains 6,009 words, excluding the parts of the brief exempted by Rule 8015(g).

2.     This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14 pt. font.

Dated:  October 18, 2021.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.

4825-3773-4911v.1 019717.00001