Case No. 3:21-cv-01895-D

---

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

In the Matter of: Highland Capital Management, L.P.,

        Debtor.

---

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust,

        Appellants,

v.

Highland Capital Management, L.P.,

        Appellee.

---

## APPELLANTS' OBJECTION TO MOTION TO DISMISS APPEAL

---

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

<table>
<tr><td>

Davor Rukavina, Esq.
Julian P. Vasek, Esq.
**MUNSCH HARDT KOPF & HARR, P.C.**
500 North Akard St., Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR APPELLANT NEXPOINT  ADVISORS, L.P.  AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

</td><td>

Douglas Scott Draper, Esq.
**HELLER, DRAPER & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-0000

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

</td></tr>
</table>

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

I.      SUMMARY OF RESPONSE ......................................................................1

II.     FACTUAL BACKGROUND..........................................................................3

III.    ARGUMENT.................................................................................................6

        A.      EQUITABLE MOOTNESS GENERALLY ......................................................6

        B.      EQUITABLE MOOTNESS APPLIES TO COMPLICATED
                REORGANIZATION PLANS AS OPPOSED TO MOTIONS
                OR LIQUIDATION PLANS LIKE HERE.......................................................8

        C.      NO INNOCENT CREDITORS TO PROTECT ...............................................13

        D.      THE DEBTOR HAS FAILED TO EVIDENCE ANY IMPRACTICABILITY OF
                GRANTING RELIEF ...............................................................................15

IV.     CONCLUSION...........................................................................................19

CERTIFICATE OF SERVICE ...........................................................................21

CERTIFICATE OF COMPLIANCE ..................................................................21

i

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ................................................................................................................7

*In the Matter of Blast Energy Servs.*, 593 F.3d 418 (5th Cir. 2010) ...........6, 7, 9, 17

*In the Matter of Grimland Inc.*, 243 F.3d 228 (5th Cir. 2001) ..................................9

*In the Matter of Hilal*, 534 F.3d 498 (5th Cir. 2008).......................................2, 7, 8,

*In the Matter of Idearc Inc.*, 662 F.3d 315 (5th Cir. 2011) ....................................13

*In the Matter of Tex. Grand Prairie Hotel Realty, LLC*, 710 F.3d 324
    (5th Cir. 2013).............................................................................................6, 13, 17

*In the Matter of Scopac*, 624 F.3d 274 (5th Cir. 2010) ......................................7, 14

*In the Matter of Sneed Shipbuilding Inc.*, 914 F.3d 1000
    (5th Cir. 2019)....................................................................................6, 8, 9, 10, 11

## APPELLANTS' OBJECTION TO MOTION TO DISMISS APPEAL

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust (collectively, the "Appellants"), hereby submit this *Objection* to the *Appellees' Motion to Dismiss Appeal as Equitably Moot* (the "Motion"), filed by Highland Capital Management, L.P. (the "Debtor").

## I.      SUMMARY OF RESPONSE

Equitable mootness only applies to Chapter 11 plans of reorganization and not to appeals of motion practice orders, as is the case here. Indeed, that is the whole point of this Appeal—the Debtor argues that the motion granted by the Bankruptcy Court was not a modification to its Plan. Only if that motion was a modification to the Plan could equitable mootness ever apply, but then the Debtor would *a priori* lose this Appeal.

Nor can equitable mootness otherwise apply to this Appeal. Equitable mootness conflicts with the Court's virtually unflagging obligation to exercise its jurisdiction—especially pertinent to reviewing an Article I bankruptcy court. Equitable mootness applies to extraordinarily complicated reorganization plans involving myriad parties; not simple liquidation plans like this one involving only a few parties. Equitable mootness applies to protect innocent creditors from the prejudice of having a plan reversed; not to protect sophisticated parties who assumed the risk of reversal. Equitable mootness does not protect a debtor who pushed the boundaries of Chapter 11 confirmation, hoping to avoid appellate review by hurrying

to "scramble the eggs." And, "equity strongly supports appellate review of issues consequential to the integrity and transparency of the Chapter 11 process." *In the Matter of Hilal*, 534 F.3d 498, 500 (5th Cir. 2008).

If the Court reverses the Bankruptcy Court, all that will happen is that the indemnification sub-trust created to pay the indemnification claims of certain professionals will no longer exist. Property transferred to the indemnification sub-trust would simply revert to the Debtor. The indemnification sub-trust has made no payments to-date to disgorge and, if it does, any issues of disgorgement are easily resolved. These indemnified parties are not "creditors" anyway, and it is with payments to creditors that equitable mootness is concerned. Most importantly, the Debtor chose to take its Plan effective without directors and officers insurance, and instead to rely on the indemnification sub-trust that it created months later by motion practice. Having voluntarily assumed the risk that such course of action will lead to a reversal, rather than obtaining other insurance or going through the plan modification process, the Debtor cannot now invoke equitable mootness to avoid appellate scrutiny.

Equitable mootness simply does not apply, procedurally or substantively. There are no "eggs" to "unscramble" here. The Court can reverse the underlying order without any prejudice to any innocent creditors—at most, only to post-confirmation professionals who assumed the risk, but even then they are still entitled to indemnification as originally provided for in the Plan.

## II.   <u>FACTUAL BACKGROUND</u>

The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on October 16, 2019.  R. 482.  The Debtor' business consists primarily of advising investors and managing various investments totaling billions of dollars.  R. 482.  This exposes the Debtor to potential claims from third parties; hence the issue of indemnification.

On February 22, 2021, the Bankruptcy Court entered an order (the "<u>Confirmation Order</u>"), R. 476, by which it confirmed the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (As Modified)* (the "<u>Plan</u>"). R. 567.  Of interest to equitable mootness, because Class 8 under the Plan (general unsecured creditors) rejected the Plan, the Bankruptcy Court confirmed the Plan under the "cramdown" provisions of section 1129(b) of the Bankruptcy Code over Class 8' dissenting vote.  R. 517; R. 520.  Two classes of partnership interests (equity holders) likewise rejected the Plan, and the Bankruptcy Court confirmed the Plan on "cramdown" over their rejection.  *See id*.  The Appellants, among others, appealed the Confirmation Order and the direct appeal is pending in the Fifth Circuit.

The Plan allegedly reorganizes the Debtor and, after confirmation, the Debtor will continue to manage various funds and investments as it winds down its operations.  R. 480.  With respect to creditors, the Plan creates the "Claimant Trust," a trust "established for the benefit of the Claimant Trust Beneficiaries."  R. 420.  The Plan transfers much of the Debtor's and its estate's property to the Claimant Trust,

to be liquidated for the benefit of the Debtor's creditors.  R. 506.  The Plan also creates the "Litigation Sub-Trust," under the Claimant Trust, and vests in the Litigation Sub-Trust most unliquidated causes of action belonging to the Debtor and its estate.  *See id.*

The Plan originally contained, as a condition precedent to its effectiveness, a requirement that the Debtor obtain directors and officers insurance to protect itself and the creditors against post-confirmation claims—a major issue at confirmation. R. 617-18.  However, the Plan provided that the Debtor, with the consent of the creditors' committee, could waive this condition precedent.  R. 617.  After confirmation of the Plan, but before the Plan became effective, the Debtor claims it was not able to purchase appropriate directors' and officers' insurance as required by the Plan.  R. 638.

Accordingly, on June 25, 2021, the Debtor filed with the Bankruptcy Court its *Debtor's Motion for Entry of Order (i) Authorizing the (a) Creation of an Indemnity Subtrust and (b) Entry Into an Indemnity Trust Agreement and (ii) Granting Related Relief* (the "Indemnification Trust Motion").  R. 637.  By the Indemnification Trust Motion, the Debtor sought authority to enter into and provide for the following things, different from what the Plan provides or contemplates:

(i)     in lieu of D&O insurance, a third trust, the "Indemnification Trust," is created, solely to pay for indemnification obligations;

(ii)    the Indemnification Trust is funded with $2.5 million of cash that would otherwise go to the Claimant Trust;

(iii)   in addition, the Claimant Trust issues a promissory note to the Indemnification Trust in the amount of $22.5 million, meaning that, together, up to $25 million of value that would otherwise have been paid to creditors is used to fund the Indemnification Trust; and

(iv)   the universe of entities and people indemnified by the Claimant Trust is greatly expanded from the three provided for in the Plan to now also include the reorganized Debtor, its general partner, and their employees, agents, officers, members, directors, and professionals.

R. 643-45.

The Appellants objected to the Indemnification Trust Motion, arguing that the motion represented a "modification" of the Plan, requiring solicitation, voting, and confirmation under section 1127(b) of the Bankruptcy Code, as opposed to simple motion practice governed by the Debtor's business judgment.  After a hearing held on July 19, 2021, the Bankruptcy Court overruled these objections and granted the Indemnification Trust Motion with its *Order Approving Debtor's Motion for Entry of an Order (I) Authorizing the (a) Creation of an Indemnity Subtrust and (a) Entry Into an Indemnity Trust Agreement and (II) Granting Related Relief* (the "Indemnification Trust Order").  R.6-8.

This Appeal followed.  The primary issue—indeed, the determinative issue— in this Appeal is whether the Indemnification Trust Order effectuates a "modification" of the Plan.  If it does, as the Appellants argue, then the Bankruptcy Court erred as a matter of law by entering the Indemnification Trust Order because the Debtor and the Bankruptcy Court did not follow the strict, multi-element

requirements for approving a plan "modification," especially relevant here where general unsecured creditors rejected the Plan. If, however, the Debtor correctly proceeded by motion practice based on its "business judgment," a highly deferential standard, then the Court should adjudicate this Appeal in the Debtor's favor.

For this simple reason—an issue that is an issue of law only—the pages of alleged facts and self-serving spins that the Debtor presents regarding the alleged vexatiousness and bad faith of Mr. Dondero and entities affiliated with him (which the Appellants certainly and proudly are) are simply irrelevant. And, to be clear, the Plan itself is not the subject of this Appeal and, however the Court decides the Indemnification Trust Order, the Plan itself will not be unwound, reversed, or vacated. The "sky" will not "fall" and Mr. Dondero will not "burn the place down" if the Debtor no longer has an indemnification sub-trust in place.

## III.   ARGUMENT

### A.   EQUITABLE MOOTNESS GENERALLY

"[T]his Circuit has taken a narrow view of equitable mootness." *In the Matter of Tex. Grand Prairie Hotel Realty, LLC*, 710 F.3d 324, 328 (5th Cir. 2013). The Fifth Circuit is "more hesitant to invoke equitable mootness than many circuits, treating it as a 'scalpel rather than an axe.'" *In the Matter of Sneed Shipbuilding Inc.*, 914 F.3d 1000, 1003 (5th Cir. 2019). In applying equitable mootness, it is each individual claim or appellate argument that is scrutinized for mootness and not the appeal as a whole. *See In re Blast Energy Servs.*, 593 F.3d 418, 425 (5th Cir. 2010).

Equitable mootness applies "only when the reorganization has progressed too far for the requested relief practicably to be granted." *Id*. at 424.  It is that last requirement that is key: "[a]n appeal is equitably moot when a plan of reorganization has been so substantially consummated that a court cannot order effective relief." *In the Matter of Hilal*, 534 F.3d at 500.

Moreover, "equitable mootness is prudential, not jurisdictional." *In re Blast Energy Servs.*, 593 F.3d at 424.  In other words, dismissal is not mandatory but is discretionary, especially as it conflicts with the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  As long at the Court can fashion some relief, dismissal is unwarranted.  *See In the Matter of Scopac*, 624 F.3d 274, 282 (5th Cir. 2010).

It is noteworthy that the Debtor mostly ignores this case law (and the case law discussed below) and glosses over the strictness and rarity with which equitable mootness is applied in this Circuit.  It should not escape the Court's attention that the Debtor spends page after page attempting to besmirch Mr. Dondero and entities affiliated with him, as opposed to discussing the relevant law and presenting relevant facts as to why equitable mootness applies—certainly equitable mootness does not and cannot apply based on the alleged vexatiousness of any given party.  It should also not escape the Court's attention that the Debtor takes conclusory allegations it

has made previously in the course of the bankruptcy and now restates them as fact.[1]

Most of all, the Court should see the Debtor's arguments for what they are, which is to use hyperbolic and incendiary allegations to cloud the issues in a mistaken belief that the Court will decide an issue of such importance as equitable mootness because the Debtor thinks Mr. Dondero is a "bad guy."

## B.   EQUITABLE MOOTNESS APPLIES TO COMPLICATED REORGANIZATION PLANS AS OPPOSED TO MOTIONS OR LIQUIDATION PLANS LIKE HERE

Equitable mootness takes away appellate rights and conflicts with this Court's duty to exercise its jurisdiction.  Something extraordinary must be required for so severe a result.  And that thing is a complicated reorganization, involving multiple complex issues and numerous parties, vast expectations, and potentially catastrophic consequences to a business venture and its constituents in the event a consummated plan is reversed.  In a nutshell, the collective expectations of numerous constituents trump the appellate rights of the individual.

Equitable mootness, therefore, "requires a reorganization plan."  *Sneed Shipbuilding*, 914 F.3d at 1003 (emphasis added).  "An appeal is equitably moot when a plan of reorganization has been so substantially consummated that a court cannot order effective relief."  *Hilal*, 534 F.3d at 500 (emphasis added).  "[I]t is a doctrine that courts have developed in response to the particular problems presented

---

[1]     For example, the Motion thrice alleges Mr. Dondero and the Appellants are "frivolous and vexatious," but there has been no finding that the Appellants are vexatious litigants.

by the consummation of <u>plans of reorganization</u>."  *In the Matter of Grimland Inc.*, 243 F.3d 228, 231 (5th Cir. 2001) (emphasis adddded).  "Equitable mootness is aimed at limiting review of <u>complex plans</u>."  *Sneed Shipbuilding Inc.*, 914 F.3d at 1003 (emphasis added).  Equitable mootness applies "only <u>when the reorganization has progressed too far</u>."  *Blast Energy Servs.*, 593 F.3d at 424 (emphasis added).

The Debtor wholly ignores this binding precedent that equitable mootness applies only to plan confirmation orders and not to appeals of motions (as it ignores the other highly negative precedent cited above).[2]  Nowhere does the Debtor anywhere address the fact that the order under review here was entered not on a Chapter 11 plan, but rather on motion practice.  Indeed, given the underlying issue in this Appeal—whether the Indemnification Trust Order was an impermissible "modification" of the Plan, the only way that equitable mootness could ever apply is if the Indemnification Trust Order was indeed such a "modification," as only then would a Chapter 11 plan provision be under appellate review.  But then the Debtor would lose this Appeal as it would be admitting that the Indemnification Trust Order was a "modification" of its Plan—something which it obviously has not and will not admit.

Indeed, the Fifth Circuit has expressly rejected the extension of equitable mootness to motion practice.  *Sneed Shipbuilding*, 914 F.3d 1000.  The Appellants

---

[2]     Appeals of certain orders entered on motions in bankruptcy are statutorily moot (certain financing and sale orders).

will caution the Court that, in *Sneed Shipbuilding*, the Circuit did dismiss the appeal as moot, but as statutorily moot and not equitably moot. *See id*. at 1004. The two doctrines are separate and must not be confused with each other (*see* footnote 2). Before the Circuit considered statutory mootness, it rejected the appellee's argument that equitable mootness applied to the order under review, which was an order approving a combined bankruptcy sale and settlement.

After reviewing its prior precedent and noting that it rarely applies equitable mootness, the Fifth Circuit concluded as follows:

> We recognize that some courts outside our circuit have employed equitable mootness when reviewing settlement agreements, not just plan confirmations, in particularly messy cases. But that just highlights the second reason why equitable mootness should not apply to the order that New Industries appeals: this settlement and sale were not sufficiently complex. Equitable mootness is aimed at limiting review of complex plans whose implementation has substantial secondary effects. Appellate intervention into reorganization plans of such complexity may affect many innocent third parties. Our ability to produce a single graphic to illustrate the Channelview transaction demonstrates that this case does not rise to that level of complexity. Reversal on appeal would only affect a few third parties, all of whom participated in the bankruptcy court. This does not appear to be the case to expand equitable mootness into new frontiers.

*Id*. at 1003 (internal citations omitted).

In *Sneed Shipbuilding*, therefore, the Fifth Circuit rejected the argument that equitable mootness applies to a bankruptcy motion, although it arguably left open the potential that the doctrine might apply to an extraordinarily complex motion, which this case certainly does not present, as the creation and funding of a trust to

pay indemnification claims is neither "sufficiently complex" nor "particularly messy." The Debtor cites *Sneed Shipbuilding* in its Motion for the proposition that equitable mootness "may be applied in other [non-plan] situations. . ." Motion at p. 16. But that is not what *Sneed Shipbuilding* provides: "[e]quitable mootness is aimed at limiting review of <u>complex plans</u> whose implementation has substantial secondary effects." *Id.* (emphasis added).

Even if equitable mootness may apply to the Indemnification Trust Order, the underlying predicate, as cited and discussed above, is still a complex Chapter 11 plan of <u>reorganization</u>. No opinion applies equitable mootness to a Chapter 11 plan of liquidation, which is what the Plan here really is. In support of the Motion, the Debtor informs the Court of various steps that have been taken and executed, in order to give the Court that impression that much has been done and that eggs have been scrambled. But it all has one purpose: to liquidate the Debtor. The only difference is the form through which the Debtor will do so; namely, liquidating trusts created under the Plan instead of through its pre-confirmation corporate structure. All of the various transactions the Debtor lists—themselves consisting of paper notations only with no substantive affect—are merely tools to liquidate.

As the Bankruptcy Court found:

> [the Plan] involves the orderly wind-down of the Debtor's estate, including the sale of assets and certain of its funds over time, with the Reorganized Debtor continuing to manage certain other funds, subject to the oversight of the Claimant Trust Oversight Board. The Plan provides for a Claimant Trust to, among other things, manage and

monetize the Claimant Trust Assets for the benefit of the Debtor's economic stakeholders.

R. 480.

As further found by the Bankruptcy Court: "the Plan's various mechanisms provide for the Debtor's continued management of its business as it seeks to liquidate the Debtor's assets, wind down its affairs, and pay the Claims of the Debtor's creditors." R. 507. Even the Debtor testified at the confirmation trial that the Plan was a "long-term going-concern liquidation," in which the Debtor estimated that it would "be able to monetize the assets in two years. We could go out longer to three." R. 2241. (112:10-17). The Plan could not be clearer that it is a wind-down and liquidation, for it enjoins any person from taking any action to interfere with "the wind down of the business of the Debtor or Reorganized Debtor." R. 622.

This Court should not be fooled. This is no complicated restructuring case, involving thousands of jobs, product lines, thousands of equity interest holders, unions to negotiate with, governmental approvals and loans to obtain, public markets to satisfy, public debt holders to represent, mass tort victims, or any of the hallmark issues found in complicated and large Chapter 11 reorganizations (*e.g.* American Airlines, General Motors, Dow Corning, the City of Detroit, Texaco, Purdue Pharma, etc.). This is a simple, straightforward, debtor, business, and plan: most assets go to a creditor trust to be liquidated for the benefit of creditors, while the

Debtor continues certain limited operations to wind-down its affairs in approximately two years.

## C.   NO INNOCENT CREDITORS TO PROTECT

The hallmark of equitable mootness is the protection of innocent parties not before the Court; usually innocent creditors who have been paid and may suffer a disgorgement, or third parties who traded in a post-confirmation debtor's debt or equity interests.  It is the impracticability of granting appellate relief without major disruption and prejudice to many innocent third parties that justifies, in exceptional cases, denying someone his appellate rights.  *See, e.g., In the Matter of Idearc Inc.*, 662 F.3d 315, 320 (5th Cir. 2011) (finding plan appeal moot where "[t]he new common stock has been publicly traded since January 6, 2010 and in no small quantity of shares . . . numerous third parties' financial rights would be adversely affected by the proposed *de novo* review.").

The Fifth Circuit has also addressed when equitable mootness is not appropriate, dealing with insiders and those who assume the risk of a plan.  In *In the Matter of Tex. Grand Prairie Hotel Realty, LLC*, 710 F.3d 324 (5th Cir. 2013), the plan had been confirmed, equity holders invested millions of dollars of new money into the debtor, and $8 million was paid out to creditors.  The Fifth Circuit nevertheless rejected the argument that the appeal was equitably moot.  *See id.* at 328.  With respect to the equity investments that might be forfeited if the plan was vacated, the circuit noted, "that a judgment might have adverse consequences [to the

equity holders of the reorganized bankrupt] is not only a natural result of any appeal

. . . but [should have been] foreseeable to them as sophisticated investors."  *Id*. at

329.

Likewise, in *Scopac*, 624 F.3d 274, the plan proponents funded $580 million

and converted $160 million of debt to equity under the plan.  The Fifth Circuit denied

dismissal for equitable mootness notwithstanding these massive investments in

reliance on the plan:

> that a judgment might have adverse consequences to MRC/Marathon is
> not only a natural result of any ordinary appeal--one side goes away
> disappointed--but adverse appellate consequences were foreseeable to
> them as sophisticated investors who opted to press the limits of
> bankruptcy confirmation and valuation rules.  MRC and Marathon
> should not be considered third parties for the purposes of mootness
> analysis in this appeal.

*Id*. at 282.

Here, the Debtor states that the Debtor's managers "would not have agreed to

. . . assist in carrying out the transactions contemplated by the Plan in each case

without the Indemnity Trust and will not remain in those roles unless the Indemnity

Trust remains in existence."  Motion at p. 15.  In other words, the Court should

dismiss this Appeal because the current managers of a liquidating entity may quit—

an unprecedented proposition under any analysis and one which the Debtor fails to

support with any precedent or admissible evidence (while Mr. Seery may testify

about his own intentions, his declaration constitutes inadmissible speculation when

discussing anyone else).

Even so, these insiders (managers, officers, directors, and general partner) are highly sophisticated, and they assumed the risk by agreeing and affirmatively acting to take the Plan effective without directors and officers insurance.  They are not the "innocent" "creditors" equitable mootness aims to protect.  On the contrary, they are exactly the "sophisticated" parties for whom the risk of reversal was "foreseeable" and who "opted to press the limits of bankruptcy."  And, they are the very persons now before the Court—not third persons—in the form of their control of the Debtor.

## D.    THE DEBTOR HAS FAILED TO EVIDENCE ANY IMPRACTICABILITY OF GRANTING RELIEF

While the Debtor states that its managers *may*, not *will*, resign without the protections of the Indemnification Trust Order, the Debtor ignores that the Plan already provides for indemnification, albeit to a smaller number of people.  The Plan provides:

> Except as otherwise ordered by the Bankruptcy Court, the Claimant Trust Expenses shall be paid from the Claimant Trust Assets in accordance with the Plan and Claimant Trust Agreement. The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for potential indemnification claims as authorized and provided under the Claimant Trust Agreement), and shall periodically replenish such reserve, as necessary.
>
> *          *          *
>
> The Claimant Trust Agreement and Litigation Sub-Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Claimant Trust in favor of the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Committee.  Any

---

15

> such indemnification shall be the sole responsibility of the Claimant
> Trust and payable solely from the Claimant Trust Assets.

R.444 (emphasis added).

What the Indemnification Trust Order does, however, is to expand the universe of persons now protected by an indemnification scheme never solicited, contained in, or approved as part of, the Plan: "Indemnified Parties" now include: a new Delaware trustee, all employees, agents, and professionals of any trustee or the members of the oversight board, the new general partner created for the reorganized Debtor, and employees, members, partners, directors, officers, and agents of the reorganized Debtor and its general partner.  R. 643 (at n.8) & R. 644.  Thus, the Indemnification Trust Order greatly expands the universe of indemnified parties, and it places $22.5 million potentially outside the pot for distribution to creditors—in a case where unsecured creditors rejected the Plan by a vote of 27 to 17 (2/3d being required to accept).[3]

The factual predicate behind the Motion is therefore simply lacking: setting aside the Indemnification Trust Order would not undo the Plan, would not undo the Plan's requirements for indemnification, and would not lead to a mass resignation by the trustee and oversight board.  It *would* reverse the massive expansion of indemnification obligations from what they are in the Plan, and it *would* return $22.5 million of assets back to the unsecured creditors, but these things would only

---

[3]     R. 481.

preserve and honor the Plan and not jeopardize it. And, while managers *may* quit, this is not known and they refuse to state definitively that they would quit, while there is no showing of any injury, much less irreparable injury, to the Debtor or unsecured creditors if the managers quit.

If the Indemnification Trust Order is equated to the normal scenario in which equitable mootness is asserted, then the question is whether innocent third parties have already received payments from the Indemnification Trust (as forcing innocent creditors to disgorge payments received in reliance on a plan is one of the factors of equitable mootness). Even this is not determinative, as the Fifth Circuit has denied equitable mootness in cases where millions of dollars had already been paid out under a plan. *See Tex. Grand Prairie Hotel Realty*, LLC, 710 F.3d 324 ($8 million paid under confirmed plan); *Scopac*, 624 F.3d 274 ($580 million funded to creditors). Here, the Debtor presents no evidence that the Indemnification Trust has paid out any funds to anyone, meaning that there is no threat of disgorgement in the first place, much less from an "innocent creditor."

The factual nexus between this potential action and the "unravelling" of the Plan is simply absent—the Debtor does not even attempt to present any evidence on that issue. "Only when the relief that a party requests will likely unravel the plan does it become impracticable and inappropriate for a court to grant such relief; in such a case, the court abstains from reviewing the appeal." *In the Matter of Blast Energy Servs.*, 593 F.3d 418, 425 (5th Cir. 2010). In *Blast Energy Services*, the Fifth

Circuit reversed the district court's finding of equitable mootness because the evidence supporting the finding was not present or was unexplained; *i.e.* why the facts rendered the appeal equitably moot:

> The district court did not explain the possible disruption and the parties have not clarified the court's cryptic reference. Therefore, we find it necessary to reverse and remand for further consideration and for fuller explanation as to either why the appeal is, or why it is not, equitably moot.

*Id.* at 428.

The same is true here: while the Debtor presents evidence of various facts that occurred, and while the Debtor presents speculation as to what may happen if the Indemnification Trust Order is vacated—nowhere does Mr. Seery even testify that he or anyone else *will* resign without the order[4]—there is no nexus or evidence whatsoever of any resulting inequity, harm, prejudice, or impracticability of granting appellate relief.

Finally, with respect to the various other actions that the Debtor has undertaken after confirmation, such as obtaining a loan, paying certain creditors, and executing corporate formation and governance documents, none of this is relevant to the Indemnification Trust Order, and the Debtor does not even attempt to explain how a reversal of the Indemnification Trust Order would possibly jeopardize any third parties relying on these post-confirmation transactions. At most, what the

---

[4]    *See* Appx. 0286-87.

Court is told is that the management of the Plan trust *may* quit if the Court vacates the Indemnification Trust Order, but it follows neither logically nor factually that their resignations would in any way jeopardize any actions that the Debtor has taken as a corporate body.  New management would simply be found to replace them.

## IV.   CONCLUSION

Equitable mootness does not apply to motion practice or to a liquidating plan like here.  Equitable mootness does not apply when there are no innocent creditors not before the Court in danger of having transactions and payments undertaken in reliance on the plan undone.  Here, the only potentially affected parties are insiders who accepted the risk of proceeding without directors and officers insurance, and for whose benefit the bankruptcy laws do not exist anyway.  Equitable mootness applies when there is a threat of disgorgement.  There is no such threat here, as the Indemnification Trust has not paid out any claims.  And, equitable mootness applies only when a complicated plan may be at risk of being unwound.  Vacating the Indemnification Trust Order in no way risks unwinding the Plan; only the possible resignation by certain managers, who the Plan does not require be the actual individuals liquidating the Debtor.

RESPECTFULLY SUBMITTED this 29th day of October, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Davor Rukavina
    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard St., Ste. 3800
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR APPELLANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGE-MENT FUND ADVISORS, L.P.**

-- and --

**HELLER, DRAPER & HORN, L.L.C.**

By:  /s/ Douglas Draper
    Douglas Scott Draper, Esq.
    650 Poydras Street
    Suite 2500
    New Orleans, LA 70130-0000
    Email: ddraper@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 29, 2021, a true and correct copy of the foregoing document was served on the following recipients via the Court's CM/ECF system:

Zachery Z. Annable
zannable@haywardfirm.com
*Counsel for the Appellee*

Gregory V. Demo
gdemo@pszjlaw.com
*Counsel for the Appellee*

Douglas Draper
ddraper@hellerdraper.com
*Counsel for Dugaboy*

Melissa S. Hayward
mhayward@haywardfirm.com
*Counsel for the Appellee*

John A. Morris
jmorris@pszjlaw.com
*Counsel for the Appellee*

Jeffery N. Pomerantz
jpomerantz@pszjlaw.com
*Counsel for the Appellee*

By: /s/ Davor Rukavina
Davor Rukavina, Esq.

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this document complies with the type-volume limitations of Fed. R. Bankr. P. 8013(f)(3)(A) because it contains 4,707 words, excluding the items described in rule 8015(g), measured using Microsoft Word's word count feature.

Dated: October 29, 2021.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.

4869-6075-6225.v2 019717.00001