Case No. 3:21-cv-01895-D

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,

Reorganized Debtor.

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P., NEXPOINT ADVISORS, L.P., and THE DUGABOY INVESTMENT TRUST,

Appellants,

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

Appellee.

On Appeal from the United States Bankruptcy Court
for the Northern District of Texas, Case No. 19-34054-sgj11
Hon. Stacey G. C. Jernigan

## APPELLEE'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## APPEAL AS EQUITABLY MOOT

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No.143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

Highland respectfully submits this brief in support of its *Motion to Dismiss Appeal as Equitably Moot* (the "<u>Motion</u>")[1] and in reply to the opposition brief of Highland Capital Management Fund Advisors, L.P. ("<u>HCMFA</u>"), NexPoint Advisors, L.P. ("<u>NPA</u>"), and The Dugaboy Investment Trust ("<u>Dugaboy</u>").[2]

## I.    The Appeal Seeks to Unwind the Plan and Is Equitably Moot

Citing *Sneed*, Appellants' primary argument is, because this appeal is not an appeal of a confirmation order, Fifth Circuit precedent prohibits finding it equitably moot.  *New Indus. v. Byman (In re Sneed Shipbuilding, Inc.)*, 914 F.3d 1000 (5th Cir. 2019).  That is not *Sneed's* holding.  *Sneed* held the appeal at issue was not equitably moot because (i) ***there was no confirmed plan*** and (ii) the appeal only involved a simple sale of assets.  *Sneed*, 914 F.3d at 1002.  Nor is Appellants' reading of *Sneed* supported by other cases from this Circuit.  Notably, in *Scopac*, the Fifth Circuit assessed whether an appeal from an order entered under 11 U.S.C. § 507(b) could be equitably moot because of its effect on a confirmed plan.  *Bank of New York Trust Co. NA v. Pac. Lumber Co. (In re Scopac)*, 624 F.3d 274 (5th Cir. 2010).  Although the *Scopac* court found the appeal was not moot, at no point did it hold the

---

[1] All capitalized terms used but not defined herein have the meanings given to them in the Motion.

[2] Unless otherwise noted, citations are to *Appendix in Support of Highland Capital Management, L.P.'s Motion to Dismiss Appeal as Equitably Moot* [D.I. 15] (the "<u>Appendix</u>").  Citations to the Appendix are notated as follows: "Ex. __, Appx. __."

motion to dismiss failed because the appeal was not an appeal of a confirmation order.  *Id.* at 277-79, 281-82.

As such, the Fifth Circuit has not foreclosed finding an appeal equitably moot if (i) there is a "reorganization plan that is at least 'substantially consummated'" and (ii) "reversal might undermine the plan and the parties' reliance on it."  *Sneed*, 914 F.3d at 1002.  That is exactly the case here.  Appellants do not dispute the Plan was confirmed and substantially consummated after Appellants, among others, failed to obtain a stay.  And this appeal of the Order approving the Indemnity Trust will undermine the Plan and *all* parties' – not just the Independent Managers' – reliance on it.  As discussed in the Motion, all three elements supporting a finding of equitable mootness are satisfied.  *See Bank of New York Trust Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 240 (5th Cir. 2009).

## II.   The Indemnity Trust Is Material to the Plan, and the Plan Is Substantially Consummated and Cannot Be Unwound

Appellants argue this Court's reversal of the Order approving the Indemnity Trust will not affect the Plan because the Independent Managers will still have

DOCS_NY:44435.6 36027/003

indemnification rights[3] and therefore will *not* resign if the Indemnity Trust is unwound. They also contend there is no support for Highland's claim that James Dondero and his controlled entities have been litigious and that such litigiousness has had a significant effect on the administration of the Debtor's estate. Appellants are incorrect on all counts and ignore the extensive factual findings made by the Bankruptcy Court regarding Dondero's coordinated efforts – both directly and through his controlled affiliates, including Appellants – to harass Highland and impede the Plan. Ex. 2, Appx. 60-61.

In fact, one of the significant reasons there was a six-month delay between confirmation and the Effective Date of the Plan was the Debtor's inability to obtain reasonable D&O Insurance sufficient to protect the Independent Managers – the parties tasked with overseeing the Plan – against Dondero's and his affiliates' vexatious and relentless litigation. The Independent Managers would not assume their responsibilities under the Plan unless they received sufficient protection from prospective litigation. Because of Dondero's litigiousness, Highland was forced to

---

[3] Appellants claim the Indemnity Trust expands the indemnification rights in the Plan. Appellants also argue, if the Indemnity Trust is overturned, creditors will receive the $22.5 million currently owed to the Indemnity Trust. Both of these statements are wrong. The "Indemnified Parties" were all included in the Claimant Trust Agreement, Litigation Sub-Trust Agreement, and Reorganized Limited Partnership Agreement referenced in the Plan, filed with the Plan supplement, and approved by the Confirmation Order. Ex. 2, Appx. 7. Similarly, the Plan allows the Claimant Trust, the Litigation Sub-Trust, and the Reorganized Debtor *to reserve for indemnification costs*. The $22.5 million owed to the Indemnity Trust will not be distributed to creditors if the appeal is successful. It will be reserved.

provide this protection through the creation and funding of the Indemnity Trust. *Appellants Appendix*, D.I. 5, at 3663-69.

Appellants' cavalier statement that the Indemnity Trust is unnecessary because indemnification rights still exist under the Plan thus ignores the factual record developed in connection with Plan confirmation and approval of the Indemnity Trust Motion.  If the Court reverses the Indemnity Trust Order, there is substantial risk the Independent Managers will quit,[4] the Plan will unravel and third parties will lose the benefits of the hard-fought bargain struck over a two-year, highly contentious case which resulted in the Plan.  That is exactly the result that Appellants – whose economic stake in this Appeal and the Plan is tenuous at best – want to achieve.

And Appellants' assertion that, if Independent Managers do resign, they can simply be replaced misses the point and ignores the facts.  Because of Dondero, Highland can only retain competent management to monetize its complex assets if

---

[4] Appellants argue Seery did not testify that he or anyone else would resign without the Indemnity Trust.  In his declaration, Seery stated:

> I expressly relied on . . . the existence of the Indemnity Trust to secure the Indemnification Obligations owed to me under the Plan. . . . [T]he existence of the Indemnity Trust *are essential to my being able to administer the Claimant Trust and Reorganized Debtor, effectuate the transactions described above and in the Plan, and operate and administer the assets of the Claimant Trust and Reorganized Debtor in furtherance of the Plan.*

> Based on my experience working as an Independent Director of the Debtor and a professional and investor in reorganized companies*, I believe the other Independent Managers . . . will not remain in their roles unless the Indemnity Trust remains in existence*

Ex. 6, Appx. 286-87 (emphasis added).  Seery's declaration is clear as to the effect of unwinding the Indemnity Trust on his and the other Independent Managers continuing in their roles.

5

there is a *guarantee* that indemnification claims will be paid; a contractual right to indemnification is insufficient.  Simply stating replacement management could be hired does not address the effect on the Plan and those that relied on it from overturning the Indemnity Trust.

Despite this, Appellants argue it would be easy to unwind the Indemnity Trust because no disbursements have been made from the Indemnity Trust and post-effective-date transactions consummating the Plan were "paper notations only with no substantive affect."  Response at 15.

First, it is immaterial if the Indemnity Trust has made distributions.  What is material is the effect of the appeal on the Plan and all parties who have relied on it. Here, because of Dondero's documented litigiousness, none of the Independent Managers will continue to serve without the Indemnity Trust, and, as found by the Bankruptcy Court, it is doubtful that competent replacements could be found, which would affect *all* parties.

Second, Seery's declaration details (Ex. 6, Appx. 285) the fully "funded" (*i.e.*, fully spent) $45 million exit facility from third-party Blue Torch, the $5.2 million new note and $500,000 paid to third-party creditor Frontier, the $2.2 million paid to third-party creditor Acis, and the $5.1 million (and counting) disbursed to numerous Class 7 creditors, as well as other disbursements made under the Plan.  Those very real financial transactions indisputably involve the kind of innocent third parties not

6

before the Court that equitable mootness is designed to protect from unwarranted harm.

To counter this, Appellants disingenuously imply the Plan did not have broad support because it was rejected by the general unsecured creditors. The truth is that creditors holding 99.8% of the value of general unsecured claims voted *in favor* of the Plan, and the Plan had the support of the Committee. General unsecured creditors voted against the plan *by number only* and did so only because certain employees (who now work for one of Dondero's related entities) asserted spurious claims that skewed that vote.[5] The Committee also supported the Indemnity Trust Motion, and no party, other than Appellants, has challenged the Indemnity Trust.

If the Plan fails because of the loss of the Independent Managers' services, the ensuing chaos would seriously jeopardize the timing and amount of distributions to creditors, 99.8% of whom supported the Plan. Creditors that have already received more than $12 million in payments would be at risk of having such payments disgorged. Moreover, the Debtor's new lender, which played no part in the bankruptcy or prepetition business, likely would declare a default and pursue contractual remedies on its $45 million loan. The resulting disruption and expense of trying (and almost certainly *failing*) to address these issues would be substantial.

---

[5] Indeed, none of the Appellants holds general unsecured claims that voted on the Plan.

DOCS_NY:44435.6 36027/003

It also makes no difference that the Debtor's substantially consummated Plan is geared toward asset monetization.  The eggs are no less scrambled, and third parties are no less reliant on the Plan, just because orderly asset monetization is the goal.  Appellants are flat wrong that equitable mootness "does not apply" to such a plan.  Response at 11-12, 19.  Indeed, in *In re Manges*, the Fifth Circuit dismissed as equitably moot a confirmation appeal challenging a plan whose core feature was the establishment of a liquidation trust.  29 F.3d 1034, 1037 (5th Cir. 1994).  And other courts have rejected claims "that courts may not—as a matter of law—invoke equitable mootness where a 'reorganization' in form nonetheless functions as a liquidation." *In re Abengoa Bioenergy Biomass of Kan., LLC*, 958 F.3d 949, 956 (10th Cir. 2020) (citing cases, including *Shaefer v. Superior Offshore Int'l, Inc. (In re Superior Offshore Int'l, Inc.)*, 591 F.3d 350, 353-54 (5th Cir. 2009)).

## III.   Assumption of Risk Plays No Part in an Equitable Mootness Analysis

Appellants argue the appeal will only affect the Independent Managers, who are "insiders and those who assume[d] the risk of a plan," and not third parties. Response at 13.  That is categorically false.

The Independent Managers are not "insiders."  "Insiders" are defined in section 101(31) of the Bankruptcy Code based on their relationship to, and control over, *the debtor*.  Each of the Independent Managers was appointed on the Effective

8

Date after the Debtor was reorganized pursuant to the Plan.  None of them has any control over the Debtor, which has ceased to exist.

Moreover, the cases cited by Appellants held, uncontroversially, that the equitable mootness analysis looks to the effect on third parties *not* before the Court – not that "insider" status mattered.  *See Wells Fargo Bank N.A. v. Tex. Grand. Prairie Hotel Realty, L.L.C. (In re Tex. Grand Prairie Hotel Realty, L.L.C.),* 710 F.3d 324, 329 (5th Cir. 2013); *Scopac*, 624 F.3d at 282.[6]  Here, with the potential exception of Seery, none of the Independent Managers are before this Court and all are third parties.  As discussed in the Motion, the Independent Managers relied on the Indemnity Trust and the guaranteed protections it afforded them when they accepted their roles.

Despite the foregoing, Appellants still argue the effect on the Independent Managers should be discounted because "they are exactly the 'sophisticated' parties from whom the risk of reversal was 'foreseeable' and who 'opted to press the limits of bankruptcy.'"  Response at 15.  First, other than Seery, none of the Independent Managers negotiated the Plan or the Indemnity Trust.  Second, the reasonableness of their reliance is irrelevant and has been rejected as a basis for denying dismissal

---

[6] Appellants' reliance on *Texas Grand Prairie Hotel*, *Pacific Lumber*, and *Scopac* is also unavailing as those appeals were brought by secured creditors.  This Circuit takes a narrower view of equitable mootness when it is asserted against secured creditors, which enjoy special safeguards under the bankruptcy laws.  *See Tex. Grand Prairie Hotel*, 710 F.3d at 328; *Pac. Lumber*, 584 F.3d at 234-50, *Scopac*, 624 F.3d at 322.  Appellants are not secured creditors and cannot rely on the narrower ambit of equitable mootness in those cases.

as equitably moot.  If reliance were enough to scuttle equitable mootness, then the doctrine would never apply, and every consummated plan would be subject to uprooting on appeal or via collateral attack.  *See In re GWI PCS 1, Inc.*, 230 F.3d 788, 801 (5th Cir. 2000) (quoting *In re Cont'l Airlines*, 91 F.3d 553, 565 (3d Cir. 1996)) (ellipsis omitted) ("[T]o focus on the 'reasonableness' of [third-party] reliance, at least as measured by the likelihood of reversal on appeal, is necessarily a circular enterprise and therefore of little utility.  Our inquiry should not be about the 'reasonableness' of the [third-parties'] reliance or the probability of either party succeeding on appeal.")

## IV. Appellants Have No Economic Interest in this Appeal or the Plan and Lack Standing

Finally, none of the Appellants has an economic interest in this Appeal or in the Plan.  HCMFA has no prepetition claims against Highland.  NPA's only prepetition claims[7] are four claims transferred to it by former employees of the Debtor, which, if allowed, are worth, in aggregate, approximately $39,000.  NPA's claims have been objected to on the merits [Bk. D.I. 2059] and because the compensation plans forming the basis of the claims prohibited their transfer to NPA

---

[7] NPA and HCMFA have asserted an administrative claim of $14 million against Highland arising from Highland's alleged failures to comply with certain contracts postpetition.  [Bk. D.I. 1826]. Highland has objected to this claim.  [Bk. D.I. 2274].  If the claim is allowed, it will be paid in full under the Plan and will not be affected by the Indemnity Trust.

[Bk. D.I. 2976].  Dugaboy has no prepetition claims having agreed to withdraw its one claim with prejudice.[8]

Consequently, Appellants do not – and cannot – deny the Bankruptcy Court's finding on the "remoteness" of their "economic interests" in this case, nor do they answer the Bankruptcy Court's "serious questions" about whether they are pursuing challenges to the confirmed Plan "in good faith."  Appellants also object to the finding that they are merely trying to "burn the place down" – just as Dondero promised they would – yet offer no other plausible explanation for their attacks on a Plan – here collaterally through an appeal of the Order – in which they have no economic stake.

## CONCLUSION

Fifth Circuit precedent allows appeals to be dismissed as equitably moot if (i) if a stay pending appeal was not obtained; (ii) the plan has been "substantially consummated," and (iii) the relief required would affect either the rights of parties not before the court *or* the success of the plan.  All three elements are satisfied here. The appeal should be dismissed as equitably moot.

---

[8] Dugaboy asserted two administrative claims arising from Highland's alleged postpetition mismanagement of certain investment vehicles.  Those claims were disallowed prejudice.  [Bk. D.I. 2965, 2966].  Prior to the Effective Date, Dugaboy also held 0.1866% of the Debtor's limited partnership interests.

11

Dated:  November 5, 2021.

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Ira D. Kharasch (CA Bar No. 109084)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Hayley R. Winograd (NY Bar No. 5612569)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
          ikharasch@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          hwinograd@pszjlaw.com


-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

12

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 8013</u>

The undersigned hereby certifies that this Reply complies with the type-volume limitation set by Rule 8013(f)(3) of the Federal Rules of Bankruptcy Procedure.  This Reply contains 2,542 words.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 5, 2021, a true and correct copy of the foregoing Reply was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

14