Case No. 3:21-cv-01895-D

---

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

---

In re: HIGHLAND CAPITAL MANAGEMENT, L.P.,

                        Reorganized Debtor.

---

NEXPOINT ADVISORS, L.P., HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P. and THE DUGABOY INVESTMENT TRUST

                        Appellants,

      v.

HIGHLAND CAPITAL MANAGEMENT, L.P.,

                        Appellee.

---

On Appeal from the United States Bankruptcy Court
for the Northern District of Texas, Dallas Division, Case No. 19-34054-sgj11
Hon. Stacey G. C. Jernigan

---

## APPELLEE'S BRIEF

---

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (NY Bar No. 2680882)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

## CORPORATE DISCLOSURE STATEMENT

Under Rules 8012(a) and 8014(b) of the Federal Rules of Bankruptcy Procedure, no publicly-held corporation owns 10% or more of Appellee Highland Capital Management L.P., which is not a corporation and which does not have a parent corporation.

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF ISSUE AND STANDARD OF APPELLATE
      REVIEW ................................................................................................1

II.   STATEMENT OF THE CASE ................................................................1

III.  SUMMARY OF THE ARGUMENT .......................................................3

IV.   ARGUMENT...........................................................................................5

      A.    The Indemnity Sub-Trust Does Not Modify the Plan.........................5

      B.    The Indemnity Sub-Trust Does Not Alter Creditor Rights or
            Recoveries ................................................................................7

      C.    The Indemnity Sub-Trust Does Not "Expand" the People to Be
            Indemnified ...........................................................................18

V.    CONCLUSION........................................................................................20

i

# TABLE OF AUTHORITIES

## CASES

*Commercial Credit Corp. v. Reed,*
  154 B.R. 471 (E.D. Tex. 1993) ...........................................................................18

*Doral Ctr. v. Ionosphere Clubs (In re Ionosphere Clubs),*
  208 B.R. 812 (S.D.N.Y. 1997) ..............................................................................5

*In re Johns-Manville Corp.,*
  920 F.2d 121 (2d Cir. 1990) ..................................................................................5

*In re Joint E. & S. Dist. Asbestos Litig.,*
  982 F.2d 721 (2d Cir. 1992) ..................................................................................5

*Matter of Quenzer,*
  19 F.3d 163 (5th Cir. 1993) ................................................................................18

*United States Brass Corp. v. Travelers Ins. Group, Inc.*
  *(In re United States Brass Corp.),*
  301 F.3d 296 (5th Cir. 2002) ..................................................................... 1, 5, 15

## STATUTES

11 U.S.C. § 1127(b) ..................................................................................... 3, 5, 20

11 U.S.C. § 1142(b) ...........................................................................................15

11 U.S.C. § 363(b) ......................................................................................... 5, 20

DOCS_NY:44509.6 36027/003

## I.     STATEMENT OF ISSUE AND STANDARD OF APPELLATE REVIEW

Appellee agrees with Appellants' statement of the sole issue in this appeal—whether the Indemnification Trust Order[1] constituted a modification of the Plan. Appellants cite no authority regarding the applicable standard of review for whether the Indemnification Trust Order constitutes a Plan modification. It is a "mixed question of law and fact that is subject to *de novo* review."[2]

## II.    STATEMENT OF THE CASE[3]

Appellee generally agrees with Appellants' recitation of the central facts relevant to the issue submitted for review—those facts required to be identified in Bankruptcy Rule 8014(a)(6). Appellee does not concede or agree with those statements that Appellants present as fact but are obviously argument or misleading rhetorical flourishes. Most significantly, Appellants assert that the Claimant Trust is not "saddled with any debt in the nature of a promissory note, although the Claimant

---

[1] For the Court's convenience, unless otherwise indicated, this brief will use the capitalized defined terms Appellants use in their brief. But Appellee uses "Indemnification Trust" to describe the sub-trust created by the Bankruptcy Court's order being appealed here. Appellee has described that sub-trust as the "Indemnity Sub-Trust" in its pleadings in the Bankruptcy Court and will do so in this brief. The distinction is not without significance, particularly because Appellants attempt to persuade this Court that the Bankruptcy Court's order created something it didn't. The Indemnity Sub-Trust is not a "third trust" created under the Plan. Like the Litigation Sub-Trust, the Indemnity Sub-Trust is a sub-trust of the Claimant Trust and, like the Litigation Sub-Trust, was created to carry out an obligation and a function of the Claimant Trust. Appellants recognize this structure in their brief but attempt a rhetorical recharacterization unsupported by the record.

[2] *United States Brass Corp. v. Travelers Ins. Group, Inc. (In re United States Brass Corp.),* 301 F.3d 296 (5th Cir. 2002).

[3] All capitalized terms used but not defined in this section have the meanings given to them below.

1

Trust is responsible for its expenses and ultimately to provide returns to its beneficiaries; *i.e.* the Debtor's creditors."[4] As further elucidated below, Appellants omit from their statement what the Plan and its supporting documents, all adopted by the Bankruptcy Court's order confirming the Plan, make clear: (a) all the individuals that the Indemnity Sub-Trust covers, not just the Claimant Trustee, Litigation Trustee, and the Claimant Trust Oversight Board, are entitled to indemnification under the Plan; (b) the expenses associated with paying indemnification claims are senior in priority to the payment of the Debtor's unsecured creditors or equity, including the beneficiaries of the Claimant Trust; and (c) the Claimant Trustee, the Litigation Trustee, and the management of the Reorganized Debtor, in their discretion, may determine the amount, timing, and funding of reserves, including reserves to satisfy indemnification claims.

In fact, Appellants' assertion that "indemnification obligations are, instead paid from the Indemnity [*sic*] Trust,"[5] or that "$2.5 million of cash that the Plan requires be paid to the Claimant Trust … is instead transferred to the Indemnity [*sic*] Trust, and is thus unavailable to pay creditors,"[6] is disingenuously misleading. As discussed below, the actual language of the Plan and the actual language of the

---

[4] *Joint Opening Brief of the Appellants* [Doc. 16] ("**Aplt Br.**") at 4.

[5] *Id.* at 15.

[6] *Id.* at 15–16.

Indemnity Sub-Trust is to the contrary. When Appellants assert that the "Plan does not provide for the Claimant Trust to indemnify anyone else,"[7] Appellants are simply wrong, misinterpreting the Plan's plain language and ignoring the Plan Implementation Documents. Appellants repeat this mischaracterization later in their Statement of the Case as though it were fact: "the universe of entities and people indemnified by the Claimant Trust is greatly expanded from the three provided for in the Plan ..."[8] This is false. As discussed more extensively below, the Plan and the Plan Implementation Documents always provided that all the "entities and people" the Indemnity Sub-Trust covers would be indemnified.[9]

## III. SUMMARY OF THE ARGUMENT

The Indemnification Trust Order does not modify the Plan in any way that would require the Bankruptcy Court to have engaged in the type of creditor approval process required under Bankruptcy Code § 1127(b). The Indemnity Sub-Trust acts as the functional equivalent to traditional D&O Insurance that the Plan provided for

---

[7] *Id.* at 4.

[8] *Id.* at 5.

[9] So integral is the Indemnity Sub-Trust to the Plan and the post-bankruptcy operations of the Reorganized Debtor that Appellee has moved this Court for an order dismissing this appeal as equitably moot. Reversing the Indemnification Trust Order would unravel the entire Plan, demanding a practically impossible unwinding of the substantially-consummated Plan and extensively harming countless creditors who have relied on the Plan. *See Motion to Dismiss Appeal as Equitably Moot* [Doc. 14]. That motion also alerts this Court to serious concerns Appellee has (and that this Court should have) regarding Appellants' lack of economic interest in this appeal and the Plan and, therefore, Appellants' lack of standing.

the Debtor to obtain—a mechanism under which a reserve fund is created to pay indemnification claims, a reserve fund already recognized and provided for under the Plan and the Plan Implementation Documents.[10] The creation of such an economic mechanism to ensure the payment of indemnification claims of the Claimant Trust's, the Litigation Sub-Trust's, and the Reorganized Debtor's management and professionals is entirely consistent with the Plan and all parties' expectations.[11] The Indemnity Sub-Trust neither alters operative, mandatory provisions of the Plan nor alters creditors' treatment under the Plan in any way, including by "[using] assets otherwise available to pay creditors to pay potential indemnification costs."[12] Despite Appellants' protestations to the contrary, the

---

[10] Obtaining D&O Insurance was a condition to the effectiveness of the Plan, a condition that the Debtor and the Official Committee of Unsecured Creditors (the "**Committee**") could waive. The Debtor and the Committee, however, agreed to waive that condition if the functionally-equivalent Indemnity Sub-Trust were approved. The Committee represented the interests of all unsecured creditors of the bankruptcy estate, literally hundreds of millions of dollars' worth of claims. The Appellants—all close affiliates of James Dondero, the Debtor's ousted founder—were the only putative creditors who opposed the creation of the Indemnity Sub-Trust. The Debtor's inability to obtain traditional D&O Insurance under reasonable terms was because the market of insurers was only too aware of Mr. Dondero's history of unscrupulous litigiousness and the extremely high likelihood that Mr. Dondero and his entities would sue the Debtor's and the Claimant Trust's management for almost anything they did or didn't do. *See, e.g., Transcript of Proceedings Before the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge,* Monday, July 19, 2021 [ROA 3631] ("**Transcript**") at 35:16-20, which refers to testimony of the Debtor's witness at the trial on confirmation of the Plan concerning the extreme challenges likely to be faced in obtaining D&O Insurance because of what the insurance markets refer to as the "Dondero Exclusion."

[11] Appellee's motion to approve the Indemnity Sub-Trust (ROA 637) garnered the express support of the Committee , which represented the interests of literally hundreds of millions of dollars' worth of unsecured creditors, and which urged the Bankruptcy Court's approval of Appellee's motion. *See, generally,* ROA 3631, Transcript.

[12] Aplt. Br. at 7. This statement is part of a gross mischaracterization of the Indemnity Sub-Trust, which also does *not* provide that $25 million of "assets" will be "used" for anything.

Indemnity Sub-Trust does not "expand the universe" of indemnified parties under the Plan. The Bankruptcy Court did not err when it approved the Indemnity Sub-Trust under Bankruptcy Code § 363(b) as opposed to Bankruptcy Code § 1127(b). The latter section applies only to modifications of a plan. Appellants' argument that the Indemnity Sub-Trust effected a material modification of the Plan or any change in the legal relationship between the Debtor and its creditors established under the Plan misconstrues the Indemnity Sub-Trust's provisions and mischaracterizes the two cases cited in their brief.

## IV.   ARGUMENT

### A.   The Indemnity Sub-Trust Does Not Modify the Plan

Courts determine whether a settlement or a new transaction constitutes a plan modification that must satisfy the substantive and procedural requirements in Bankruptcy Code § 1127(b) on a case-by-case basis after reviewing the plan's express terms.[13] A plan modification is something that alters the "legal relationships among the debtor and its creditors and other parties in interest" or otherwise affects the legal relationship among them or the right to payment.[14] The Indemnity Sub-

---

[13] *In re Johns-Manville Corp.*, 920 F.2d 121, 128 (2d Cir. 1990).

[14] *Doral Ctr. v. Ionosphere Clubs (In re Ionosphere Clubs),* 208 B.R. 812, 816 (S.D.N.Y. 1997); *see also United States Brass Corp.*, 301 F.3d at 308; *In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d 721, 747-48 (2d Cir. 1992). These are all the cases Appellants cite in their main argument. Appellee certainly agrees that these cases express the correct rubric for whether something constitutes a plan modification. They just don't help Appellants.

Trust does none of these things. It doesn't alter the legal relationship between the Debtor and its creditors. It doesn't affect creditors' right to payment or expected returns. It doesn't change anything about the package of rights and obligations creditors are given under the Plan. Quite the opposite: the Indemnity Sub-Trust gave creditors the benefit of their bargain by ensuring the Plan would become effective, that the qualified individuals identified in the Plan would be willing to discharge their duties under the Plan protected by economically-secured indemnification rights, and that creditors would realize the benefit of the operations of the Claimant Trust, the Litigation Sub-Trust, and the Reorganized Debtor (collectively, the "**Post-Effective Date Entities**")[15] to generate funds for creditor recoveries at least in line with creditor expectations as established in the disclosure statement associated with the Plan. Far from modifying the Plan, the Indemnity Sub-Trust is entirely consistent with the Plan and enhances the Plan's prospects for success.

---

[15] Owing to the nature of the Debtor's business, the Debtor's post-effective date structure is overseen by three separate entities. The Reorganized Debtor is a registered investment advisor with the Securities and Exchange Commission and, among other things, manages various investment vehicles with third party investors. The Claimant Trust is generally tasked with monetizing all other Debtor assets. Finally, the Litigation Sub-Trust is pursuing the Debtor's causes of action. The Claimant Trust's interests are held by prepetition unsecured creditors (and equity if certain conditions are met). The Reorganized Debtor, the Litigation Sub-Trust, and the Indemnity Sub-Trust are all subsidiaries of the Claimant Trust.

## B.     The Indemnity Sub-Trust Does Not Alter Creditor Rights or Recoveries

As integral parts of the Plan, the Claimant Trust Agreement,[16] the Litigation Trust Agreement,[17] and the Reorganized Limited Partnership Agreement[18] (collectively, the "**Plan Implementation Documents**")[19] all provide for the indemnification of the various parties—the same parties that are the beneficiaries of the Indemnity Sub-Trust, despite Appellants' mischaracterizations to the contrary—tasked with implementing the Plan after the Effective Date (collectively, the "**Indemnified Parties**").

Specifically, the Claimant Trust Agreement provides indemnification thus:

The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "Indemnified Parties") shall be indemnified by the Claimant Trust against and held harmless by the Claimant Trust from any losses, claims, damages, liabilities or expenses (including, without limitation, attorneys' fees, disbursements, and related expenses) to which the Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against any of the Indemnified Parties in their capacity as Claimant Trustee, Delaware Trustee, Oversight Board, or Member, or in connection with any matter arising out of or related to the Plan, this Agreement, or the affairs of the Claimant Trust, unless it is ultimately determined by order of the Bankruptcy Court or other

---

[16] ROA 923.

[17] ROA 961.

[18] ROA 984.

[19] The final versions of the Plan Implementation Documents were filed with the Bankruptcy Court on January 22, 2021, were expressly incorporated by reference into the Plan (Plan, Art. IV.J) [ROA 410, 451], and expressly incorporated into the order confirming the Plan that the Bankruptcy Court entered on February 22, 2021 [ROA 476, 536–37] (the "**Confirmation Order**").

court of competent jurisdiction that the Indemnified Party's acts or omissions constituted willful fraud, willful misconduct, or gross negligence….The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.[20]

The Litigation Trust Agreement has an indemnification provision nearly identical to that found in the Claimant Trust Agreement.[21] Similarly, the Reorganized Limited Partnership Agreement provides for the Reorganized Debtor's broad indemnification of, among others, the Reorganized Debtor's general partner and its members, partners, directors, officers, and agents, as well as any officers of the partnership.[22]

The Plan and the Plan Implementation Documents expressly provide and account for the cost of indemnifying the Indemnified Parties (the "**Indemnification Costs**") by the respective Post-Effective Date Entity. The Indemnification Costs are expenses that must be paid before, and be senior in priority to, any distributions to the Debtor's unsecured creditors and equity.

> **The Claimant Trust shall pay, advance or otherwise reimburse on demand** of an Indemnified Party **the Indemnified Party's reasonable legal and other defense expenses** (including, without limitation, the cost of any investigation and preparation and attorney fees, disbursements, and other expenses related to any claim that has been brought or threatened to be brought) incurred in connection therewith

---

[20] ROA 955, Claimant Trust Agmt., § 8.2.

[21] ROA 978, Litigation Trust Agmt., § 8.2

[22] ROA 991–92, Reorganized Limited Partnership Agmt., § 10(b), (c).

or in connection with enforcing his or her rights under this Section 8.2
**as a Claimant Trust Expense ….**[23]

Again, substantially similar language exists in the Litigation Trust Agreement and

the Reorganized Limited Partnership Agreement.[24]

Each of the Plan Implementation Documents authorizes the creation of any

cash reserves that may be necessary or advisable to ensure the Indemnification Costs

of the Post-Effective Date Entities are satisfied and leaves the amount of those

reserves to the discretion of the Claimant Trustee:

> … Claimant Trustee shall distribute to holders of Trust Interests at least
> annually the Cash on hand **net of any amounts** that (a) are reasonably
> necessary to maintain the value of the Claimant Trust Assets pending
> their monetization or other disposition during the term of the Claimant
> Trust, (b) are **necessary to pay or reserve for reasonably incurred or
> anticipated Claimant Trust Expenses and any other expenses
> incurred by the Claimant Trust (including, but not limited to, any
> taxes imposed on or payable by the Claimant Trustee with respect
> to the Claimant Trust Assets)**, (c) are necessary to pay or reserve for
> the anticipated costs and expenses of the Litigation Sub-Trust, (d) are
> **necessary to satisfy or reserve for other liabilities incurred or
> anticipated by the Claimant Trustee in accordance with the Plan
> and this Agreement (including, but not limited to, indemnification
> obligations and similar expenses in such amounts and for such
> period of time as the Claimant Trustee determines, in good faith,
> may be necessary and appropriate, which determination shall not**

---

[23] ROA 955, Claimant Trust Agmt., § 8.2 (emphasis added). The Claimant Trust Agreement
defines "Claimant Trust Expenses" as "costs, expenses, liabilities and obligations incurred by the
Claimant Trust and/or the Claimant Trustee in administering and conducting the affairs of the
Claimant Trust, and otherwise carrying out the terms of the Claimant Trust and the Plan on behalf
of the Claimant Trust, including without any limitation, any taxes owed by the Claimant Trust,
and the fees and expenses of the Claimant Trustee and professional persons retained by the
Claimant Trust or Claimant Trustee in accordance with this Agreement." ROA 926, Claimant Trust
Agmt. at 3.

[24] ROA 978, 991–92.

**be subject to consent of the Oversight Board, may not be modified without the express written consent of the Claimant Trustee, and shall survive termination of the Claimant Trustee)** …[25]

Both the Litigation Trust Agreement and the Reorganized Limited Partnership Agreement contain substantially similar language.[26]

The Plan Implementation Documents also authorize each Post-Effective Date Entity to retain whatever professionals or third-party servicers it believes necessary to implement the Plan, each of which is entitled to indemnification under the Plan Implementation Documents' express terms. The fees and expenses associated with doing so are expenses of the Post-Effective Date Entities and represent senior priority obligations to be satisfied before distributions to unsecured creditors and equity.[27] The Indemnity Sub-Trust will be administered by a third-party corporate trustee, which will be a regulated depository institution or an affiliate of such an institution. The fees associated with retaining that trustee are precisely the type of senior-priority expenses contemplated in the Claimant Trust Agreement.

To summarize, then, the following chart may assist the Court in understanding how the Indemnity Sub-Trust is the functional equivalent of the D&O Insurance

---

[25] ROA 952, Claimant Trust Agmt., § 6.1(a) (emphasis added).

[26] ROA 976, Litigation Trust Agmt., § 6.1; ROA 989, Reorganized Limited Partnership Agreement § 5(b), which provides that the Claimant Trust, as limited partner, may make additional capital contributions to the Reorganized Debtor at the request of its general partner to pay, among other things, Indemnification Costs.

[27] *See* ROA 935–36, Claimant Trust Agmt., § 3.2(c)(x); ROA 968–69, Litigation Trust Agmt., § 3.2(c)(xii); ROA 989, Reorganized Limited Partnership Agmt., § 4(a), (b).

originally contemplated by the Plan and how each of the indemnification-related obligations of the Post-Effective Date Entities are met, without material alteration, by the Indemnity Sub-Trust:

| Post-Effective Date Entity Obligations[28] | D&O Insurance | Indemnity Sub-Trust |
|---|---|---|
| Indemnify the respective Indemnified Parties | Collateralize and otherwise ensure satisfaction of Claimant Trust's obligation to pay indemnification claims | Collateralize and otherwise ensure satisfaction of Claimant Trust's obligation to pay indemnification claims |
| Pay costs associated with indemnification as priority expenses senior to distributions to beneficiaries | Premiums paid from cash reserved from the Claimant Trust res, reducing cash available for distributions to beneficiaries | Funded by $2.5 million in cash reserved from the Claimant Trust res, *temporarily* reducing cash *presently* available for distributions to beneficiaries[29] |

---

[28] In the interests of precision, each of the Claimant Trust, Litigation Sub-Trust, and Reorganized Debtor are obligated to indemnify their respective Indemnified Parties. The Claimant Trust is authorized to downstream funds to the Reorganized Debtor and the Litigation Sub-Trust to cover Indemnification Costs. *See* ROA 931–32, 952, Claimant Trust Agmt. at §§ 2.3(b)(v), 6.1(a). Because the financial responsibility for indemnification claims for all the Post-Effective Date Entities are several, each of the Post-Effective Date Entities is liable on the $22.5 million note identified in fn. 30 below.

[29] *See* ROA 637 *et seq.,* the Motion and its exhibits for the Bankruptcy Court-approved description and term sheet pertaining to the Indemnity Sub-Trust's trust agreement and promissory note. At least with respect to this component, the Indemnity Sub-Trust is, from creditors' perspective, superior to D&O Insurance. D&O Insurance premiums require cash to pay them, and those premiums would likely far exceed $2.5 million over the life of the Claimant Trust. Once paid, the premiums are never recoverable. The initial cash funding of the Indemnity Sub-Trust, however, is limited to $2.5 million under terms where any cash remaining unspent in the Indemnity Sub-Trust is returned to the Claimant Trust for distribution to the Claimant Trust's beneficiaries (*i.e.,* the Debtor's creditors). *See* ROA 637 *et seq.,* the Motion and its exhibits for the Bankruptcy Court-approved description and term sheet pertaining to the Indemnity Sub-Trust's trust agreement and promissory note.

| Post-Effective Date Entity Obligations[28] | D&O Insurance | Indemnity Sub-Trust |
|---|---|---|
| Create cash reserves necessary to ensure Indemnification Costs are paid | Claimant Trustee must reserve cash from the Claimant Trust res commensurate with Indemnification Costs | Claimant Trustee must reserve cash from the Claimant Trust res commensurate with Indemnification Costs[30] |
| Retain necessary professionals and third-party servicers | Costs of engaging professionals and third-party services to receive, analyze, and manage claims are borne by the Claimant Trust as senior-priority expenses | Costs of engaging professionals and the Indemnity Sub-Trust's trustee to receive, analyze, and manage claims are borne by the Claimant Trust as senior-priority expenses |

The Indemnity Sub-Trust does not alter the Post-Effective Date Entities' rights and obligations to pay indemnification claims and associated costs as senior-priority expenses before distributions to unsecured creditors and equity. The Indemnity Sub-Trust does not alter the amount of, or even change the timing of,[31]

---

[30] This is accomplished by means of the Claimant Trust making a promissory note for up to $22.5 million payable to the Indemnity Sub-Trust to reimburse the Indemnity Sub-Trust for actual payments made on indemnification claims the Claimant Trust fails to make. *See* ROA 637 *et seq.,* the Motion and its exhibits for the Bankruptcy Court-approved description and term sheet pertaining to the Indemnity Sub-Trust's trust agreement and promissory note. **This does not create new or different economic liability for the Claimant Trust, which is principally liable to pay indemnification claims irrespective of whether the Indemnified Parties are the beneficiaries of D&O Insurance or the Indemnity Sub-Trust. The Claimant Trust's obligation to the Indemnified Parties is identical under either structure. The relationship between the Debtor and its creditors is identical under either structure.**

[31] The Claimant Trust Agreement does not require that distributions be made at any particular time: "Notwithstanding anything to the contrary contained in this paragraph, the Claimant Trustee shall exercise reasonable efforts to make initial distributions within six months of the Effective Date,

distributions to creditors and equity. The Indemnity Sub-Trust does not alter the relationship between the Debtor and its creditors in any respect because the Indemnity Sub-Trust is the functional, practical, and economic equivalent—at least vis-à-vis the Debtor's creditors—to the D&O Insurance the Plan originally contemplated. A D&O Insurance carrier ensures the payment of indemnification claims that constitute the Claimant Trust's (*i.e.,* the creditors') senior obligations; identically, the Indemnity Sub-Trust ensures the payment of indemnification claims that constitute senior obligations.

D&O Insurance and the Indemnity Sub-Trust accomplish exactly the same thing: they each collateralize and ensure payment of indemnification claims made against the Claimant Trust that constitute senior-priority obligations of the Claimant Trust. If this Court were to read Appellants' brief in a vacuum, the Court might think that the Indemnity Sub-Trust increased the Claimant Trust's obligations, raised indemnification claims to a higher priority than they occupied under the Plan, and expanded the Claimant Trust's obligations to indemnify more people than were to be indemnified under the Plan. *Literally none of these things is true.* An honest

---

and the Oversight Board may not prevent such initial distributions unless upon a unanimous vote of the Oversight Board. The Claimant Trustee may otherwise distribute all Claimant Trust Assets on behalf of the Claimant Trust in accordance with this Agreement and the Plan at such time or times as the Claimant Trustee is directed by the Oversight Board." ROA 952, Claimant Trust Agmt. § 6.1(a). And, even without the Indemnity Sub-Trust, the Post-Effective Date Entities could have reserved to $25 million (or more) to cover indemnification costs and such reserved amount would not have been available for distribution until the resolution of all indemnification claims.

review of the Plan Implementation Documents demonstrates that none of these things is true.

The Indemnity Sub-Trust implements what is already authorized under the Plan in all ways functionally, practically, and economically equivalent to D&O Insurance. There is no difference, for example, between setting a $25 million indemnification reserve and establishing the Indemnity Sub-Trust then funding it with $25 million (comprising $2.5 million in cash[32] and a $22.5 million note[33]). Objectors can point to no provision of the Plan or the Plan Implementation Documents that could have reasonably led unsecured creditors to believe that they would receive payment on account of their claims before the payment of the Post-Effective Date Entities' administrative and indemnification-related expenses, or that reserves could not be established to satisfy the costs, including the Indemnification

---

[32] This cash was not made "unavailable to pay creditors, thereby lowering their expected and solicited distribution …" Aplt Br. at 16. As discussed above, the Plan always contemplated that the Claimant Trust could reserve ample cash for the payment of indemnification claims ahead of creditor distributions. The $2.5 million contributed to the Indemnity Sub-Trust represents such reserved cash and, like any reserved amount, will be available to pay creditors if not used to pay indemnification claims. The $2.5 million contributed to the Indemnity Sub-Trust doesn't lower expected distributions. Appellants intentionally misrepresent the Plan when they insinuate otherwise.

[33] In case there is any remaining doubt about this equivalence, each of the Plan Implementation Documents expressly allows for the incurrence of debt to fund operations at each relevant Post-Effective Date Entity. ROA 937–38, Claimant Trust Agmt., § 3.3(b)(vii); ROA 970, Litigation Trust Agmt, § 3.3(b)(iv); ROA 987, Reorganized Limited Partnership Agmt., § 3. Therefore, this is not "new liability of the Claimant Trust [that] is nowhere provided for in the Plan or disclosed to creditors …" nor any other Post-Effective Date Entity. Aplt. Br. at 16. Again, Appellants intentionally misrepresent the Plan and ignore the Plan Implementation Documents in an attempt to mislead this Court.

Costs, of the Post-Effective Date Entities, in any amounts the Claimant Trustee believed were appropriate in his sole and absolute discretion.

Creditor recoveries are unaffected. Creditor rights are unaffected. Creditor expectations are unaffected. Creditor relationships with each other, with the Debtor, and with their Claimant Trust trustee are unaffected. Since the Indemnity Sub-Trust affected none of these things, the Indemnity Sub-Trust cannot constitute a Plan modification.

Appellants' attempts to equate the *United States Brass Corp.* case with the Indemnity Sub-Trust Order presently before this Court lack any merit. The court in that case held that when the debtor attempted (1) to fundamentally alter the legal relationship between itself and its creditors by (2) supplanting a judicial claims-resolution process with mandatory arbitration (which created a greater "risk of collusion") (3) as a purported "aid" to implementing the plan under Bankruptcy Code § 1142(b), that fundamental alteration constituted an impermissible plan modification.[34] Only by grossly misconstruing what the Fifth Circuit Court of Appeals said in that case can Appellants believe this type of massive alteration to a key component of a plan equates to the Indemnity Sub-Trust. So significant a modification of a plan provision that caused a creditor constituency to withdraw its plan confirmation objection doesn't equate in any way to the creation of the

---

[34] *United States Brass Corp.,* 301 F.3d at 307–08.

15

Indemnity Sub-Trust, which doesn't change creditors' legal relationships or rights and garnered the full-throated support of the Committee. The stark differences between the *United States Brass Corp.* case and this case are as numerous as they are obvious. Under a different legal procedure, which occurred at a different procedural point in that case (when the plan had been fully consummated), under radically different circumstances where once-opposing creditors withdrew their opposition to plan confirmation on the expectation that the precise change in that plan would not be made, the debtor in that case altered a fundamental right and component of creditors' legal relationship with the debtor. *That's* a plan modification, to be sure. The Bankruptcy Court rejected Appellants' attempt to analogize that situation to the Indemnity Sub-Trust before this Court. The Bankruptcy Court was wholly unpersuaded. So, too, should this Court be.

Appellants attempt to create an even more unwarranted connection between the facts of the *Asbestos* case and the case now before this Court. There, the deeply insolvent asbestos claimant trust amended its governing documents to separate once-*pari passu* asbestos claims into different strata of recovery entitlement, recovery priority, recovery timing, and recovery amount, as well as the means by which claims would be administered and adjudicated.[35] As Appellants note, of course the Second Circuit Court of Appeals "had no difficulty reversing [the bankruptcy

---

[35] *Asbestos Litig.,* 982 F.2d at 747–48.

16

court's] approval as an impermissible plan 'modification.'"[36] How more materially could the asbestos claimants trust attempt to alter creditors' legal rights, recoveries, and relationship with the trust itself? How more clear a case of impermissible plan modification could there be than in that case? And how can Appellants here believe that any of what happened there equates to the creation of the Indemnity Sub-Trust, which does not alter any creditors' legal rights or recoveries, does not alter any creditors' relationship with the Claimant Trust, and does not change anything about the way creditors' claims are administered and adjudicated?

Both those circuit-level cases demonstrate amply what a plan modification looks like. Their holdings are instructive for this Court because they stand as polar opposites of the type of insignificant, form-over-substance, hyper-technical change brought about here by adopting the Indemnity Sub-Trust as a functional and economic equivalent alternative to the D&O Insurance originally contemplated in the Plan.

The Indemnity Sub-Trust, particularly when viewed through the lens of the cases Appellants rely on, cannot be regarded as a plan modification.

---

[36] Aplt. Br. at 21.

17

### C.     The Indemnity Sub-Trust Does Not "Expand" the People to Be Indemnified

Finally, Appellants add a new argument they did not make to the Bankruptcy Court[37] by arguing that one of the reasons the Indemnity Sub-Trust constitutes a plan modification is because it "expands" the people and entities to be indemnified from those provided for in the Plan.[38] This is false. One need only look at the Plan Implementation Documents, which were expressly incorporated into the Plan and the Confirmation Order and which, evidently, Appellants have completely ignored in making this argument:

- The Indemnified Parties under the Claimant Trust are (1) the Claimant Trustee (including each former Claimant Trustee), (2) the Delaware Trustee, (3) the Oversight Board, and (4) all past and present Members of the Oversight Board, and the employees, agents, and professionals of each of the foregoing.[39]

- The Indemnified Parties under the Litigation Trust are (1) the Litigation Trustee (including each former Litigation Trustee), (2) the Oversight Board, and

---

[37] Appellants did not raise this issue in either their briefing in the Bankruptcy Court or in argument at the hearing. It is, of course, improper to raise an issue on appeal that was not raised in the bankruptcy court below. *See, e.g., Matter of Quenzer,* 19 F.3d 163, 164 (5th Cir. 1993) (it is well established that an issue is not preserved for appeal when it was not presented to or considered by the bankruptcy court); *Commercial Credit Corp. v. Reed,* 154 B.R. 471, 474 (E.D. Tex. 1993) ("a district court acting as an appellate court in a bankruptcy case, may not consider an issue for the first time on appeal"). This Court should simply disregard this issue and summarily deny Appellants any relief on it.

[38] Aplt. Br. at 18.

[39] ROA 955, Claimant Trust Agmt., § 8.2.

18

(3) all past and present Members of the Oversight Board, and the employees, agents, and professionals of each of the foregoing.[40]

- The Reorganized Debtor's Indemnified Parties are (1) New GP LLC (as the Reorganized Debtor's general partner) and each of its members, partners, directors, officers, and agents, (2) each person who is or becomes an officer of the Reorganized Debtor, and (3) each person who is or becomes an employee or agent of the Reorganized Debtor if New GP LLC determines in its sole discretion that such employee or agent should be indemnified.[41]

Appellants' argument that the Indemnified Parties include people under the Indemnity Sub-Trust not already listed in the Plan Implementation Documents is plainly wrong. The Plan Implementation Documents have existed and remained unchanged since Plan confirmation, months before the Indemnification Trust Motion was ever filed.

If there is any person that could conceivably be added to the list of Indemnified Parties after implementation of the Indemnity Sub-Trust, it is the Indemnity Sub-Trust's trustee. But because the Indemnity Sub-Trust is a sub-trust of the extant Claimant Trust, the Indemnity Sub-Trust's trustee is an agent of the

---

[40] ROA 978, Litigation Trust Agmt., § 8.2.

[41] ROA 991–92, Reorganized Limited Partnership Agmt., §§ 10(b)-(c).

Claimant Trustee and was already included as an Indemnified Person under the original provision of the Claimant Trust Agreement.

This unpreserved, new argument is, on its own, utterly without merit. As part of a larger attempt to persuade this Court that the Indemnity Sub-Trust modified the Plan in a way that implicates Bankruptcy Code § 1127(b), this argument belies facts clearly in the record demonstrating that the Indemnity Sub-Trust changed nothing material in the Plan or the Plan Implementation Documents. The Indemnity Sub-Trust was not a Plan modification for purposes of Bankruptcy Code § 1127(b).

## V.   CONCLUSION

For the reasons stated above, the Indemnity Sub-Trust did not modify the Plan such that it would need to have been approved under the procedures required under Bankruptcy Code § 1127(b). The ruling of the Bankruptcy Court approving the Indemnity Sub-Trust under Bankruptcy Code § 363(b) should be affirmed.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

Dated:  November 17, 2021.    **PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
Robert J. Feinstein (NY Bar No. 1767805)
John A. Morris (NY Bar No. 266326)
Gregory V. Demo (NY Bar No. 5371992)
Jordan A. Kroop (NY Bar No. 2680882)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
          rfeinstein@pszjlaw.com
          jmorris@pszjlaw.com
          gdemo@pszjlaw.com
          jkroop@pszjlaw.com

-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*

Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

21

## CERTIFICATE OF COMPLIANCE WITH RULE 8013

Under Bankruptcy Rule 8014(b) and 8015, I certify that this brief complies with the type-volume limitation contained in Bankruptcy Rule 8015(a)(7)(B)(i) because it contains 5,458 words, not including the parts of the brief excluded under Bankruptcy Rule 8015(g).

/s/ Zachery Z. Annable

Zachery Z. Annable

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 17, 2021, a true and correct copy of the foregoing brief was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

*/s/ Zachery Z. Annable*
Zachery Z. Annable