Case No. 3:21-cv-01895-D

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

In the Matter of: Highland Capital Management, L.P.,

    Debtor.

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust,

    Appellants,

v.

Highland Capital Management, L.P.,

    Appellee.

## REPLY BRIEF OF THE APPELLANTS

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

| | |
|---|---|
| Davor Rukavina, Esq.<br>Julian P. Vasek, Esq.<br>**MUNSCH HARDT KOPF &<br>HARR, P.C.**<br>500 North Akard St., Ste. 3800<br>Dallas, Texas 75201-6659<br>Telephone: (214) 855-7500<br>Facsimile: (214) 855-7584<br><br>**ATTORNEYS FOR APPELLANT<br>NEXPOINT ADVISORS, L.P. AND<br>HIGHLAND CAPITAL<br>MANAGEMENT FUND<br>ADVISORS, L.P.** | Douglas Scott Draper, Esq.<br>**HELLER, DRAPER & HORN,<br>L.L.C.**<br>650 Poydras Street, Suite 2500<br>New Orleans, LA 70130-0000<br><br>**ATTORNEYS FOR THE<br>DUGABOY INVESTMENT TRUST** |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

I.   SUMMARY ................................................................................................1

II.  STANDING ................................................................................................2

III. REPLY ........................................................................................................5

    A.    THE UNIVERSE OF INDEMNIFIED PARTIES IS
           NOW GREATLY EXPANDED ........................................................................5
    B.    THE INDEMNIFICATION TRUST IS NOT THE EQUIVALENT OF D&O
           INSURANCE ................................................................................................ 10
    C.    THE FACTS OBJECTIVELY DEMONSTRATE A PLAN MODIFICATION .......12

IV.  CONCLUSION ........................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ..........................4

*Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017)................................4

*In re Delta Produce LP*, 845 F.3d 609, 619 (5th Cir. 2016) ......................................3

*In re Morgan*, 360 B.R. 507, 515-16 (Bankr. N.D. Tex. 2007)................................3

*In re Saldana*, 534 B.R. 678, 683 (N.D. Tex. 2015).....................................................5

*United States Brass Corp.* 301 F.3d 296, 307 (5th Cir. 2002) ...........................10, 11

## Statutes and Rules

11 U.S.C. §§ 101(5) .................................................................................................3

11 U.S.C. §§ 101(10) ...............................................................................................3

# REPLY BRIEF OF THE APPELLANTS

NexPoint Advisors, L.P. ("NexPoint"), Highland Capital Management Fund Advisors, L.P. ("HCMFA"), and The Dugaboy Investment Trust ("Dugaboy," and collectively, the "Appellants"), hereby submit this *Reply Brief of the Appellants* (the "Brief"), in support of which they would respectfully state as follows:

## I.   SUMMARY

The crux of the Debtor's argument is that the Indemnification Trust Order does not expand the universe of people indemnified by the Claimant Trust because various Plan documents, including the Claimant Trust Agreement, already provide for the indemnification approved by the Indemnification Trust Order. This is wrong. What the Debtor ignores is that, while the persons now indemnified were indeed entitled to indemnification before, it was not from the Claimant Trust. Instead, it was from the Debtor or from the Litigation Trust; two separate legal entities, with separate assets. It is the Claimant Trust that pays creditors, and that Claimant Trust is now saddled with other entities' indemnification obligations, which will come ahead of distributions to creditors.

That is a plan modification because it directly alters the "legal relationships among the debtor and its creditors" and because it directly affects the creditors "right to payment." This of course is in addition to the undisputed facts: a new trust is created, it is funded with $2.5 million of cash that would otherwise go to the Claimant Trust, and the Claimant Trust obligates itself on a $22.5 million note

that has priority over the creditors—none of which is provided in the Plan or in any "Plan Indemnification Documents."

If these changes do not rise to the level of a plan modification, then it is difficult imagine what does. If these changes can be effectuated by simple motion, then why can't any change be done by motion? Section 1127(a) of the Bankruptcy Code must have meaning, and this Court should not permit it—and its critical protections—to be written out of the Bankruptcy Code.

## II.   STANDING

While the Debtor does not discuss the Appellants' standing in any meaningful way, the Debtor suggests that the Appellants lack standing and that they lack economic interests in this Appeal. *See* Appellee Brief at n. 3. The Debtor is wrong on both counts. The Bankruptcy Court expressly found that the Appellants had standing to contest the Plan. R. 778; R. 2701:15-16 ("[t]he standing of these entities to object to the Plan exists"). In fact, at the hearing on the Indemnity Trust Motion, the Debtor argued that the Appellants lacked standing, but noted that the Bankruptcy Court would likely conclude that the Appellants had standing (what the Debtor labeled "tenuous standing"). R. 3648: 2-7. The Bankruptcy Court did not decide the issue expressly. However, since the Bankruptcy Court proceeded with the hearing and with a substantive ruling, one can conclude that the Bankruptcy Court rejected the Debtor's standing argument, as it had done before.

Regardless, NexPoint has multiple prepetition unsecured claims, and NexPoint and HCMFA together have administrative claims, all of which, while currently under objection, have yet to be disallowed or otherwise adjudicated. The Debtor concedes that NexPoint holds prepetition claims of $39,000, and postpetition claims of $14 million, even though the Debtor disputes these claims. *See* Docket No. 25 at p. 10. A creditor holding a disputed claim has standing in a bankruptcy case unless and until the claim is disallowed. *See, e.g., In re Morgan*, 360 B.R. 507, 515-16 (Bankr. N.D. Tex. 2007).

Standing in bankruptcy appeals, the "person aggrieved test," generally requires that the appellant be "directly and adversely affected pecuniarily by the order of the bankruptcy court." *In re Delta Produce LP*, 845 F.3d 609, 619 (5th Cir. 2016). NexPoint and HCMFA are "creditors" because they hold "claims." 11 U.S.C. §§ 101(5) & 101(10). Their claims are to be paid by the Claimant Trust under the Plan. As briefed in their opening brief and as discussed below, the Indemnity Trust Order greatly expands the Claimant Trust's indemnification obligations and removes up to $25 million from creditors' recoveries. The Plan does not project full payment on prepetition claims, but 71%. R. 516. Therefore, every dollar that now no longer goes towards unsecured claims will reduce this recovery. Dugaboy holds residual trust interests against the Creditor Trust to be paid after all unsecured creditors are paid in full. Every dollar that goes towards the new Indemnity Trust diminishes the potential of a recovery by Dugaboy.

True, the prepetition claims are not large, but standing does not look to the size of one's claim. This is a large bankruptcy case, and these claims appear small by comparison. But there are many small bankruptcy cases, where parties litigate over a few thousand dollars, and they have standing to litigate and to appeal. There is no such thing as "a little standing." *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) ("[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("[e]conomic harm to a business clearly constitutes injury-in-fact. And the amount is irrelevant. A dollar of economic harm is still an injury-in-fact for standing purposes."). A litigant has standing, or it does not. To suggest otherwise is to suggest that the doors to federal court are open only to those with a lot of money on the line, or that one's lack of a large economic interest in the dispute means that a court is free to ignore binding law.

But there is an additional reason why the Appellants have standing. As the Debtor concedes, without the Indemnity Trust Order, the Plan would not have gone effective. Ro. 642 ("[i]f the Court approves this Motion, the Debtor will waive the condition to the Effective Date requiring the Confirmation Order to become a Final Order and thereby paving the way for the Plan to become effective."); *see also* Appellee's Brief p. 4 n. 10; p. 6. The Plan seriously affects the Appellants' rights, including by subjecting them to a permanent injunction and by exculpating their claims, and the claims of innocent investors whose investments they manage and

4

advise, against non-debtor entities. R. 463-67. Those matters are on direct appeal to the Fifth Circuit and there is no question of the Appellants' standing to appeal a plan that, among other things, enjoins them. The "person aggrieved" pecuniary interest test is met by "diminishing his property, increasing his burdens, or impairing his rights." *In re Saldana*, 534 B.R. 678, 683 (N.D. Tex. 2015). As the Plan would not have become effective without the Indemnification Trust Order, and the Plan certainly impairs the Appellants' rights, the Appellants have standing to appeal the Indemnification Trust Order irrespective of their claims against the Debtor because, without the Indemnification Trust Order, the Appellants would not now be subject to permanent injunctions and have their claims against third parties exculpated.

### III.   REPLY

#### A.   THE UNIVERSE OF INDEMNIFIED PARTIES IS NOW GREATLY EXPANDED

In their opening brief, the Appellants argued that the Indemnification Trust Order greatly expanded the universe of people indemnified by the Claimant Trust from that approved in the Plan. The Debtor counters this point by arguing that the Claimant Trust Agreement, approved by the Bankruptcy Court as part of the Plan, already requires the Claimant Trust to indemnify all of these same people. This argument is wrong—the Plan and the Claimant Trust Agreement do not already indemnify many of the now indemnified people, as those people were indemnified by separate entities, and not by the Claimant Trust.

First, if the Claimant Trust Agreement already provided what the Debtor says it does, then why file and prosecute the Indemnity Trust Motion and why enter the Indemnity Trust Order? Clearly the Indemnity Trust Order was doing *something* not already provided for.

Second, the Debtor's argument actually proves the Appellants' points. As noted in the Appellants' opening brief, the Indemnification Trust Order provided for indemnification (by the new trust) of the "Indemnified Parties." R. 644. "Indemnified Parties" are defined as:

> (i) the Claimant Trustee (including each former Claimant Trustee), (ii) Delaware Trustee, (iii) the Oversight Board, and (iv) all past and present Members of the Oversight Board, and the employees, agents, and professionals of each of the foregoing; (b) the Litigation Trust are (i) the Litigation Trustee (including each former Litigation Trustee), (ii) the Oversight Board, and (iii) all past and present Members of the Oversight Board, and the employees, agents, and professionals of each of the foregoing; and (c) the Reorganized Debtor are (i) New GP LLC (as the Reorganized Debtor's general partner) and each member, partner, director, officer, and agent thereof, (ii) each person who is or becomes an officer of the Reorganized Debtor, and (iii) each person who is or becomes an employee or agent of the Reorganized Debtor if New GP LLC determines in its sole discretion that such employee or agent should be indemnified.

R. 643 (n. 8).

The Claimant Trust Agreement, however, provides for the following indemnification:

> The Claimant Trustee (including each former Claimant Trustee), Delaware Trustee, Oversight Board, and all past and present Members (collectively, in their capacities as such, the "<u>Indemnified Parties</u>") shall be indemnified by the Claimant Trust against and held harmless

> by the Claimant Trust from any losses, claims, damages, liabilities or expenses . . .   The Claimant Trust shall indemnify and hold harmless the employees, agents and professionals of the Claimant Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.

R. 955 (§ 8.2).

Nowhere does this provide for the indemnification of the following, as otherwise provided in the Indemnification Trust Order: (i) the Litigation Trustee; (ii) the Oversight Board of the Litigation Trust; (iii) all past and present members of the Litigation Trust oversight board, and the employees, agents, and professionals thereof and of the Litigation Trust; (iv) the New GP LLC, meaning the reorganized Debtor's general partner; (v) each member, partner, director, officer, and agent thereof; (vi) each person who is or becomes an officer of the reorganized Debtor; and (vii) each person who is or becomes an employee or agent of the reorganized Debtor if New GP LLC determines in its sole discretion that such employee or agent should be indemnified.

It is true, however, that the foregoing persons were entitled to indemnification under the Plan Implementation Documents, but <u>not by the Claimant Trust</u>.  In this respect, the Debtor argues that two separate documents, the Litigation Trust Agreement and the Reorganized Limited Partnership Agreement, provide for "nearly identical" indemnification as the Claimant Trust Agreement.

The Litigation Trust Agreement provides the following indemnification, as cited to by the Debtor in its brief:

> The Litigation Trustee (including each former Litigation Trustee), Oversight Board, and all past and present Members (collectively, the "Indemnified Parties") <u>shall be indemnified by the Litigation Sub-Trust</u> against and held harmless by the Litigation Sub-Trust from any losses, claims, damages, liabilities or expenses . . . The Litigation Sub-Trust shall indemnify and hold harmless the employees, agents and professionals of the Litigation Sub-Trust and Indemnified Parties to the same extent as provided in this Section 8.2 for the Indemnified Parties.

R. 978 at § 8.2 (emphasis added).

The Reorganized Limited Partnership Agreement provides the following indemnification, as cited to by the Debtor in its brief:

> <u>the Partnership shall indemnify</u> each Covered Person for any and all losses, claims . . . demands, costs, damages, liabilities (joint and several), expenses of any nature (including attorneys' fees and disbursements), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative . . . "Covered Person" means each of the following: (i) the General Partner, and each member, partner, director, officer, and agent thereof, (ii) each person who is or becomes an Officer of the Partnership on or after the date of this Agreement, and (iii) each person who is or becomes an employee or agent of the Partnership on or after the date of this Agreement if the General Partner determines in its sole discretion that such employee or agent should be a Covered Person.

R. 991-92 (emphasis added).

Thus, under the Plan Implementation Documents, the Litigation Trust was responsible for indemnifying its indemnitees, and the Debtor was responsible for indemnifying its indemnitees. In neither event was the Claimant Trust responsible for indemnify any of these indemnitees. What the Indemnification Trust Order did, therefore, was to take assets from the Claimant Trust that would not have been

8

used to indemnify these additional indemnitees, and it expanded the universe of people indemnified by the Claimant Trust to now include these indemnitees. No matter how the Debtor pitches it, assets that would have gone to creditors under the Plan now go to new indemnitees.

The Court should not permit the Debtor this "sleight of hand." What the Debtor has done with the Indemnification Trust Order is *exactly* as the Appellants argued: it has "greatly expanded" "the universe of entities and people indemnified by the Claimant Trust." Appellants Brief at p. 5 (emphasis added). None of the foregoing people, including the Debtor, its general partner, and their officers, employees, professionals, and agents were indemnified by the Plan *or* by the Claimant Trust Agreement, even if they were indemnified before by the Litigation Trust or the Debtor itself. No matter what pejoratives the Debtor uses to cloud this issue (such as the Appellants' "misleading rhetorical flourishes"), this simple fact stands out: the universe of people originally indemnified by the Claimant Trust, whether pursuant to the Plan or the Claimant Trust Agreement, has been greatly expanded because the Claimant Trust is now obligated to indemnify all of the persons that the Litigation Trust and the Debtor were required to indemnify. That is a plan modification.

The Debtor may argue that, under the Plan and the Claimant Trust Agreement, the Claimant Trust had the ability to advance funds to the Litigation Trust or to the Debtor for indemnification costs. While this would be possible, it

9

would be discretionary and would be subject to multiple internal controls and creditor approval (through the various oversight boards). Taking that discretionary possibility, and converting it to an affirmative, securitized, legal obligation, is something entirely different. As the Appellants pointed out, in *United States Brass Corp.*, something seemingly insignificant as requiring the arbitration of claims as opposed to judicial determination was a plan modification. 301 F.3d 296, 307 (5th Cir. 2002). Presumably, the parties could have discretionarily agreed to arbitrate, just as the Claimant Trust could have discretionarily agreed to pay other entities' indemnification obligations, but making it a legal requirement rendered the result a plan modification.

**B.   THE INDEMNIFICATION TRUST IS NOT THE EQUIVALENT OF D&O INSURANCE**

As the Appellants pointed out, the Plan required the Debtor and Claimant Trust to obtain insurance to cover indemnification expenses, which the Debtor was unable to obtain. True, the Debtor could, and it did, waive this condition precedent to the Plan's effectiveness. But the Debtor is wrong to now argue that the "Indemnity Sub-Trust is the functional equivalent of the D&O Insurance originally contemplated by the Plan." Appellee Brief at pp. 10-11. Indeed, the Debtor argues that the "Indemnity Sub-Trust is, from the creditor' perspective, superior to D&O Insurance." *Id*. at p. 11 n. 29. Why not then put it to the creditors to vote?

One purchases insurance to protect against greater losses; that is the whole point of insurance. While true that the Plan contemplated that the three entities created under the Plan (the Claimant Trust, the Litigation Trust, and the reorganized Debtor) would have their respective indemnification obligations, it also contemplated—even required—insurance to cover these obligations. If a change from a plan providing for the judicial determination of claims to one requiring the arbitration of claims was a plan modification in *United States Brass Corp.*, then a change from the Plan's requirement of D&O insurance to the new Indemnification Trust structure is surely a modification as well. 301 F.3d 296, 307 (5th Cir. 2002). Simply put, D&O insurance is not the equivalent or the "functional equivalent" of the Indemnification Trust any more than arbitration is the equivalent of judicial determination, even if the end result may be the same.

Similarly, the Debtor argues that an "honest review" of the Plan reveals that there is no difference between the Claimant Trust creating an indemnification reserve of $25 million or funding the Indemnification Trust with $25 million. *See* Appellee Brief at pp. 13-14. Why not just set up the reserve then? Because the Debtor's argument is wrong. The Plan provides as follows:

> The Claimant Trustee may establish a reserve for the payment of Claimant Trust Expense (including, without limitation, any reserve for <u>potential indemnification claims as authorized and provided under the Claimant Trust Agreement</u>), and shall periodically replenish such reserve, as necessary.

R. 444 (emphasis added).

11

As discussed above, the Claimant Trust Agreement provided that the Claimant Trust would indemnify one group of indemnitees, and the Claimant Trust was indeed free to establish a reserve for those indemnification obligations. But nothing authorized the Claimant Trust to establish a reserve to pay for the Litigation Trust's or Debtor's separate indemnification obligations.

C. **THE FACTS OBJECTIVELY DEMONSTRATE A PLAN MODIFICATION**

The Plan created only two trusts: the Claimant Trust and the Litigation Trust. Under the Indemnification Trust Order, a wholly new trust is created, with its own assets. That is a fact.

The Plan provided that available cash would go to the Claimant Trust. Under the Indemnification Trust Order, $2.5 million of that cash now goes to the Indemnification Trust. That is a fact.

The Plan nowhere contemplated that the Claimant Trust would immediately obligate itself on a new $22.5 million note, of higher priority (as it is a cost of administering the Claimant Trust) than the distributions to creditors. That is a fact.

The Plan required D&O insurance, which requirement the Debtor waived. The Debtor replaced this requirement with the Indemnification Trust. That is a fact.

The Claimant Trust is now legally obligated to pay the indemnification expenses of the Litigation Trust and the Debtor, two separate legal entities. That is a fact.

While the Debtor cavalierly engages in *ad hominem* attacks against the Appellants, the Appellants are not inventing these facts and they are not "grossly misconstruing" the case law. The Debtor's actions and decisions led to these facts irrespective of any alleged motivations of the Appellants. If: (i) adding a whole new trust; (ii) removing $2.5 million from creditor recoveries; (iii) potentially removing an additional $22.5 million from their recoveries; and (iv) obligating the Claimant Trust to pay for the indemnification obligations of two separate legal entities is not a change in the legal relationship between the Debtor and its creditors, and if it does not affect the creditors' right to payment, such as to be a plan modification, then it is difficult to envision circumstances that would.

This was the result of a problem that the Debtor created. It could have originally sought to purchase insurance for whoever it wanted to, including the new indemnitees, without any issues under the Plan. It could have built a backstop into the Plan providing for an alternative mechanism if it could not purchase insurance. But perhaps more than anything, it is what the Debtor does not address that proves the point. If all of this is perfectly fine, if the Indemnification Trust is the "functional equivalent" of D&O insurance, if indeed the creditors really are better off, then why not follow the plan modification provisions and put it to a vote? There was no urgency and, if there was, the Bankruptcy Court was free to expedite the disclosure and voting deadlines. That the Debtor did not follow the plan modification path tells this Court all that it needs to know: the creditors would

have rejected a plan modification because the Indemnification Trust Order does materially reduce their recoveries and expectations. That is a plan modification.

## IV. CONCLUSION

Section 1127(a) of the Bankruptcy Code must mean something. *United States Brass Corp.* confirms that it does indeed mean something, and what it means is simple: when a plan is being changed such that the creditor-debtor relationship is changed from what the plan provides, and creditor expectations are changed, then it is a plan modification subject to disclosure requirements, voting, and confirmation. Adding a wholly new trust, funding it with $25 million previously earmarked for creditors, replacing D&O insurance with a cumbersome trust and trustee, and expanding the universe of indemnification obligations that the creditors will pay for, is objectively a plan modification. The Debtor's argument of expediency, or of "no harm, no foul," cannot be permitted to override the Bankruptcy Code and its important creditor protections.

RESPECTFULLY SUBMITTED this 1st day of December, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina

    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard St., Ste. 3800
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR APPELLANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGE-MENT FUND ADVISORS, L.P.**

-- and --

**HELLER, DRAPER & HORN, L.L.C.**

By: /s/ Douglas Draper

    Douglas Scott Draper, Esq.
    650 Poydras Street
    Suite 2500
    New Orleans, LA 70130-0000
    Email: ddraper@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 1st day of December, 2021, he caused a true and a correct copy of the foregoing document to be served on counsel for the Appellee, Highland Capital Management, L.P., including through Jeff Pomerantz , Esq., one of its counsel of record, via the Court's CM/ECF system.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.

## CERTIFICATE OF COMPLIANCE WITH RULE 8015(h)

1. This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because this brief contains 3,461 words, excluding the parts of the brief exempted by Rule 8015(g).

2. This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman, 14 pt. font.

Dated: December 1, 2021.

By: /s/ Davor Rukavina
Davor Rukavina, Esq.