Case No. 3:21-cv-01895-D

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

In re: Highland Capital Management, L.P.,

      Reorganized Debtor.

HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS LP, NEXPOINT ADVISORS LP, and THE DUGABOY INVESTMENT TRUST,

Appellants

v.

HIGHLAND CAPITAL MANAGEMENT, L.P.

Appellee

On Appeal from the
United States Bankruptcy Court, Northern District of Texas, Dallas Division
Case No. 19-34054-sgj11 (Hon. Stacey G.C. Jernigan)

## APPELLEE'S MOTION TO DISMISS APPEAL AS CONSTITUTIONALLY MOOT

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Jordan A. Kroop (NY Bar No. 2680882)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110

*Counsel for Appellee*

# TABLE OF CONTENTS

**Page**

Procedural Posture ........................................................................................................ 1

HCMFA Has No General Unsecured Claims Conferring Standing ............................................. 2

NexPoint Has No General Unsecured Claims Conferring Standing ........................................... 3

Dugaboy Has No Claims Conferring Standing.......................................................................... 5

Appellants Lack Standing; Appeal is Now Constitutionally Moot ................................................ 6

NexPoint's Newly-Acquired Claim Does Not Confer Standing ................................................. 10

This Appeal is Constitutionally Moot....................................................................................... 13

Conclusion .............................................................................................................................. 14

DOCS_NY:44876.7 36027/003

## CASES

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) ............................................................................................. 15, 17

*Board of License Comm'rs v. Pastore,*
  469 U.S. 238, 105 S. Ct. 685, 686, 83 L. Ed. 2d 618 (1985) ....................................... 6

*Chevron, U.S.A. v. Traillour Oil Co.,*
  987 F.2d 1138 (5th Cir. 1993). ........................................................................ 18

*Dish Network Corp. v. DBSD N. Am. (In re DBSD N. Am.),*
  634 F.3d 79 (2d Cir. 2010) ............................................................................. 11

*Edwards Family P'ship v. Johnson (In re Cmty. Home Fin. Servs.),*
  990 F.3d 422 (5th Cir. 2021) ........................................................................... 11

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.),*
  333 B.R. 205 (S.D.N.Y. 2005) .......................................................................... 17

*Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.),* 340 B.R. 180 (Bankr.
  S.D.N.Y. 2006) ............................................................................................ 17

*Fortune Nat. Res. Corp. v. United States DOI,*
  806 F.3d 363 (5th Cir. 2015) ........................................................................... 13

*Furlough v. Cage (In re Technicool Sys.),*
  896 F.3d 382 (5th Cir. 2018) ...................................................................... passim

*Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy Inc.),*
  395 F.3d 198 (5th Cir. 2004) ........................................................................... 10

*Goldin v. Bartholow,*
  166 F.3d 710 (5th Cir. 1999) ........................................................................... 18

*Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.),*
  684 F.3d 581 (5th Cir. 2012) ............................................................................. 5

*Hogan v. Mississippi University for Women,*
  646 F.2d 1116 (5th Cir. 1981) .......................................................................... 18

*In re Fondiller,*
  707 F.2d 441 (9th Cir. 1983) ........................................................................... 11

*In re KB Toys Inc.,*
  736 F.3d 247 (3d Cir. 2013) ............................................................................ 17

DOCS_NY:44876.7 36027/003

*In re Mirant Corp.,*
    348 B.R. 725 (Bankr. N.D. Tex. 2006) ................................................................. 17

*Kane v. Johns Manville Corp.,*
    843 F.3d 636 (2d. Cir. 1988) ............................................................................... 11

*Kitty Hawk Aircargo, Inc. v. Chao,*
    418 F.3d 453 (5th Cir. 2005) ................................................................................ 5

*Manges v. Seattle-First Nat'l Bank (In re Manges),*
    29 F.3d 1034 (5th Cir. 1994) ...................................................................... 5, 6, 18

*Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation,*
    32 F.3d 205 (5th Cir. 1994) ................................................................................ 11

*Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.,*
    778 F.3d 502 (5th Cir. 2015) .............................................................................. 16

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,*
    513 U.S. 18 (1994) ............................................................................................... 5

*United States Parole Comm'n v. Geraghty,*
    445 U.S. 388 (1980) ..................................................................................... 15, 17

*United States v. Cherry Street Partners, L.P. (In re Alliance Health of Fort Worth, Inc.),*
    240 B.R. 699 (N.D. Tex. 1999) .......................................................................... 16

*United States v. Johnson,*
    632 F.3d 912 (5th Cir. 2011) .............................................................................. 16

*Zardinovsky v. Arctic Glacier Income Fund (In re Arctic Glacier Int'l Inc.),*
    901 F.3d 162 (3d Cir. 2018) ............................................................................... 17

**STATUTES**

11 U.S.C. § 1129(b)(2)(C) ......................................................................................... 14

11 U.S.C. § 327(a) ..................................................................................................... 12

**OTHER AUTHORITIES**

*Black's Law Dictionary* (6th ed. 1990) at 380 ......................................................... 17

Appellee Highland Capital Management, L.P. ("**Highland**") respectfully moves this Court in accordance with Federal Rule of Bankruptcy Procedure 8013(a) for an order dismissing this appeal as constitutionally moot.[1] No Appellant possesses a claim against Highland's bankruptcy estate that confers constitutional standing to appeal a bankruptcy court order. No Appellant is an adverse party with sufficient legal interest to maintain this appeal. This appeal is now moot, presenting no Article III case or controversy and leaving this Court with no constitutional jurisdiction to hear this appeal.

## Procedural Posture

On Friday, January 7, 2022, the bankruptcy court entered an order[2] approving a stipulation disallowing the prepetition general unsecured claims against the estate held by Appellant NexPoint Advisors, L.P. ("**NexPoint**"), on which its standing to appeal was based. Similarly, neither Appellant Highland Capital Management Fund Advisors LP ("**HCMFA**") nor Appellant The Dugaboy Investment Trust

---

[1] *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,* 513 U.S. 18 (1994).

[2] Bankruptcy Docket No. 3166. This motion cites several documents appearing on the docket of the bankruptcy case below, *In re Highland Capital Management, L.P.,* Case No. 19-34054-sgj11, U.S. Bankruptcy Court, Northern District of Texas (the "**Bankruptcy Docket**"). Appellee respectfully requests that this Court take judicial notice of the Bankruptcy Docket and its contents, **not** as an attempt to supplement the record on appeal but to provide this Court with "information 'capable of accurate and ready determination by resort to a source whose accuracy on the matter cannot reasonably be questioned.'" *Halo Wireless, Inc. v. Alenco Communs. Inc. (In re Halo Wireless, Inc.),* 684 F.3d 581, 597 (5th Cir. 2012) (quoting *Kitty Hawk Aircargo, Inc. v. Chao,* 418 F.3d 453, 457 (5th Cir. 2005)) (noting that "it is within our discretion to take judicial notice" of proceedings in other courts). "Thus, this court may review evidence as to subsequent events … which bears upon the issue of mootness." *Manges v. Seattle-First Nat'l Bank (In re Manges),* 29 F.3d 1034, 1041 (5th Cir. 1994) (finding appeal moot).

DOCS_NY:44876.7 36027/003

("**Dugaboy**") have any prepetition claims against the Highland bankruptcy estate, as all such claims were consensually expunged or withdrawn.[3] As a result, none of the Appellants asserts prepetition general unsecured claims against the estate; none of the Appellants is any longer a "person aggrieved" entitled to prosecute this bankruptcy appeal under Fifth Circuit precedent.[4]

Because this motion is brought under Bankruptcy Rule 8013(a), Appellant's response is due within seven days, and Appellee's reply is due within seven days after that, Appellee respectfully requests that the Court consider this motion simultaneously with oral argument on this appeal and Appellee's motion to dismiss the appeal as equitably moot, scheduled for January 25, 2022.

### HCMFA Has No General Unsecured Claims Conferring Standing

HCMFA filed two prepetition claims in the bankruptcy case below [Claim Nos. 95, 119]. After Highland objected to these claims, HCMFA agreed to have the

---

[3] *Manges,* 29 F.3d at 1041 (5th Cir. 1994):

> Mootness is evaluated by the reviewing court, which may take notice of facts not available to the trial court if they go to the heart of the court's ability to review. *See Board of License Comm'rs v. Pastore,* 469 U.S. 238, 240, 105 S. Ct. 685, 686, 83 L. Ed. 2d 618 (1985) ('When a [post-appeal] development … could have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court **without delay**."); … Thus, this court may review evidence as to subsequent events not before the courts below which bears upon the issue of mootness.

(Emphasis in original).

[4] As discussed below, two Appellants assert an administrative expense claim against the Highland estate, and NexPoint purports to have acquired a general unsecured claim last week. None of these claims, for the reasons discussed below, confer appellate standing on any Appellants.

claims expunged in July 2020.[5] HCMFA's only current claim is an administrative expense claim against the Highland bankruptcy estate asserted jointly with NexPoint (the "**Administrative Claim**"), which is subject to proceedings currently pending in the bankruptcy court to disallow the Administrative Claim in its entirety.[6] But even if the Administrative Claim were allowed, it will be paid in full under Highland's confirmed plan of reorganization notwithstanding the existence of the Indemnity Sub-Trust.[7] Because the outcome of this appeal can have no pecuniary effect on HCFMA or the Administrative Claim, HCFMA lacks standing to prosecute this appeal.

### NexPoint Has No General Unsecured Claims Conferring Standing

Similarly, NexPoint filed two prepetition claims in the bankruptcy case below [Claim Nos. 104, 108]. After Highland objected to the claims, NexPoint agreed to have these claims expunged in July 2020.[8] Following the expungement of its prepetition claims, NexPoint acquired five prepetition claims filed by five former Highland employees (the "**Employee Claims**").[9] It was on the basis of the Employee Claims that NexPoint objected to the bankruptcy court's approval of the Indemnity Sub-Trust and subsequently appealed the bankruptcy court's order doing so (the

---

[5] Bankruptcy Docket No. 1155.

[6] A trial on disallowance of the Administrative Claim is set in the bankruptcy court for February 8, 2022.

[7] *See Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* (the "**Plan**"), ROA 410 *et seq*.

[8] Bankruptcy Docket No. 1155.

[9] *See* Bankruptcy Docket Nos. 2044, 2045, 2046, 2047, and 2266, which are notices of claim transfer.

"**Indemnity Sub-Trust Order**"). On January 7, 2022, the bankruptcy court entered an order approving a stipulation[10] under which NexPoint withdrew all the Employee Claims with prejudice.[11] As of the entry of that order, *every one of the prepetition claims against the Highland bankruptcy estate that NexPoint possessed when it commenced this appeal has been withdrawn and disallowed*.

On January 3, 2022, months after it commenced this appeal, NexPoint filed another notice of claim transfer, purporting to reflect that it had acquired the claim of Hunter Covitz (the "**Covitz Claim**").[12] *NexPoint did not possess the Covitz Claim when it commenced this appeal.* Importantly, Mr. Covitz never objected to the bankruptcy court's approval of the Indemnity Sub-Trust. As such, the Covitz Claim, in Mr. Covitz's hands immediately before NexPoint acquired it, could not confer standing on Mr. Covitz to appeal the Indemnity Sub-Trust Order. NexPoint's subsequent acquisition of the Covitz Claim likewise cannot and does not confer standing on NexPoint to prosecute this appeal.[13]

---

[10] Bankruptcy Docket No. 3160.

[11] Bankruptcy Docket No. 3166.

[12] Bankruptcy Docket No. 3146.

[13] Moreover, the Covitz Claim, before it was purportedly transferred to NexPoint, was already subject to a objection pending in the bankruptcy court that would disallow that claim entirely. *See* Bankruptcy Docket Nos. 3002, 3147, 3167. Mr. Covitz defaulted in responding to the objection, and Highland, through the Litigation Sub-Trust, filed a reply informing the bankruptcy court that the Covitz Claim should be disallowed.

4

NexPoint no longer possesses a prepetition claim against the Highland estate that can confer standing on NexPoint to prosecute this appeal. (As noted above, the Administrative Claim cannot confer standing on either NexPoint or HCFMA.)

### Dugaboy Has No Claims Conferring Standing

Appellant Dugaboy filed three proofs of claim in the bankruptcy case below: (a) proof of claim no. 177, filed on April 23, 2020; (b) proof of claim no. 131, filed on April 8, 2020; and (c) proof of claim no. 113, filed on April 8, 2020 (collectively, the "**Dugaboy Claims**"). On October 27, 2021, and November 10, 2021, the bankruptcy court entered orders approving Dugaboy's agreement to withdraw all three claims with prejudice.[14]

Consequently, Dugaboy has no claims against Highland's bankruptcy estate. Its only interest in the estate is a pre-bankruptcy 0.1866% limited partnership interest in Highland, which was canceled under the confirmed Plan. Dugaboy has no pecuniary interest in Highland or the bankruptcy estate and no pecuniary interest in the outcome of this appeal. Dugaboy has no standing as an Appellant.

The following summarizes the Appellants' asserted claims against Highland's estate and their resolution:

---

[14] Bankruptcy Docket Nos. 2965, 2966, 3007.

5

| Summary of Appellants' Claims | | | |
|---|---|---|---|
| Appellant | Claims at Time of Appeal | Disposition | Result |
| HCMFA | Claim No. 95 | Expunged | No standing |
| | Claim No. 119 | Expunged | No standing |
| | Admin Claim | Pending Objection | No standing; Admin Claim unaffected by appeal |
| NexPoint | Claim No. 104 | Expunged | No standing |
| | Claim No. 108 | Expunged | No standing |
| | Employee Claims | Withdrawn / disallowed | No standing |
| | Admin Claim | Pending Objection | No standing; Admin Claim unaffected by appeal |
| | Covitz Claim | Pending Objection | No standing; Covitz did not object to Indemnity Sub-Trust |
| Dugaboy | Dugaboy Claims | Withdrawn / disallowed | No standing |
| | Prepetition LP interest | Canceled | No standing; contingent equity interest insufficient for standing under 5th Circuit law |

## Appellants Lack Standing; Appeal Is Now Constitutionally Moot

Standing to appeal a bankruptcy court decision is a question of law.[15] The standard for determining appellate standing in the bankruptcy context is governed by the "person aggrieved" test, which requires a showing that the appellant was aggrieved by the order being challenged.[16] "The 'person aggrieved' test is an even more exacting standard than traditional constitutional standing."[17] In other words, "Because bankruptcy cases typically affect numerous parties, the 'person aggrieved' test demands a higher causal nexus between act and injury …."[18] Appellants "must

---

[15] *Furlough v. Cage (In re Technicool Sys.)*, 896 F.3d 382, 385 (5th Cir. 2018).

[16] *Id.*

[17] *Gibbs & Bruns LLP v. Coho Energy, Inc. (In re Coho Energy Inc.)*, 395 F.3d 198, 202 (5th Cir. 2004).

[18] *Id.*

DOCS_NY:44876.7 36027/003

show that [they] were 'directly and adversely affected pecuniarily by the order of the bankruptcy court.'"[19] Appellants bear the burden of alleging facts sufficient to demonstrate that they have standing to appeal.[20] Collectively, the only interests in the estate that the Appellants have that existed when they began this appeal are the Administrative Claim (HCMFA and NexPoint) and an extinguished equity interest (Dugaboy), which are insufficient to confer standing to prosecute this appeal.

The Fifth Circuit Court of Appeals has strictly limited appellant standing in bankruptcy cases:

> Bankruptcy courts are not Article III creatures bound by traditional standing requirements. But that does not mean disgruntled litigants may appeal every bankruptcy court order willy-nilly. Quite the contrary. Bankruptcy cases often involve numerous parties with conflicting and overlapping interests. Allowing each and every party to appeal each and every order would clog up the system and bog down the courts. Given the specter of such sclerotic litigation, standing to appeal a bankruptcy court order is, of necessity, quite limited.[21]

In *Technicool*, the debtor's equity holder, Robert Furlough, opposed the debtor's employment of special counsel to pursue litigation. After the bankruptcy court overruled his objection, Furlough appealed, first to the district court and, when

---

[19] *Id*. (quoting *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)); *see also Dish Network Corp. v. DBSD N. Am. (In re DBSD N. Am.)*, 634 F.3d 79, 88-89 (2d Cir. 2010) ("an appellant must be 'a person aggrieved' …. An appellant … must show not only 'injury in fact' under Article III but also that the injury is 'direct[]' and 'financial'"), quoting *Kane v. Johns Manville Corp*., 843 F.3d 636, 642 & n.2 (2d. Cir. 1988); *see also Edwards Family P'ship v. Johnson (In re Cmty. Home Fin. Servs.)*, 990 F.3d 422, 426 (5th Cir. 2021) (same).

[20] *See Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 208 (5th Cir. 1994).

[21] *Technicool*, 896 F.3d at 385 (citations omitted).

he did not prevail there, to the Fifth Circuit Court of Appeals.[22] The Circuit Court also affirmed, explicitly rejecting Furlough's argument that additional administrative expenses for special counsel would make a recovery on his equity less likely because it could reduce recoveries by creditors, whose claims had priority over equity.

Significantly, the court further held that some theoretical possibility relating to out-of-the-money equity interest did not accord him standing to appeal: "This speculative prospect of harm is far from a direct, adverse, pecuniary hit. Furlough must clear a higher standing hurdle: *The order must burden his pocket before he burdens a docket.*"[23] The Fifth Circuit reasoned that the bankruptcy court order that was the subject of Furlough's appeal—the appointment of a professional under Bankruptcy Code § 327(a)—did not *directly* affect Furlough's pecuniary interests despite his out-of-the-money equity interests. In other words, just because Furlough "feels grieved by [the professional's] appointment does not make him a 'person aggrieved' for purposes of bankruptcy standing."[24]

The Fifth Circuit's reason for adopting the "pecuniary interest" test for bankruptcy appeals speaks directly to the circumstances under which the Appellants now before this Court have burdened this Court's docket:

---

[22] *Id.* at 384–85.

[23] *Id.* (emphasis added).

[24] *Id.*

In bankruptcy litigation, the mishmash of multiple parties and multiple claims can render things labyrinthine, to say the least. To dissuade umpteen appeals raising umpteen issues, courts impose a stringent-yet-prudent standing requirement: *Only those directly, adversely, and financially impacted by a bankruptcy order may appeal it.*[25]

The Fifth Circuit again strongly reiterated this approach just one month ago in *Dean v. Seidel (In re Dean),*[26] explaining that the "person aggrieved test … an even more exacting standard than traditional constitutional standing," requires "that the *order* of the bankruptcy court must directly and adversely affect the appellant pecuniarily."[27] The Circuit Court stated simply, "Appellants cannot demonstrate bankruptcy standing when the court order to which they are objecting does not directly affect their wallets."[28]

Here, the Indemnity Sub-Trust, the bankruptcy court order approving it, and the outcome of this appeal do not and cannot directly affect any of the Appellants' wallets. No Appellant has a prepetition claim against Highland's bankruptcy estate that it held when this appeal began. No Appellant is a beneficiary of the Claimant Trust on account of any claim it held when this appeal began. Any recovery on account of the Administrative Claim is entirely unrelated to and unaffected by the creation of the Indemnity Sub-Trust or the outcome of this appeal because the

---

[25] *Id.* at 384 (emphasis added).

[26] No. 21-10468, 2021 U.S. App. LEXIS 36022 (5th Cir. Dec. 7, 2021) (a reported decision that has not yet been included in the Fed.4th reporter).

[27] 2021 U.S. App. LEXIS 36022 at *3, quoting *Fortune Nat. Res. Corp. v. United States DOI,* 806 F.3d 363, 367 (5th Cir. 2015) (emphasis in original).

[28] *Id.* at *4.

9

Administrative Claim, if allowed, will be paid in full irrespective of the Indemnity Sub-Trust's existence. Even Dugaboy's infinitesimal pre-bankruptcy equity interests in Highland have been canceled.[29] (And had it not been canceled, it would still be insufficient to confer standing.)[30] With no pecuniary interest in the bankruptcy estate, these Appellants lack standing under Fifth Circuit law. Even a reversal of the bankruptcy court's order approving the Indemnity Sub-Trust would not "put any money in [Appellants'] pocket," as required by the Fifth Circuit.[31]

### NexPoint's Newly-Acquired Claim Does Not Confer Standing

NexPoint's last-minute acquisition of the Covitz Claim is the only prepetition claim any of the Appellants even purports to own at this point. The Covitz Claim does not confer appellate standing on NexPoint for at least two reasons: (1) because appellate standing is evaluated when an appeal is commenced, the withdrawal of all claims providing appellate standing at that time is fatal to an appellant's standing and the subsequent acquisition of a claim is not a cure; and (2) Mr. Covitz's failure to oppose the Indemnity Sub-Trust Order deprived him of appellate standing, imputing a lack of standing to NexPoint, because NexPoint's acquisition of the

---

[29] Among more than a dozen appeals Dondero and his entities are currently prosecuting from this one bankruptcy case alone is an appeal of the bankruptcy court's confirmation of the Plan. It is, of course, theoretically possible that the appeal is upheld, technically reinstating pre-bankruptcy equity interests in Highland. But even if so, there is no nexus between the formation of the Indemnity Sub-Trust and Dugaboy's miniscule limited partnership interests because all creditors would have to be paid in full with interest before such equity interests would ever be entitled to a recovery. *See* 11 U.S.C. §1129(b)(2)(C) (frequently referred to as the "absolute priority rule").

[30] *See* n.23 above.

[31] *Technicool*, 896 F.3d at 386.

Covitz Claim gives NexPoint no more rights than Mr. Covitz possessed before the transfer.

In *Technicool,* the Fifth Circuit Court of Appeals held that standing is determined as of the commencement of the appeal, denying standing to a debtor who had acquired a claim only *after* the bankruptcy court had entered the order being appealed:

> Furlough asserts he has standing because he is *now* a creditor. But this argument proves **too little, too late**. Now matters not. **Standing is 'determined as of the commencement of the suit.'** And Furlough was not a creditor at the time the Trustee sought to employ SBPC or at the time the bankruptcy court held a hearing on his objection. **He purchased a proof of claim while his appeal was pending before the district court. Timing matters, though, and Furlough cannot belatedly claim creditor status and establish standing retroactively.**[32]

Like Furlough in *Technicool,* NexPoint's standing must be determined as of August 4, 2021, when NexPoint commenced this appeal.[33] As stated above, NexPoint only possessed the Employee Claims on that date—it did not own the Covitz Claim. Standing was established on that date based solely on those Employee Claims. Those claims have now been withdrawn and *NexPoint has lost its standing*. In rejecting the debtor's standing, the Fifth Circuit in *Technicool* ruled that "timing matters," and the appellant's post-appeal acquisition of a claim was "too little too

---

[32] *Technicool,* 896 F.3d at 386 (bold emphasis added; italic emphasis in original).

[33] *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 68 n.22 (1997) (quoting *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 397 (1980)).

late."[34] Similarly, NexPoint's attempt to remedy its lack of standing by purchasing the Covitz Claim last week (a full five months after commencing this appeal on August 4, 2021) must also fail. NexPoint "cannot belatedly claim creditor status and establish standing retroactively."[35]

"One principle of prudential standing requires 'that a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"[36] NexPoint's acquisition of the Covitz Claim is ineffective to provide NexPoint with standing for another reason. When NexPoint acquired the Covitz Claim, it acquired a claim with all its defects, defenses, and limitations. As this Court has held, "a valid and unqualified assignment operates to transfer to the assignee *no greater right or interest than was possessed by the assignor.*"[37] Stated differently in this District, "the purchaser [of a claim] also takes the claim *cum onere* ... 'The purchase of the claims in a bankruptcy proceeding

---

[34] *Id.*

[35] *Id.* Appellee expects Appellants to argue that *Technicool* is distinguishable because, in that case, the debtor did not have standing when the appeal commenced, whereas here NexPoint arguably had standing at the time it appealed and that, by acquiring the Covitz Claim before withdrawing the Employee Claims, its standing is preserved. Such an argument misses the point. Because the basis on which standing to appeal was established no longer exists, a post-appellate event cannot act as a retroactive cure. Any other rule would encourage mischief with parties acquiring claims during the appellate process where events unfold post-appeal undermining the original basis for standing. An appellate court's continuing constitutional jurisdiction is too important to be made susceptible to this type of gamesmanship.

[36] *Superior MRI Services, Inc. v. Alliance Healthcare Services, Inc.,* 778 F.3d 502, 504 (5th Cir. 2015) (quoting *United States v. Johnson,* 632 F.3d 912, 919–20 (5th Cir. 2011)).

[37] *United States v. Cherry Street Partners, L.P. (In re Alliance Health of Fort Worth, Inc.),* 240 B.R. 699, 704 (N.D. Tex. 1999) (emphasis added) (reversing bankruptcy court order that conferred greater rights on claim assignee that that possessed by claim assignor).

DOCS_NY:44876.7 36027/003

should not grant a transferee any greater rights than the transferor had … [T]he transferees must also assume the obligations, risks and liabilities attached to the claims.'"[38] Here, Mr. Covitz did not file an opposition to the Indemnity Sub-Trust, did not appear at the bankruptcy court hearing to approve the Indemnity Sub-Trust, and did not appeal the bankruptcy court's order approving the Indemnity Sub-Trust. Accordingly, Mr. Covitz had no right to appeal. Because NexPoint has "no greater right or interest than was possessed by" Mr. Covitz, the Covitz Claim cannot provide NexPoint with standing to prosecute this appeal.

### This Appeal Is Constitutionally Moot

This appeal has been rendered moot—non-justiciable under the "Cases and Controversies" Clause of Article III of the U.S. Constitution—because Appellants have lost their standing during the pendency of this appeal. The U.S. Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)."[39]

---

[38] *In re Mirant Corp.,* 348 B.R. 725, 734 (Bankr. N.D. Tex. 2006) (quoting and citing *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.),* 333 B.R. 205, 224 (S.D.N.Y. 2005), and *Enron Corp. v. Ave. Special Situations Fund II, LP (In re Enron Corp.),* 340 B.R. 180, 199 (Bankr. S.D.N.Y. 2006)). *See also Zardinovsky v. Arctic Glacier Income Fund (In re Arctic Glacier Int'l Inc.),* 901 F.3d 162, 168 (3d Cir. 2018) ("As our Court had explained, a claim in bankruptcy may be transferred. *In re KB Toys Inc.,* 736 F.3d 247, 249 (3d Cir. 2013). When it is, the transferee assumes the same limitations as the transferor. *Id.* at 251-52. Otherwise, buyers could revive disallowed claims, laundering them to receive better treatment in new hands. *Id.* at 252"). "*Cum onere*" means "with the burden; subject to an encumbrance or charge." *Black's Law Dictionary* (6th ed. 1990) at 380.

[39] *Arizonans for Official English,* 520 U.S. at 68 n.22 (quoting *Geraghty,* 445 U.S. at 397).

The Fifth Circuit Court of Appeals, in addressing a bankruptcy appeal in which the appellant lost standing after the appeal began, held thus: "A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation."[40] A mooted appeal must be dismissed because a "moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents."[41]

As all of Appellants' general unsecured claims possessed at the time this appeal began have been withdrawn with prejudice, Appellants lost whatever standing they had when they commenced this appeal. This appeal, in the words of *Goldin,* no longer has an appellant with sufficient legal interest to maintain it.

### Conclusion

The Court should dismiss this appeal as moot.

---

[40] *Goldin v. Bartholow,* 166 F.3d 710, 717 (5th Cir. 1999), citing *Chevron, U.S.A. v. Traillour Oil Co.,* 987 F.2d 1138, 1153 (5th Cir. 1993).

[41] *Goldin,* 166 F.3d at 717–18, citing *Hogan v. Mississippi University for Women,* 646 F.2d 1116, 1117 n.1 (5th Cir. 1981). Mootness in this sense is distinct from the concept of "equitable mootness," which usually pertains to appeals of orders confirming a fully-consummated plan of reorganization. Constitutional mootness is a matter of Article III jurisdiction, whereas "equitable mootness" addresses the concern that an appellate court with jurisdiction can only render relief that could inequitably harm third parties not before the court. *See, e.g., Manges,* 29 F.3d at 1039 (comparing constitutional mootness with equitable mootness).

14

Dated:  January 10, 2022

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 266326)
Jordan A. Kroop (NY Bar No. 2680882)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
      jmorris@pszjlaw.com
      jkroop@pszjlaw.com
      gdemo@pszjlaw.com
-and-

**HAYWARD PLLC**

*/s/ Zachery Z. Annable*
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 755-7110
Email: MHayward@HaywardFirm.com
      ZAnnable@HaywardFirm.com

*Counsel for Highland Capital Management, L.P.*

15

## CERTIFICATE OF COMPLIANCE WITH RULE 8013

The undersigned hereby certifies that this Motion complies with the type-volume limitation set by Rule 8013(f)(3) of the Federal Rules of Bankruptcy Procedure. This Motion contains 4,048 words.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 10, 2022, a true and correct copy of the foregoing Motion was served electronically upon all parties registered to receive electronic notice in this case via the Court's CM/ECF system.

/s/ *Zachery Z. Annable*
Zachery Z. Annable

17