Case No. 3:21-cv-01895-D

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

In the Matter of: Highland Capital Management, L.P.,

      Debtor.

---

NexPoint Advisors, L.P., Highland Capital Management Fund Advisors, L.P., and The Dugaboy Investment Trust,

      Appellants,

v.

Highland Capital Management, L.P.,

      Appellee.

## APPELLANTS' OBJECTION TO MOTION TO DISMISS APPEAL AS CONSTITUTIONALLY MOOT

On Appeal from the United States Bankruptcy Court for
the Northern District of Texas, the Honorable Stacey G.C. Jernigan

Davor Rukavina, Esq.
Julian P. Vasek, Esq.
**MUNSCH HARDT KOPF & HARR, P.C.**
500 North Akard St., Ste. 3800
Dallas, Texas  75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR APPELLANTS NEXPOINT  ADVISORS, L.P.  AND HIGHLAND CAPITAL MANAGEMENT FUND ADVISORS, L.P.**

Douglas Scott Draper, Esq.
**HELLER, DRAPER & HORN, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, LA 70130-0000

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

I.     SUMMARY ...............................................................................1

II.    BACKGROUND .......................................................................2

       A.    THE INDEMNITY SUBTRUST ORDER ENABLED THE PLAN
             TO BECOME EFFECTIVE ...........................................................2

       B.    NEXPOINT'S AND HCMFA'S CLAIMS .....................................4

       C.    DUGABOY'S INTERESTS ...........................................................6

III.   ARGUMENTS AND AUTHORITIES ........................................7

       A.    THE "PERSON AGGRIEVED" TEST ...........................................7

       B.    THE APPELLANTS HAD STANDING AT THE COMMENCEMENT AND
             CONTINUE TO HAVE STANDING AND ARE "PERSONS AGGRIEVED" ......10

       C.    STANDING UNDER THE BANKRUPTCY CODE; SECTION 1109 ...............13

       D.    STANDING BECAUSE PLAN WOULD NOT BE EFFECTIVE WITHOUT
             THE INDEMNITY TRUST ORDER ...........................................15

       E.    THIS APPEAL IS NOT CONSTITUTIONALLY MOOT ................................17

IV.    CONCLUSION ..........................................................................20

CERTIFICATE OF SERVICE ...............................................................22

CERTIFICATE OF COMPLIANCE ......................................................22

## TABLE OF AUTHORITIES

### Cases

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997)........................ 18-19

*Chevron USA Inc. v. Traillour Oil Co.*, 987 F.2d 1138 (5th Cir. 1993).................19

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)......................................................................................7

*Freeport-McMoRan Inc. v. K N Energy Inc.*, 498 U.S. 426 (1991) .......................11

*Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283
   (5th Cir. 1985)...........................................................................................14

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999) ................................................19

*In re Caesars Entm't Operating* Co., 588 B.R. 32 (Bankr. N.D. Ill. 2018) ...........12

*In re Coho Energy Inc.*, 395 F.3d 198 (5th Cir. 2004) ....................................7, 8, 16

*In re Motors Liquidation Co.*, 536 B.R. 54 (Bankr. S.D.N.Y. 2015).......................9

*In re Saldana*, 534 B.R. 678 (N.D. Tex. 2015)......................................................16

*In re Technicool Sys.*, 896 F.3d 382 (5th Cir. 2018) ................................................11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................11

*Newman-Green Inc. v Alfonzo-Larrain*, 490 U.S. 826 (1989) ...............................11

*Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982) ..............................8

*Palmaz Sci. Inc. v. Vactronix Sci. Inc.*, 262 F. Supp. 3d 428
   (W.D. Tex. 2017)........................................................................................8

*Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987) ...............................17

*SEC v. United States Realty & Improvement Co.*, 310 U.S. 434 (1940)................10

*Smith v. Sperling*, 354 U.S. 91 (1957) ....................................................................11

*Southern Pac. Transp. Co. v. Voluntary Purchasing Groups*,
 227 B.R. 788 (E.D. Tex. 1998)...........................................................................14

*Stern v. Marshall*, 564 U.S. 462 (2011)....................................................................9

*United States v. Windsor*, 570 U.S. 744 (2013)..........................................................7

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ....................18, 20

*Wellness Int'l Network Ltd. v. Sharif*, 575 U.S. 665 (2015)......................................9

## **Statutes and Rules**

11 U.S.C. § 1109.....................................................................................................13

11 U.S.C. § 1127.....................................................................................................17

**APPELLANTS' OBJECTION TO MOTION TO
DISMISS APPEAL AS CONSTITUTIONALLY MOOT**

TO THE HONORABLE SIDNEY A. FITZWATER, U.S. DISTRICT JUDGE:

NexPoint Advisors, L.P. ("NexPoint"), Highland Capital Management Fund Advisors, L.P. ("HCMFA"), and The Dugaboy Investment Trust ("Dugaboy" and collectively, the "Appellants"), hereby submit this *Objection* (the "Objection") to the *Appellee's Motion to Dismiss Appeal as Constitutionally Moot* (the "Motion"), filed by Highland Capital Management, L.P. (the "Debtor"), respectfully stating as follows:

## I.   SUMMARY

The issue is not Constitutional standing, but rather a *prudential* doctrine that limits standing in bankruptcy appeals—a doctrine that is flexible, permissive, and should not preclude an Article III court's review of an Article I court's order.

The Appellants have standing.  They had standing when this Appeal was commenced, and that standing survives subsequent events.  NexPoint still has a claim, if that is the test, and Dugaboy has an interest in the Claimant Trust, both of which the Indemnity Subtrust Order negatively impacts with its $25 million of greatly expanded indemnification obligations.  All of the Appellants have statutory standing under section 1109(b) of the Bankruptcy Code.  And, all of the Appellants have standing because, but for the Indemnity Subtrust Order, the Plan would not have gone effective and would not now enjoin their legal rights, and release and

exculpate their claims against non-debtors. It would be odd, to say the least, for a party to lack standing to appeal an impermissible plan modification when a debtor violates a statute meant to protect that party.

## II.   BACKGROUND

### A.   THE INDEMNITY SUBTRUST ORDER ENABLED THE PLAN TO BECOME EFFECTIVE

Among other things, the Plan contains a permanent injunction prohibiting the Appellants from exercising various rights against the Debtor and non-debtor parties. ROA.000466. The Plan also releases and exculpates numerous individuals and parties from their potential bankruptcy and non-bankruptcy liabilities, including to the Appellants. ROA.000463. And, if the Appellants wish to exercise certain non-released and non-exculpated rights against non-debtors, they must first seek leave from the Bankruptcy Court pursuant to a permanent injunction. ROA.000466. For these reasons—because the Plan enjoins the Appellants and releases and exculpates potentially liable parties—the Appellants (and others) appealed the Plan to the Fifth Circuit to protect themselves and the thousands of innocent investors whose investments the Appellants manage.

The Plan did not go effective for six months. Appellant Appx. 1-2.[1] A Chapter 11 plan is not necessarily effective when confirmed. Rather, all conditions

---

[1]   "Appellant Appx. ##" refers to the *Appellants' Appendix in Support of Objection To Motion To Dismiss Appeal As Constitutionally Moot*, which is filed contemporaneously herewith.

to effectiveness (such as financing) must first be met and an "effective date" must be declared.  Here, the Plan contained the following express condition precedent to its effectiveness:

> The Debtor shall have obtained applicable directors' and officers' insurance coverage that is acceptable to each of the Debtor, the Committee, the Claimant Trust Oversight Committee, the Claimant Trustee and the Litigation Trustee.

ROA.000462.

As the Debtor represented and testified below, it was not able to obtain this D&O insurance.  ROA.003643, 3665.  Thus, because the Debtor was not able to obtain this insurance, though the Debtor could waive a condition precedent under the Plan with the Committee's consent, the Debtor and the Committee agreed to create the new Indemnity Subtrust that is the subject of this Appeal.  And they only waived the condition precedent once the Bankruptcy Court entered the order.  Then, finally, the Indemnity Subtrust Order took the place of the D&O insurance:

> If the Court approves the Motion, the Debtor will waive the condition to the Effective Date requiring the Confirmation Order to become a Final Order and thereby paving the way for the Plan to become effective.

ROA.000642.

> To enable the Plan to become effective, the Independent Directors, working closely with the Committee, began investigating alternatives to traditional D&O Insurance and determined the creation of an indemnity trust (the "Indemnity Trust") was the most attractive alternative. The Indemnity Trust was structured as a special purpose vehicle – capitalized by the Reorganized Debtor – that would secure the Indemnification Obligations.

ECF No. 15, Debtor's Appx.0282.

> Although D&O Insurance was a condition to the Effective Date, the Independent Directors determined they would waive that condition *only* if the Indemnity Trust were approved as it would fill the gap and provide management the assurance they needed to implement and consummate the Plan.

ECF No. 15, Debtor's Appx.0283 (emphasis original).

> Q And did, as a matter of fact, the Debtor and the UCC agree to waive that condition?
>
> A Yes. Very specifically, so long as we could ensure that we could reserve for, protect, and indemnify the indemnification obligations that each of the trusts and the Reorganized Debtor have to those running it.
>
> Q So, stated another way, is it fair to say that the agreement on the waiver is conditioned on the approval of this motion?
>
> A Yes.

ROA.003672.

Therefore, the Plan, with its injunctions, releases, and exculpations—all of which directly enjoin and prejudicially affect the Appellants—is now effective only because of the Indemnity Subtrust Order.  That order was the last link in a series of orders that now bind and prejudice the Appellants and take away their legal rights.

## B.    NexPoint's and HCMFA's Claims

There is no dispute that NexPoint and HCMFA together hold administrative claims of $14.5 million.  *See* Motion at p. 2, n.4 & p. 3.  The Debtor has objected

to those claims, discovery is ongoing, and trial has not yet occurred.  A creditor holding a disputed claim has standing in a bankruptcy case unless and until the claim is disallowed.  *See, e.g., In re Morgan*, 360 B.R. 507, 515-16 (Bankr. N.D. Tex. 2007).  It is true that, under the Plan, administrative claims are paid in full. But the fact remains that these administrative claims have <u>not</u> been paid.  And, under the Indemnity Subtrust Order, there are now $25 million of assets unavailable to pay these claims.  All claimants have an interest in what happens to their recovery and their money until they are cashed out of a bankruptcy case.

HCMFA did not hold a prepetition claim when this Appeal was filed, and does not hold one now.  NexPoint, however, held five prepetition, unsecured claims (which the Debtor valued at $39,000, *see* Docket No. 25 at p. 10) assigned to it by former Debtor employees who were later retained by NexPoint or by a new company engaged by NexPoint.  *See* Motion at pp. 3-4.  *See also* Appellant Appx. 5-11.  NexPoint withdrew these claims on January 7, 2022.  *Id*.  It is a fact, however, that NexPoint held the foregoing claims when the Indemnity Subtrust Order was litigated below and when it filed this Appeal.

NexPoint held and continues to hold a sixth claim, that of Hunter Covitz. Appellant Appx. 12-29.  That claim is filed at $250,000 and was likewise assigned by Mr. Covitz to NexPoint.  Appellant Appx. 15.  Although the Debtor states, without evidence or knowledge, that NexPoint did not hold this claim when it filed this Appeal, the simple fact is that NexPoint acquired this claim on March 24,

2021. Appellant Appx. 13 - 17. Like its other claims, NexPoint held this claim at all times during these proceedings, including when it filed this Appeal.

The Debtor is correct that the Covitz claim has very recently been disallowed by default. NexPoint will either appeal that order or seek the Bankruptcy Court's reconsideration of that order, either way likely prior to the oral argument scheduled in this Appeal. Thus, while the Covitz claim will be disallowed, it will not be disallowed by final order.

## C. DUGABOY'S INTERESTS

Dugaboy's interests are the same as the other Appellants with respect to being enjoined under the Plan and with respect to the Plan's releases and exculpations. Additionally, as has already been briefed, the Plan created the "Claimant Trust." ROA.000441. That trust has two types of beneficiaries. The first type is creditors, who receive interests in the Claimant Trust according to the priorities and amounts of their claims. ROA.000437-8 (description of Class 8). The second type of interest is a contingent interest given to equity holders, which will pay only if the Claimant Trust first pays creditors in full. ROA.000438-9 (description of Class 10 & 11). Dugaboy has this interest, which the Debtor acknowledges. Motion p. 5.

Thus, while the Plan did not guarantee any recoveries to Dugaboy on account of its contingent trust interests, the Debtor admitted it would be possible depending on litigation recoveries. ROA.002279. Whatever Dugaboy's potential

for a recovery was, it is now far less likely with the new $25 million in funding going to the Indemnification Subtrust and the greatly expanded universe of people now entitled to indemnification compared to what the Plan provided.

## III.   ARGUMENTS AND AUTHORITIES

### A.   THE "PERSON AGGRIEVED" TEST

The Debtor is wrong to argue the "person aggrieved" test is a Constitutional test or represents Constitutional standing.  On the contrary, the test is clearly a prudential one imposed by appellate courts to prevent a multitude of appeals of questionable interests given the potentially large number of parties in a bankruptcy proceeding: "courts have created an additional *prudential* standing requirement in bankruptcy cases: The appellant must be a 'person aggrieved' by the bankruptcy court's order."  *In re Coho Energy Inc.*, 395 F.3d 198, 202 (5th Cir. 2004) (emphasis added) (*quoting In re P.R.T.C.*, 177 F.3d 774, 777 (9th Cir. 1999)).

Like any prudential rule, the test is not absolute: "[r]ules of prudential standing, by contrast, are more flexible."  *United States v. Windsor*, 570 U.S. 744, 757 (2013).  This is so especially because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  Nor does the Supreme Court appear to have ever endorsed the "person aggrieved" test under the Bankruptcy Code.  Indeed, even in bankruptcy appeals under the "person aggrieved" standard, "[t]his Court uses a permissive standard to assess the actuality

of the harm alleged by appellant for the purpose of standing." *In re Coho Energy Inc.*, 395 F.3d at 202.

This is all the more important when one considers the jurisdictional framework of the Bankruptcy Court. The "person aggrieved" test has its roots in the prior Bankruptcy Act, where Congress, in enacting the Act, also specified who had standing to appeal an order of a bankruptcy referee. *See, e.g., Palmaz Sci. Inc. v. Vactronix Sci. Inc.*, 262 F. Supp. 3d 428, 432 (W.D. Tex. 2017). No such provision appears in the Bankruptcy Code; yet the Fifth Circuit continues to apply the test. *See id*. At the same time, however, the Bankruptcy Code greatly expanded bankruptcy jurisdiction from what it was under the Bankruptcy Act, and conferred that jurisdiction on the bankruptcy courts. This was the system that the Supreme Court ruled unconstitutional for violating Article III in *Northern Pipeline v. Marathon Pipe Line*, 458 U.S. 50 (1982). What followed was a carefully crafted compromise that balanced the interests of Congress under Article I and the interests of the Judiciary under Article III, where bankruptcy jurisdiction is conferred on the district courts and bankruptcy courts exercise that jurisdiction through by referral.

The point is that, because the Bankruptcy Court exercises this Court's jurisdiction, this Court must have a significant role in ensuring that the results of the exercise of that jurisdiction are correct: "the entire process takes place under the district court's total control and jurisdiction . . . So long as those judges are

subject to control by the Article III courts, their work poses no threat to the separation of powers." *Wellness Int'l Network Ltd. v. Sharif*, 575 U.S. 665, 679 & 681 (2015). *Accord In re Motors Liquidation Co.*, 536 B.R. 54, 60 (Bankr. S.D.N.Y. 2015) ("Depriving an Article III judge of the ability to exercise that control would raise substantial constitutional issues"). Indeed:

> Article III judges control and supervise the bankruptcy court's determinations. . . Any party may appeal those determinations to the federal district court, where the federal judge will review all determinations of fact for clear error and will review all determinations of law de novo.

*Stern v. Marshall*, 564 U.S. 462, 515 (2011). The "person aggrieved" test conflicts with these important Constitutional provisions and protections—under that test, it is not that "[a]ny party may appeal . . . all determinations" of the Bankruptcy Code.[2] Thus, as the Court applies the prudential "person aggrieved" test, the Court should do so in the context of this Court's important role to supervise the Bankruptcy Court by ensuring that its orders are properly reviewed and not insulated from review. For, if this Court is *precluded* from reviewing a final order of its Article I adjunct, then a Constitutional issue will necessary arise.

The Court may also *sua sponte* withdraw the reference over the Indemnity Subtrust Order and construe this Appeal as a motion for reconsideration filed within the requisite deadline. The Court could then review the order *de novo*.

---

[2]   The Appellants therefore challenge the "person aggrieved" test, at least as it applies to this Court. They recognize that the test is presently the law in this District and this Circuit, but they do not concede its correctness and reserve all rights to question the test.

And, there was an exception to the "person aggrieved" standard under the Bankruptcy Act when the bankruptcy appeal concerns the "public interest." *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 460 (1940). The Appellants would urge the Court to apply this exception here if needed: where the Bankruptcy Court entered an order that affects *everyone*, but the Debtor argues that it affects *no one* directly and pecuniarily, and the issue involves compliance with the Bankruptcy Code—a public right and a public proceeding—someone must have the ability to challenge the order.

## B.   THE APPELLANTS HAD STANDING AT THE COMMENCEMENT AND CONTINUE TO HAVE STANDING AND ARE "PERSONS AGGRIEVED"

As the Appellants have otherwise briefed, the Indemnity Subtrust Order did at least three things that each reduced the funds available to creditors in the Claimant Trust, which is the vehicle that pays claims: (i) $2.5 million of creditor recovery was transferred from the Claimant Trust to the Indemnity Subtrust for indemnification expenses; (ii) the Claimant Trust issued a note to the Indemnity Subtrust for $22.5 million for indemnification expenses, which note must be paid ahead of any creditor recoveries or contingent trust interests; and (iii) the Claimant Trust assumed the obligation to indemnify many persons and parties in addition to those identified in the Plan. *See* Appellants Opening Brief, Docket No. 16 at p. 5; Appellants' Reply Brief, Docket No. 32 at pp. 5-9. Thus, all creditor recoveries

are diminished by these new $25 million in transfers and obligations and by an unknown amount of new indemnification obligations.

As the Debtor concedes, the *Techicool* case confirms that "[s]tanding is determined as of the commencement of the suit." *In re Technicool Sys.*, 896 F.3d 382, 386 (5th Cir. 2018) (internal quotation omitted). "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992) (emphasis in original). *Accord Newman-Green Inc. v Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). And, when a party has standing, that standing "cannot be ousted by subsequent events." *Smith v. Sperling*, 354 U.S. 91, 93 n. 1 (1957). *Accord Freeport-McMoRan Inc. v. K N Energy Inc.*, 498 U.S. 426, 428 (1991) ("if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events").

There is no question that NexPoint and HCMFA held and continue to hold administrative claims of $14.5 million that have yet to be adjudicated and paid. If the test is whether the Appellants hold unsecured, prepetition claims, then no one disputes that NexPoint held six such claims when this Appeal commenced, and when the underlying proceedings occurred. That NexPoint did not file a notice of transfer of the Covitz claim until very recently does not change this result: the filing of a notice of transfer of claim is ministerial only and does not affect the

party's underlying rights and entitlement to a claim. *See, e.g., In re Caesars Entm't Operating* Co., 588 B.R. 32, 43 (Bankr. N.D. Ill. 2018).

The Debtor also argues that, because Mr. Covitz did not object to or appeal the Indemnity Subtrust Order himself, the Covitz claim cannot confer standing. This argument is wrong: NexPoint, not Mr. Covitz, held the claim when NexPoint, not Mr. Covitz, objected to the Debtor's motion and filed this Appeal. Likewise, although the claims may be subject to orders of disallowance, the Covitz order is not final and will not become final for some time. The Plan defines this type of claim as a "disputed claim" and requires the Claimant Trust to reserve funds against it and to pay the claim if and when allowed. ROA.422; ROA.456.

Therefore, NexPoint held six claims when this Appeal was commenced and, according to the Debtor's own arguments and the case law, that is all that matters: NexPoint had standing when it filed this Appeal and that standing is not lost through subsequent developments. NexPoint still has the Covitz claim which may be allowed and which requires that funds be reserved for the claim under the Plan. *See id*. Removing $25 million of value from the Claimant Trust that otherwise would have gone to unsecured creditors is a reduction in recovery, even if only a small one based on the size of any given claim.

With respect to Dugaboy, as detailed above, Dugaboy holds contingent interests against the Claimant Trust on which it will be paid if and when creditors are paid in full. While this may be an unlikely outcome, the Debtor conceded at

trial that it is a potential outcome.  ROA.002279.  Whatever the likelihood of that outcome may have been, it is now at least $25 million more remote, plus the greatly expanded new indemnification obligations the Claimant Trust assumed, compared to what these obligations were under the Plan.

The Debtor seeks to avoid this conclusion by noting that Dugaboy's equity interest in the Debtor was cancelled under the Plan.  This is true.  But what matters is that Dubagoy clearly has contingent interests in the Claimant Trust, which interests have been "allowed" by the Plan and are not subject to objection or dispute.  Indeed, if the Court reverses the Indemnity Subtrust Order and that leads to the Plan no longer being effective (not that the Appellants are arguing that this fact will necessary follow), then Dubaboy's equity interest in the Debtor will be reinstated: a direct, pecuniary interest indeed.

## C.   STANDING UNDER THE BANKRUPTCY CODE; SECTION 1109

This is a Chapter 11 case.  With respect to Chapter 11 cases, the Bankruptcy Code provides:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).[3]

---

[3]   NexPoint and HCMFA, as administrative creditors, creditors, defendants to multiple actions commenced by the Debtor, and parties enjoined under the Plan, are "parties-in-

These are broad, Congressionally mandated rules of standing.  *See Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286 (5th Cir. 1985). And, as noted above, whereas the Bankruptcy Act imposed the "person aggrieved" test to bankruptcy appeals, the Bankruptcy Code contains no such limitation and, in fact, contains the broad grant of standing in section 1109(b).  The District Court for the Eastern District of Texas reviewed this statute in detail, concluding that it confers standing on parties-in-interest in Chapter 11 cases regarding confirmation orders in the underlying bankruptcy case and on appeal:

> the questions raised in this appeal obviously qualify as 'issues' in this case, and because this case does not cease being a 'case under Chapter 11' merely because appellate jurisdiction has been invoked, there is no apparent reason why the Committee should not be 'heard' in this appeal under § 1109(b). Nothing in that provision, for example, suggests that its broad right to appear and be heard is inapplicable to proceedings held before an appellate court.

> \*        \*        \*

> The Committee fully participated in the confirmation hearing before the bankruptcy court and had a clear right to do so under the Bankruptcy Code. The court is aware of no reason why the Committee cannot continue to exercise its right to appear and be heard now that the bankruptcy court's confirmation order is being challenged on appeal.  On the contrary, the Committee's attempt to exercise that right by filing an appellee's brief is consistent with § 1109(b).

*Southern Pac. Transp. Co. v. Voluntary Purchasing Groups*, 227 B.R. 788, 792-93 (E.D. Tex. 1998).

---

interest."  Dugaboy, as an equity holder, defendant to multiple actions commenced by the Debtor, and a party enjoined under the Plan is likewise a "party-in-interest."

The Fifth Circuit has not decided the issue of whether section 1109(b) confers appellate standing one way or the other. However, it defies logic and due process that Congress would grant standing to participate in the bankruptcy process—and the Appellants clearly had standing to contest the Debtor's underlying motion—but then withhold standing to appeal the result. As argued above, this is all the more so because this Article III Court must have the ability to review the orders of the Article I Bankruptcy Court that exercises this Court's original jurisdiction. Nor is this a Chapter 7 case where parties fight over a pot of money in a usually insolvent estate, and in which the only issue is one's entitlement to a portion of that pot of money. This is a Chapter 11 case that gives rise to all manner of interests and rights being affected, precisely as happened to the Appellants under the Plan's injunction, exculpation, and release provisions.

### D.   STANDING BECAUSE PLAN WOULD NOT BE EFFECTIVE WITHOUT THE INDEMNITY TRUST ORDER

As detailed above: (i) the Plan contains sweeping permanent injunctions against the Appellants and releases and exculpates claims they have against non-debtors; and (ii) the Plan would not have become effective but for the Indemnity Subtrust Order. Because there would be no effective Plan, and no injunctions, releases, or exculpations against the Appellants, without the Indemnity Subtrust Order, the Appellants have this independent basis for standing to appeal the Indemnity Subtrust Order.

The core of the "person aggrieved" test is that the test "demands a higher causal nexus between act and injury." *In re Coho Energy Inc.*, 395 F.3d at 203. Usually, this is determined by whether the appellant is directly and adversely pecuniarily affected by the underlying order. But this is not an exclusive test and the test does not look solely to pecuniary interests. As this Court has held, the test is met with an order "diminishing his property, increasing his burdens, or impairing his rights." *In re Saldana*, 534 B.R. 678, 683 (N.D. Tex. 2015). Indeed, if the sole issue is a pecuniary one, then there are many bankruptcy orders that would be unappealable, such as injunctions, turnover of attorney-client privileges, gag orders, conversions of a case, the appointment of a trustee, etc.—an absurd result. And, "[t]his Court uses a permissive standard to assess the actuality of the harm alleged by appellant for the purpose of standing." *In re Coho Energy Inc.*, 395 F.3d at 202.

A high casual nexus is present here because the Plan would not be effective, and the Appellants would not be subject to the Plan's injunctions, exculpations, and releases, without the Indemnity Subtrust Order. That goes to the heart of the Appellants' objections to the Plan. The Appellants do not want to be permanently enjoined from exercising lawful rights; they do not want their claims against third parties released involuntarily; and they do not want numerous people exculpated from their mismanagement of the Debtor and its assets. All of those are legitimate concerns for which the Appellants have legal recourse, regardless of whether the

Appellants have claims against the Debtor.  That is why the Appellants contested and appealed the Plan and the Indemnity Subtrust Order.  Because, without *both* the Plan *and* the Indemnity Subtrust Order, the Appellants would not now be subject to these injunctions, releases, and exculpations.

Viewed another way, if the Appellants are correct and the Indemnity Subtrust Order is a Plan modification, then the effect is the same as an amendment to a final judgment entered by any court.  *See, generally, Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053 (5th Cir. 1987) (equating order confirming a Chapter 11 plan as a final judgment).  The Plan clearly and negatively affects various rights of the Appellants, and the modification to the Plan effectuates the same.  This is not a "chicken or egg" problem.  It may be that the Court should first determine the underlying Appeal to decide whether the Indemnity Subtrust Order is a Plan modification.  This may be necessary in order to determine the Appellants' standing since, if the Indemnity Subtrust Order is a modification to the Plan, it becomes the Plan, and it cannot be seriously disputed that the Appellants have standing to appeal the Plan.  *See* 11 U.S.C. § 1127(b) (providing that "plan as modified under this subsection becomes the plan").

## E.  THIS APPEAL IS NOT CONSTITUTIONALLY MOOT

Finally, the Debtor argues that this Appeal is Constitutionally moot.  It is not quite clear why.  On the one hand, the Debtor argues that the "Appellants have lost their standing during the pendency of this appeal."  This argument is a repeat of the

Debtor's main argument in the Motion and is addressed above.  The Debtor also argues that there is no current case or controversy, thereby making this Appeal Constitutionally moot.

There is an immediate problem with this argument, however, because, as the Supreme Court has held (and as the Debtor fails to mention): "[w]hen a civil case becomes moot pending appellate adjudication, the established practice in the federal system is to reverse or vacate the judgment below and remand with a direction to dismiss." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997) (internal quotation omitted).  This is necessary to clear the path for future litigation "by eliminating a judgment the loser was stopped from opposing on direct review."  *Id*.  Surely this is not a result the Debtor wants—but it also demonstrates why this Appeal is not Constitutionally moot, for the question is whether there remains a live case or controversy in which this Court may grant effective relief: the Debtor wants and needs the Indemnity Subtrust Order and there is an actual and present case or controversy regarding whether its entry was appropriate.

Mootness tests whether the litigant has a "personal stake in the outcome of the controversy."  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).  In *Arizonans for Official English*, for example, the plaintiff teacher left her employment so she no longer had a stake in which language was used.  One can also think of cases where a maker on a promissory note pays after litigation, an

administrative rule is rescinded, or a prisoner is released from prison—it is not a question of standing originally but rather the fact that the relief requested is no longer necessary to remedy the asserted wrong.  As the Supreme Court has phrased it, the question is "whether the dispute touches upon the legal relations of parties having adverse legal interests," in which case the person has a "personal stake in the outcome" provided that the "dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."  *Id*. at 396-97 (internal quotation omitted).

"The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).   A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation."  *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999) (internal citations omitted).   "Mootness can arise in one of two ways: First, a controversy can become moot when the issues presented are no longer live.  A controversy can also become moot when the parties lack a legally cognizable interest in the outcome."  *Chevron USA Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (internal quotations and citations omitted).

Standing and mootness, therefore, are different doctrines, albeit similar ones. Mootness is harmonized with the fundamental law, as discussed above, that standing at the commencement of the case is not lost through subsequent developments, by asking the fundamental question of whether a court can still

grant meaningful relief. *See United States Parole Comm'n*, 445 U.S. at 396-97. If a court can still grant meaningful relief, meaning that the subject matter of the underlying dispute itself has not been mooted, then the case is not moot. Here, the subject matter of the dispute is still there: the Indemnity Subtrust Order. This Court can grant effective relief: a reversal. And both the Appellants and the Debtor still have a legally cognizable interest in this Appeal: the Debtor wants and needs the order, while the Appellants, without the order, would at a minimum not be subject to the Plan's injunctions, exculpations, and releases.

## IV.   CONCLUSION

The *prudential*, not *Constitutional*, "person aggrieved" test is a flexible, "permissible" standard. It should not be used to close the doors to appellate review to parties prejudiced by an order. No one is more prejudiced by the Indemnity Subtrust Order than the Appellants, who would not now, and for all time, be subject to the Plan's injunctions, exculpations, and releases but for the Indemnity Subtrust Order. The Appellants also hold pecuniary interests and held them when this Appeal was commenced and during the proceedings below, which resulting standing survives subsequent developments. And, as stressed throughout, this Court, as the Article III court, must have the ability to review the orders of its adjunct, as it exercises the jurisdiction granted to this Court by reference.

RESPECTFULLY SUBMITTED this 18th day of January, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

By:  /s/ Davor Rukavina

    Davor Rukavina, Esq.
    Texas Bar No. 24030781
    Julian P. Vasek, Esq.
    Texas Bar No. 24070790
    500 N. Akard St., Ste. 3800
    Dallas, Texas  75201-6659
    Telephone: (214) 855-7500
    Facsimile: (214) 855-7584
    Email: drukavina@munsch.com
    Email: jvasek@munsch.com

**ATTORNEYS FOR APPELLANTS NEXPOINT ADVISORS, L.P. AND HIGHLAND CAPITAL MANAGE-MENT FUND ADVISORS, L.P.**

-- and --

**HELLER, DRAPER & HORN, L.L.C.**

By:  /s/ Douglas Draper

    Douglas Scott Draper, Esq.
    650 Poydras Street
    Suite 2500
    New Orleans, LA 70130-0000
    Email: ddraper@hellerdraper.com

**ATTORNEYS FOR THE DUGABOY INVESTMENT TRUST**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 18th day of January, 2021, he caused a true and a correct copy of the foregoing document to be served on counsel for the Appellee, Highland Capital Management, L.P., including through Jeff Pomerantz , Esq., one of its counsel of record.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. Bankr. P. 8013(f) because this brief contains 5,022 words, excluding the parts of the brief exempted by Rule 8015(g).

Dated:  January 18, 2021.

By:  /s/ Davor Rukavina
Davor Rukavina, Esq.

4873-9882-6505v.1 019717.00001