<u>IN THE UNITED STATES DISTRICT COURT</u>

<u>FOR THE NORTHERN DISTRICT OF TEXAS</u>

<u>DALLAS DIVISION</u>

```
IN RE HIGHLAND CAPITAL          (      3:21-CV-1895-D
MANAGEMENT, L.P.,               (
              Debtor.           (
                                (
HIGHLAND CAPITAL                (
MANAGEMENT FUND ADVISORS,       (
L.P., et al,                    (      DALLAS, TEXAS
              Appellants        (
                                (
VS.                             (
                                (
HIGHLAND CAPITAL                (
MANAGEMENT, L.P.,               (
              Appellee.         (      JANUARY 25, 2022
```

TRANSCRIPT OF ORAL ARGUMENT VIA ZOOM

BEFORE THE HONORABLE SIDNEY A. FITZWATER

UNITED STATES DISTRICT JUDGE

<u>A P P E A R A N C E S</u>:

```
   FOR THE APPELLEE:      JEFFREY N. POMERANTZ
                          Pachulski Stang Ziehl & Jones LLP
                          10100 Santa Monica Blvd
                          13th Floor
                          Los Angeles, CA 90067
                          310-227-6910
                          Fax: 310-201-0760
                          Email: jpomerantz@pszjlaw.com
```

```
FOR THE APPELLANTS:    DAVOR RUKAVINA
                       Munsch Hardt Kopf & Harr PC
                       500 N Akard St
                       Ste 3800
                       Dallas, TX 75201
                       214-855-7587
                       Email: drukavina@munsch.com

                       DOUGLAS DRAPER
                       Heller, Draper & Horn, L.L.C.
                       650 Poydras Street
                       Suite 2500
                       New Orleans, LA 70130
                       504-299-3300
                       Fax: 504-299-3399
                       Email: ddraper@hellerdraper.com
```

```
COURT REPORTER:    PAMELA J. WILSON, RMR, CRR
                   pam_wilson@txnd.uscourts.gov
                   1100 Commerce Street, Room 1535
                   Dallas, Texas 75242
                   214.662.1557
```

Proceedings reported by mechanical stenography,

transcript produced by computer.

```
1          ORAL ARGUMENT VIA ZOOM - JANUARY 25, 2022
2                      P R O C E E D I N G S
3          THE COURT:  The matter before the court is in re:
4  Highland Capital Management bankruptcy appeal oral argument.
5          Before we begin I have some housekeeping matters to
6  cover.
7          First of all, if at some point we lose the court
8  reporter, obviously, we need to stop.  I hope that will not
9  happen, but if that occurs we will.
10         And if we have any technical difficulties that interrupt
11 counsel's argument time, then I will add to your time so that
12 you have your full allocated time.
13         The law clerk is aware of the time warnings that you
14 want and I have advised him to interrupt you or interrupt me
15 so that he can announce those time warnings as needed.
16         At this time then we'll begin with counsel for the
17 appellants.  I believe that's going to be divided time, so if
18 you would proceed at this time.
19         MR. RUKAVINA:  Your Honor, good morning.
20         Davor Rukavina of Munsch Hardt Kopf & Harr for two of
21 the appellants we call the advisors.  I'll be discussing the
22 substance of the appeal, and my co-counsel, Douglas Draper,
23 who represents the Dugaboy Trust, will be addressing the two
24 motions to dismiss.
25         Your Honor, may it please the court.
```

1      Let me first reiterate what we argued in our brief,

2  which is that this matter is very much a matter about

3  substance.  This is not a matter of procedure.  This is not a

4  case where -- where someone can say harmless error or where

5  someone can say, okay, so what, the wrong procedure was

6  followed.  It is substance that goes to the core of the

7  bankruptcy court's jurisdiction and what it does, because it

8  deals with a confirmed plan.  It is substance because the

9  Bankruptcy Code has an express section dealing with plan

10  modifications, if this is a plan modification.

11      THE COURT:  Counsel, could I ask you a couple of

12  questions before you continue on?

13      First of all, would you address the difference between

14  indemnifying out of reserves and indemnifying out of the

15  subtrust.

16      And second, would you address the assertion that the

17  bankruptcy court order does not really add to the universe of

18  entities who are eligible for indemnification.

19      MR. RUKAVINA:  Thank you, Your Honor.

20      I think both of those questions revolve around the same

21  answer, which is that the plan created originally three legal

22  entities, the reorganized debtor, the litigation subtrust,

23  and then the master claim and trust.  Each of those entities

24  was originally obligated to indemnify its own logistical and

25  professionals.  It's a little bit broader than that.  There

1   was no cross indemnification.  And it's my understanding

2   that, yes, the claim and trust could reserve funds for the

3   indemnification purposes.  That is correct.  But what the

4   litigation trust or the claim and trust could reserve from

5   its own funds on hand is different than what we have now.

6   For example, we have a $22.5 million promissory note.  That's

7   not just reserving funds on hand.  That is the future

8   obligation that needs to be repaid before any creditors can

9   be repaid.

10      But I think more importantly -- Your Honor, I apologize.

11  Someone is typing and I can hear them and it's -- it's

12  interfering with my ability to talk.  But it might just be

13  the court reporter, so I'll continue.

14      But, Your Honor -- and we have discussed this our reply

15  brief in detail.  There is no question that under this new

16  order the claim and trust now is responsible for indemnifying

17  people whom it was not responsible to indemnify in the

18  beginning.

19      And another thing that I'll point out, Your Honor, with

20  this indemnification subtrust, they're going to have to hold

21  the $25 million until all possible indemnification claims are

22  asserted and resolved.  Under Texas law that's four years for

23  breach of fiduciary duty.

24      So it's not a matter of the debtor's trustee in the

25  exercise of his business judgment reserving some funds at any

1   given point to address conceived of or potential or

2   threatened indemnification claims.  It is a matter of tying

3   up $25 million for years to come and by the claim and trust

4   indemnifying people whom it alone -- or it itself was not

5   indemnifying before.

6       Assume, Your Honor, arguendo, that -- that the

7   litigation trust created under the plan didn't have the money

8   to indemnify its personnel.  That it -- it -- it ran through

9   its seed money, it -- it-- it prosecuted litigation --

10          THE COURT:  We've lost your sound.

11                      (Pause.)

12      Now you're back on.

13      And I'll instruct the law clerk to add a minute to his

14  time.

15          MR. RUKAVINA:  Thank you.

16      Your Honor, what I was saying is that hypothetically the

17  original litigation trust could just not have money to

18  indemnify its personnel.  Well, now, the claim and trust from

19  its own funds, from it's $25 million, does so.  So I hope

20  I've addressed that portion of the court's question.

21      If I return to -- to what is a plan modification, Your

22  Honor.  Well, first, a plan is a contract.  That's black

23  letter bankruptcy law.  The contract can be sued upon in

24  state court.  So I think Congress, just like fundamental

25  contract law, they say a debtor can't unilaterally modify its

1    contract.  No -- no contract party can just unilaterally

2    modify a contract.  So you have to follow the 1127(b)

3    prescribed mechanism for a plan modification.  And that has

4    extreme safeguards.  Your Honor, you have to have a

5    disclosure statement that goes to all the creditors that

6    discloses the economic impact in detail, the length, for

7    example, I mentioned four years, that -- that tells the

8    creditors and other parties in interest everything that the

9    debtor knows in an approved format so that it's reasonably

10   accurate for the creditors to make a decision.

11       That's the second point.  A modification is voted upon.

12   Here the creditors originally rejected the plan.  We believe

13   that they would likely reject the modification.  But the

14   creditor democracy is critical to Chapter 11 proceedings.

15   The way that the bankruptcy court proceeded here, we didn't

16   have that.

17       And third, and most importantly, this motion was

18   approved under a very flexible, equitable, multifactor

19   business judgment test.  Section 1129 that governors

20   confirmation has something like 14 elements, not factors,

21   each of which must be proven with competent evidence.

22       And if the bankruptcy court proceeds on what's called

23   cram down to confirm a plan that's been rejected, now you

24   have two additional very heightened elements.  That's what I

25   mean that this is about substance.

1    And -- and we believe that if this proceeded as a plan

2    modification it would have been rejected and denied.

3        Briefly, Your Honor, before I defer to Mr. Draper, we've

4    briefed this at length, but a plan modification is something

5    that changes a plan.  We know that from U.S. Brass.  In U.S.

6    Brass the plan provided for litigation by trial of claims.

7    It was changed later on to provide for litigation by

8    arbitration.  It didn't change the economics of the plan.  It

9    didn't change how much creditors were being paid.  Yet the

10   Fifth Circuit had no problem in -- in construing that as a

11   plan modification, something that was prohibited in that

12   case.

13       So the burden is pretty slight to find that a change to

14   a plan is a plan modification.  Again, because a debtor ought

15   not to be able to unilaterally change its contract and

16   creditor democracy in Chapter 11 is the key.

17       Here, Your Honor, there is no question that a new trust

18   is being created, the indemnification subtrust.  Your Honor,

19   Chapter 11 trusts are created under plans.  They're not

20   created by motion.  I would urge any -- any counsel who is a

21   bankruptcy expert to give the court a single case where a

22   trust was created by motion.  That's a plan issue.

23       $25 million is potentially being removed from creditors.

24   It may turn out to be a zero, that's true.  But we won't know

25   for many years to come.  And in the meantime that $25 million

is tied up.

You have this increased indemnification of professionals by the creditor trust that you did not have before.  There was no cross indemnification before.  There was no guarantee under indemnification.  And you have the fact that the plan expressly contemplated as a condition precedent DNO insurance, which could be waived, and they did waive it, but the plan required DNO insurance and now you're substituting that with this new trust.  That, Your Honor, is a modification.  It changes what is in the plan, both each of those things individually, and certainly I would argue in the totality of the circumstances.

Mr. Draper will now handle the motions to dismiss.

I would just point out as counsel for NexPoint that NexPoint did have five claims, known claims, when this appeal was commenced, and until recently NexPoint had the sixth claim, Hunter Covitz, which there was confusion internally at the HR department, but it always had that claim.  That claim has been disallowed very recently.  We are appealing that disallowance order because it was disallowed without a hearing and on negative notice, in violation of Rule 55.

And most importantly for standing, the plan requires the creditor -- creditor trust to reserve more than $200,000 for that claim until that claim is definitively and finally adjudicated by final order.  We also have $14 million of

1    administrative claims that we're going to go to trial on

2    probably now in April.  They have not been disallowed.  They

3    have not been paid.

4        Your Honor, with that, I'll yield the balance of our 15

5    minutes to Mr. Draper.

6        MR. DRAPER:  Your Honor, Douglas Draper.

7        Thank you very much for allowing this by zoom.

8        I'm going to address a few items that will be very quick

9    and certainly things that are I believe lost in the pleadings

10   and the papers that have been filed.  The first one is citing

11   Judge Jones in Pacific Lumber.  Equitable mootness should be

12   employed with a scalpel and not an axe.  So it has to be

13   narrow in its scope.  I'd ask -- though we're talking about

14   plan modifications, understand that the matter before you is

15   not an appeal of the confirmation order.  It is appeal of a

16   separate order that is not the confirmation order.

17       And I'd ask the court to look at two cases, really three

18   cases.  Number 1 is the -- the concept of substantial

19   consummation.  And in U.S. Brass the Fifth Circuit held that

20   substantial consummation was not a bar to a -- a equitable

21   mootness and was not a cause for equitable mootness.

22       The next two cases are probably even more important.  In

23   Walker Hospital, which is in Sneed Shipbuilding, the Fifth

24   Circuit expressly said equitable movements only applies to

25   two types of orders:  One an order confirming a plan, that's

1    not this case; and number two, an order under 363-M.  This is

2    not a sale order either.

3        So by virtue of the Fifth Circuit's express provisions

4    in both Sneed and in Walker equitable mootness is not a -- is

5    not a bar and should not be the cause of dismissal of this

6    debtor's appeal.

7        The last issue I'd like to address, and I'd ask the

8    court to take a look at, is a recent case out of the Eighth

9    Circuit, which is VeroBlue.  That is a very well-written

10   opinion.

11              THE COURT:  I think we've lost Mr. Draper's sound.

12              MR. DRAPER:  Can you hear me?

13              THE COURT:  Now I can.  Okay.  Go ahead, Mr.

14   Draper.        MR. DRAPER:  Where did you lose me?

15       Was I mentioning VeroBlue?

16              THE COURT:  You had started VeroBlue, yes, and then

17   and turned to your right to get some papers.

18              MR. DRAPER:  Okay.  What I would ask you to look --

19   take a hard look at is VeroBlue, 6 Fed 4th 880, the court

20   there did not uphold a dismissal on equitable mootness.

21   Enormous distributions had been made.  The plan had been

22   virtually substantially consummated, but the court said,

23   wait, we can -- we can fashion a relief here that is minimal

24   and that is -- is not problematic.

25       Let's talk about what relief can be fashioned here.  The

1    court can apply a scalpel and just go back and say, look, the

2    parties who were originally covered by the indemnity are

3    covered, anybody else who you just picked up is not covered.

4        And -- and the truth is when you look at the equitable

5    mootness cases they fall into two categories.  Category 1 is

6    a creditor who had made concessions is now being asked to

7    alter its treatment but still leave the concessions in place.

8    That's not the case here.  We don't have a creditor being

9    asked to make a concession.  In fact, the people now being

10   covered by this had no expectation.  In fact, the plan had no

11   expectation of an indemnification.  It was specific insurance

12   coverage that, again, you can apply a scalpel and just go

13   back to what the plan covered and limit it.

14       And number two is our third-party creditors before the

15   court who were affected by the order.  Well, that's not the

16   case either, because the employees and the parties who were

17   being covered by the indemnification are not before the

18   bankruptcy, are not before the court here, were not

19   creditors, who were not insiders.  They were just outsiders

20   who they're picking up.

21       Let me address now the -- the constitutional mootness.

22   And I think there are a few issues here.  The first is -- and

23   when you look at it in their papers there's a footnote to a

24   case where they cite that the Fifth Circuit says the --

25   the -- the -- the effect must be pecuniary.  That's not true.

1  In CMS it's a footnote in the pleading that they filed on the

2  21st, the court there, and that's the Fifth Circuit, said a

3  trustee who has no --

4           THE CLERK:  Two minutes remain.

5           MR. DRAPER:  -- who has no pecuniary interest in

6  fact is -- it doesn't -- doesn't have to have one and can

7  appeal.

8        Number two, Dugaboy has a real pecuniary interest.

9  Though they have forgotten this, we are a contingent creditor

10 under that plan.  Simple mathematics says if the $20 million

11 or $25 million is available for distribution to creditors my

12 capability to being paid increases.  The -- the test to

13 whether I have a pecuniary interest is not a dollar test.

14 It's a mathematical test.  It's a pretty clear that this

15 trust falls, or this trust is reduced to where it should be,

16 my capability or my ability for my contingent interest is --

17 is increased.

18       Again, thank you very much.  And, again, I would ask the

19 court to look at the cases I've cited on the equitable

20 mootness side because I think they are dispositive of the

21 Fifth Circuit standing at issue.

22          THE COURT:  Thank you, Mr. Draper.

23       And the appellants have reserved some time for rebuttal.

24 Mr. Pomerantz.

25          MR. POMERANTZ:  Good morning, Your Honor.

1       Can you hear me?

2               THE COURT:   I can.

3               MR. POMERANTZ:   Thank you, Your Honor.

4       I will be focusing my comments this morning on the

5   equitable mootness motion and the merits.   We filed our reply

6   in connection with the constitutional mootness motion and

7   I'll largely stand on that unless Your Honor has any

8   questions.

9       But I do want to highlight one point, Your Honor.

10  Appellant's standing throughout the bankruptcy case has been

11  an issue, so much so that Judge Jernigan issued an

12  extraordinary order in June 2021 requiring NexPoint and other

13  Dondero related entities to disclose all claims they had and

14  all their relationships with the debtor.   She entered the

15  order so she could evaluate whether parties had standing to

16  take positions before the bankruptcy court.

17      In July 2021 NexPoint filed their disclosure.   They

18  identified each employee claim by name, but they did not

19  mention the COVID's claim.   They had multiple chances to

20  correct this error when its standing was questioned and many

21  times after before the bankruptcy court.

22      Only now, after agreeing to withdraw all their other

23  claims does the COVID's claim miraculously appear on the

24  docket ten months -- ten months after it was transferred.

25  Your Honor, they said confusion, there's a huge credibility

issue here, and the statement in the declaration that the
transferred document was not backdated just doesn't cut it.
In any event, Your Honor, that claim has been disallowed and
can't support standing under the first and agreed standard.

Your Honor, with respect to equitable mootness the Fifth
Circuit acknowledges that an appeal of a bankruptcy court
order can become equitably moot.  And appellants are
incorrect are equitable mootness doesn't apply here.

First they argue that it doesn't apply because there is
not a planned confirmation order, but the circuit has
considered equitable mootness of orders other than
confirmation orders.  In GWI and in Skull Pack.  And Sneed is
not to the contrary.  Sneed only stands for the proposition
that a confirmed plan in the case is required, and we have
that here.

Second, consistent with other circuits, the Fifth
Circuit does not limit equitable mootness to the
organizations as opposed to liquidations.  Manges found
equitable mootness in a litigation case as -- and also a
litigation -- a liquidation was at issue in Superior
Offshore.

Lastly, while the complexity of the case can be a
factor, it's not a litmus test.  Berryman found equitable
mootness in a simple case.  And while both Texas Prairie and
Superior Offshore rejected equitable mootness, neither case

1  was complex and that didn't factor into the decision.

2        In any event, Your Honor, the asset monetization under

3  this plan is complex and requires sophisticated management.

4  As a result of serious allegations of mismanagement and fraud

5  against Mr. Dandero, the bankruptcy court appointed Mr. Seery

6  based upon his experience managing complex financial assets

7  similar to the debtor in his work as a restructuring

8  professional.  He is the debtor -- reorganized debtor's CEO

9  and the claimant trustee and his knowledge of the estate's

10  assets the bankruptcy court found was vital to the plan

11  success.

12        The assets consist of operating companies, undeveloped

13  land, structured products, distressed debt, and other unique

14  assets that will only deteriorate in value quickly if not

15  managed effectively.  Dismissal upon equitable mootness is

16  appropriate under Manges if it effects either the rights of

17  parties not before the court such that the court cannot order

18  effective relief or the success of the plan, and we meet

19  both, Your Honor.

20        Since the summer of 2020 Mr. Dandero and the other

21  appellants have embarked on a litigation onslaught that's

22  been designed to harass Mr. Seery and the other debtor

23  representatives that has resulted in a TRO against Mr.

24  Debtor -- Mr. Dandero, and a contempt order for violating the

25  TRO.

1      Although the plan confirmed in February 2021, the

2  effective date was conditioned upon obtaining acceptable DNO

3  coverage.  Why?  Because Mr. Seery and the other

4  post-confirmation management -- post effective date

5  management was simply unwilling to accept their roles without

6  a guarantee of their indemnification rights to protect

7  against Mr. Dandero's attacks.

8      DNO coverage on an acceptable basis wasn't available

9  because of Dandero, and the debtor and the committee pivoted

10  to self-insurance and sought the court authority to implement

11  the indemnity trust.  Had the bankruptcy court not authorized

12  the indemnity trust, the plan would not have gone effective,

13  Highland would have remained in Chapter 11 without the

14  ability to make distribution to creditors.  But the

15  bankruptcy court did approve the indemnity trust, management

16  did rely on it, and the plan did go effective.

17      The court simply cannot order any effective relief in

18  this appeal that would reinstate the status quo for the

19  managers, and reinstatement of the status quo is a key that

20  comes out of the cases.  If the court reverses, management

21  loses protection for their indemnification rights for actions

22  taken after the August 11th effective date.  And as the

23  Dandero litigation onslaught has intensified post effective

24  date and post confirmation, DNO insurance, not an option six

25  months ago, will not be an option now.  So security for the

1    indemnification rights, which was the only reason that the

2    plan went effective, will no longer exist.

3         Reversal will not only pull out the rug from management

4    but will also materially jeopardize the plan.  Mr. Seery

5    would resign if the order is reversed and believe the

6    subtrust -- litigation subtrustee and the oversight members

7    would follow suit.  This a big deal.  Mistake can't be easily

8    replaced.  As the court found in the confirmation order in

9    the findings of fact, stripped of the ability to guarantee

10   indemnification rights and without DNO coverage it would be

11   impossible to find replacement managers with the

12   sophistication necessary to monetize the assets, and the

13   result would be a void in management, a likely default under

14   the exit facility, and it would seriously jeopardize the

15   plan's success.

16        Your Honor, equitable mootness cases involve an

17   appellate trying to resolve its appellate rights which if

18   successful will unquestionably enhance their rights.  Courts

19   have to balance the rights of the appellant to enhance their

20   rights against parties' expectations and the success of the

21   plan.  But this is not the paradigm we have here.

22        Appellants filed this appeal in the name of unsecured

23   creditors who they said were armed by the indemnity trust,

24   but unsecured creditors were not armed by the indemnity

25   trust.  The committee, the statutory fiduciary for unsecured

creditors, supported the indemnity trust, and not one

creditor with an allowed claim objected to it.  The committee

supported the order because they recognized protecting

management, and having the plan go effective, a plan that was

accepted by 99.8 percent in amount of unsecured creditors,

was in the bankruptcy's word -- bankruptcy court's words a

miracle.  Voiding the trust, losing competent management, and

jeopardizing success will significantly harm creditors.

Stripped of their unsecured claims appellant's

motivation in this appeal becomes clear.  It never had

anything to do with protecting unsecured creditor's rights.

They want to do everything they can to destroy the plan.

That's not a basis for standing or a basis for allowing this

court -- this appeal to continue.  The court should dismiss

the appeal as equitably moot.

Your Honor, turning to the merits, the indemnity trust

order is not a plan modification because it did not alter the

parties' rights, expectations, and obligations under the

plan.

I want to spend a minute on the -- on the nature of

appellant's interest, because it really goes to what their

expectations could have been under the plan.  NexPoint

Advisors is owned and controlled by James Dandero.  NexPoint

along with appellant HCFMA (sic), also owned and controlled

by Dandero, assert a $14 million administrative claim which

1  will be soon tried in the bankruptcy court.  But any allowed

2  administrative claim is not affected by the trust because it

3  will be paid by the approximately 195 million that was

4  available projected to be paid to junior unsecured creditors.

5  There is no circumstance under which this claim will not be

6  paid.

7      Appellants could not as trust beneficiaries have had any

8  expectations of how indemnification claims would be paid

9  under the plan because they were not trust beneficiaries at

10 the time of confirmation.  Their unsecured claims were

11 acquired after confirmation.

12     Appellants are not like the creditors in U.S. Brass and

13 the asbestos cases.  In those cases the creditors withdrew

14 their objections to the plan based upon changes specifically

15 made in the plan to address their concerns and when

16 post-confirmation the debtor tried to undo those changes.

17 That's not what's happening here.  Here, as I said, the

18 committee and other creditors representing 99 percent in

19 dollar amount of unsecured claims supported the plan.  The

20 committee actively participated in drafting the indemnity

21 trust and supported the order which is being appealed, as it

22 was the only way to protect the independent managers and have

23 the plan go effective.

24     The only reason that the unsecured creditor class

25 rejected the plan was because of a handful of votes of former

1    employees who were being terminated under the plan, who were

2    Dandero loyalists, whose claims are disputed, and who now

3    work for Dandero related entities, and none of whom objected

4    to the plan.

5         Before I have turn to the merits on the indemnification,

6    Your Honor, I want to describe the post-confirmation

7    structure because I think it's very important.  The debtor

8    was reconstituted as the reorganized debtor, a limited

9    partnership.  Its limited partner is the claim and trust and

10   its general partner is the corporate entity which is a

11   subsidiary of the claim and trust.  The reorganized debtor

12   retained its management contracts with third-party funds and

13   other related assets to avoid regulatory complications.  The

14   majority of the remaining assets were transferred to the

15   claim and trust and Mr. Seery is the claim and trustee.

16        A litigation subtrust was created because the creditors

17   wanted prosecution of claims separated from asset

18   monetization and controlled by a different person.  The claim

19   and trust transferred litigation claims to the subtrust to be

20   pursued by the litigation trustee, but proceeds generated by

21   the reorganized debtor assets and the litigation --

22             THE COURT:  I think we lost our sound just then,

23   Mr. Pomerantz.

24             MR. RUKAVINA:  Your Honor, what happened to

25   Mr. Draper and I is somehow we were muted without pressing

1    the button.  I don't know how.  But perhaps Mr. Pomerantz has

2    been also muted.

3             MR. DRAPER:  If there could be a message to him to

4    reengage his microphone it might work.  That's what I did.

5             MR. POMERANTZ:  Your Honor, can you hear me?

6      I'm not sure where you lost me, Your Honor.

7             THE COURT:  All right.

8             MR. POMERANTZ:  I was talking about the corporate

9    structure of the three -- of the different entities.

10            THE COURT:  Yes.  You were just transitioning into

11    that.  And we'll add two minutes to your time.

12            MR. POMERANTZ:  Okay, Your Honor.  Sorry.

13      I talked about the general -- the -- the limited

14    partnership and that the claim and trust is the limited

15    partner and is the owner of the subsidiary who is the general

16    partner.  And the reorganized debtor remained -- retained its

17    management contracts with third-party funds and other related

18    assets to avoid regulatory complications.

19      The majority of the debtor's remaining assets were

20    transferred to the claim and trust, and Mr. Seery is the

21    claim and trustee.  A litigation subtrust was created because

22    creditors wanted prosecution of claims separated from asset

23    monetization and controlled by a different person.  The claim

24    and trust transferred litigation claims to the subtrust to be

25    pursued by the litigation trustee.

1    So the way these assets work together is proceeds

2    generated by the reorganized debtor's assets and the

3    litigation subtrust claims are upstreamed to the claim and

4    trust for distribution to trust beneficiaries along with the

5    proceeds of claim and trust assets.  They work together as a

6    symbiotic group to upstream these assets.  All of the

7    preconfirmation debtor assets are -- end up being upstreamed

8    to the claim and trust after expenses are paid.

9    Your Honor, turning to the merits, the appellant's

10   principal argument is that the indemnity --

11            THE LAW CLERK:   10 minutes remaining.

12            MR. POMERANTZ:   Thank you.

13   Turning to the merits, the principal argument is that

14   the indemnity trust expanded the people who were to be

15   indemnified by the claim and trust to include people

16   indemnified by the litigation subtrust of the reorganized

17   debtor.

18   Your Honor, first, under the Fifth Circuit's McKenzie

19   decision and Your Honor's All Track Transportation decision,

20   the appellant's have waived this argument by not making it in

21   their pleadings or in the argument below.  Even if not

22   waived, Your Honor, the argument mischaracterizes the

23   indemnity trust and the provisions of the plan and its

24   implemented documents.

25   As a threshold matter, Your Honor, neither the indemnity

1    trust order or the indemnity trust create any obligations to

2    any party.  The turn sheet attached to the motion states that

3    the purpose of the trust is to provide collateral security

4    supporting the indemnification obligations created under the

5    claim and trust agreement, the litigation subtrust agreement,

6    and the reorganized debtor limited partnership.  The

7    indemnity trust is only a mechanism to satisfy the indemnity

8    claims that become due under the various plan documents and

9    which are not satisfied first by the claim and trust, the

10   litigation subtrust, and the reorganized debtor.  It does not

11   create any new indemnification obligations.  Rather, the

12   indemnity obligations are created under the plan documents.

13   8.2 of the claim and trust, 8.2 of the litigation trust, and

14   Section 10 of the reorganized debtor limited partnership.

15          Therefore, the real question, Your Honor, is whether the

16   funding of the indemnification trust is consistent with the

17   plan, and that the answer is yes.  The indemnification trust

18   was to be funded with two and a half million dollars of cash,

19   of debtor cash upon inception, and a 22 and a half million

20   dollar note.  The claim and trust, the litigation subtrust,

21   and the reorganized debtor are all co-obligors under the 22

22   and a half million dollar note.  The assets of all those

23   entities will fund the note.

24          Appellants dismiss the claim and trust ability to create

25   reserves and -- and obligation to fund litigation subtrust

expenses and the right to contribute capital to the

reorganized debtor to preserve its value.  Various provisions

of the plan and its implementing documents provide the claim

and trust with such authority, discretion, and obligation.

In addition to the cases cited in our brief, Your Honor,

I direct the court's attention to Article 4, Capital A and B

of the plan, and Section 3.3(b)(vi) of the claim and trust

agreement.

The bankruptcy court also ruled correctly that the

creation of the indemnity trust to securitize plan approved

indemnification obligations was an action to implement the

plan authorized by Article 4(d) of the plan.

So several principals flow from these provisions.

First, the plan authorized the claim and trust and other

post-effected date entities to complete reserves and fund

expenses of all post-confirmation entities.

Second, claim and trust beneficiaries were only entitled

to the proceeds net after all expenses were paid and reserved

for.

Third, the debtor was authorized to take actions to

implement the terms of the plan and supporting documents.

Fourth, as the bankruptcy court found, nothing in the

plan prohibits self-insurance through the creation of the

indemnity trust in lieu of DNO insurance.

And, last, the structure was consistent with creditor

expectations key for the plan modification argument.  Asset

proceeds would flow up to the claim and trust, go and

distribute the net proceeds to creditors after payment of all

expenses relating to the asset monetization process.

Appellants argue in their briefing that the creditors'

rights were fundamentally changed because while the plan

created discretion to set reserves, the indemnity trust

transformed that discretion into a legal obligation.  But

appellants are wrong for two reasons.

First, the indemnity trust authorized the creation of

the indemnity -- the order authorized the creation of the

indemnity trust.  It did not become a legal obligation unless

and until the claim and trust oversight board authorized the

execution of the indemnity trust agreement.  The claim and

trust board actually did authorize the execution of the

indemnity trust on August 11th, the effective date of the

plan.  So the premise of the argument that the indemnity

trust order took away discretion is not correct.  The claim

and trust oversight board retained such discretion --

discretion and exercised it.

Moreover, Your Honor, under the plan all creditors

seated decision-making authority to the claim and trust and

the oversight board over administration of the trust,

including the discretion of whether to create reserves to

fund litigation trust expenses and reorganize debtor

expenses, the amount of those reserves, how much money could

be spent on DNO coverage.  All that discretion was given to

those -- those governing bodies.  Because no creditor

influenced how the claim and trust was administered, the

fact --

THE CLERK:  Five minutes remain.

MR. POMERANTZ:  Excuse me?

THE COURT:  I think the clerk said five minutes

remain.

MR. POMERANTZ:  Okay.  Thank you.

Because no creditor could influence how the claim and

trust was administered, the fact that the claim and trust and

the oversight board could reserve and fund expenses as they

deemed appropriate was within creditors' expectations under

the plan and did not change the legal relationship between

the debtor and its creditors thereby requiring a plan

modification.

I want to briefly mention the issue of DNO coverage,

Your Honor.  The plan effective date was contingent upon

obtaining acceptable DNO insurance.  As I said, the condition

was essential, because Seery and the other managers would not

agree to serve without protection.  The debtor could not have

found post-confirmation effective date management without it,

and though the -- the condition was waivable, unfortunately

acceptable insurance was not available because of Dondero's

1    threats and litigation onslaught, but rather than not going

2    effective, the debtor made -- decided to self-insure.

3        And who objects to the self-insurance?

4        Appellants.  Who did not hold general unsecured claims

5    of confirmation, who are not trust beneficiaries now,

6    notwithstanding Mr. Draper's comments of this contingent

7    right, that's clearly not sufficient under the Fifth Circuit

8    standing to be a person aggrieved, who are the reason

9    acceptable DNO insurance cannot be obtained and really who

10   have no legitimate basis to contest the indemnity trust,

11   other than to be, in the words of the bankruptcy court's

12   confirmation order, disrupters.

13       The indemnity trust is the functional equivalent of DNO

14   coverage.  Both are designed to secure indemnity obligations

15   under the plan.  The cost of DNO insurance reserves are claim

16   and trust expenses or expenses otherwise necessary to

17   preserve the value of the reorganized debtor and are senior

18   to the payment of trust beneficiaries.

19       And while payment of DNO premiums are some costs never

20   to be recovered and potentially distributed to beneficiaries,

21   any funds from the indemnity trust may be freed up to pay

22   trust beneficiary claims if no indemnity claims are asserted.

23       Appellants argument that the change to an indemnity

24   trust modified the prayer's rights, obligations, and

25   expectations, is not supported by the plan or any of the

documents executed in support of the plan, and it's not supported by the case law.

The parties have briefed the leading cases of what constitutes a plan modification, and they don't support appellant's argument.  In the Fifth Circuit's Brass case, Your Honor, the debtor modified a plan prior to confirmation to resolve an insurance company's plan objection.  The change provided that future disputes would be resolved by litigation and not arbitration.  That change was critical to the insurance company.  Why?  Because it believed arbitration could result in conducive settlements detrimental to its coverage defenses.

When post-confirmation the debtor through a settlement agreement tried to change the way in which the claims would be resolved through arbitration, the insurance company objected.  Because this change modified a fundamental plan provision, which the insurance company relied upon in withdrawing its objection to confirmation, the Fifth Circuit easily found it to be a plan modification.

THE LAW CLERK:  Two minutes remain.

MR. POMERANTZ:  Thank you.

This is nothing like what's going on in here.

In the Second Circuit's Joint Asbestos case the plan carefully created a priority and distribution mechanism to satisfy asbestos claims against the post-confirmation trust.

1   Post confirmation the trust became insolvent and could not

2   satisfy its plan obligations.  Certain parties agreed to

3   modify the trust to change the payment timing, the priority

4   scheme, and how claims would be resolved.  The Second Circuit

5   found that this restructuring of the trust was a plan

6   modification.  As with U.S. Brass this case is stark -- in

7   stark contrast to what's going on here.

8       In conclusion, Your Honor, this appeal is nothing but a

9   continuation of James Dandero and his related entities'

10  efforts to throw every roadblock into the debtor's

11  restructuring process.  The indemnity order did not alter

12  appellant's expectations of their treatment under the plan.

13  How could it?  They didn't have any unsecured claims when the

14  plan was confirmed.  Nor does it modify the rights or

15  treatment of creditors' claims or effect the relationship in

16  any way.  The plan board fall contemplated asset proceeds

17  being upstream to the claim and trust who would fund those

18  expenses, create reserves, and distribute the remaining to

19  the trust beneficiaries.  The indemnity trust is entirely

20  faithful to this principle.

21      Thank you, Your Honor.

22          THE COURT:  Thank you, Mr. Pomerantz.

23      Rebuttal?

24          MR. RUKAVINA:  Yes, Your Honor.  Can the court hear

25  me?

1          THE COURT:  Very well.

2          MR. RUKAVINA:   Thank you.

3      Your Honor, in U.S. Brass the Fifth Circuit rejected the

4  very argument just made, which is that, well, under the plan

5  the debtor had the discretion to compromise claims, so

6  switching from litigating them to arbitration was no harm, no

7  foul.  So that argument is not a sound argument.  Nor is the

8  no harm, no foul argument.  The bankruptcy code provides for

9  a mechanism and that mechanism must be complied with.  I took

10 Your Honor's questioning of me earlier to -- to go to that

11 argument, no harm, no foul.  Respectfully, they are changing

12 a plan, whether it's actually no harm, no foul doesn't

13 matter.  That's an argument to be made at the new

14 confirmation hearing.

15     Your Honor, we're not talking about stripping Mr. Seery

16 of indemnification.  The allegation that he and the others

17 will resign, it's baseless.  They can set aside several

18 million dollars -- they have indemnification rights under the

19 plan.  We're not challenging that.  They can set aside

20 millions of dollars for themselves.  For the notion that

21 reversing this order will defeat the plan because the

22 professionals will quit is not supported by the record and

23 it's certainly not a logical one.

24     But most importantly, what I take real exception with

25 is, and I'm quoting "the Dandero litigation onslaught".  Your

Honor, my two clients represent thousands of investors who have trusted them with billions of dollars. We're not some cowboys litigating with everyone. In fact, we are not taking offensive litigation to the bankruptcy case. We are not Mr. Dondero. We have not been sanctioned. If the -- if the debtor is concerned, the debtor has Rule 11 rights. The debtor has Section 1927 rights.

We are the defendants in multiple lawsuits filed by the debtor. In one lawsuit, Your Honor, we had a final trial on six days notice on a mandatory injunction the debtor sought against us. And they lost. The bankruptcy court denied them that.

I am -- I -- I hear my clients being maligned nonstop, but listen to what they're saying. They're saying James Dondero. They're saying James Dondero was sanctioned. Whatever the merits of those arguments are, they simply do not apply to my clients. My clients are enjoined by the plan. They're enjoined from properly representing their constituents. That is why we are appealing the plan to the Fifth Circuit. That is why we are involved in this bankruptcy case. As we said at the confirmation hearing, don't enjoin us and we'll go home.

So -- so the allegation that we are picking this fight, that we are cowboy litigants, that we are vexatious, is not in the record, Your Honor, and again it shouldn't matter for

1     purposes of this appellant argument.

2          Also not in the record is what Mr. Pomerantz was talking

3     about, the terms of the promissory note here.  I just had my

4     associate look and he could not find it and I don't remember

5     it.  It's part of the problem, Your Honor.  If this had been

6     handled as a plan modification with a disclosure statement,

7     all of these documents that have now been signed would have

8     been public, would have been -- would have been known by

9     everyone.  That's, again, the whole point that the -- the

10    democracy, not only of the creditors in a Chapter 11, Your

11    Honor, but all the other parties in interest, and certainly

12    my clients are parties in interest, were alleged to owe tens

13    of millions of dollars to the debtor.  We're -- we're subject

14    to final and permanent injunctions in the plan.

15         We've also made that argument on standing, Your Honor.

16    The record is clear that the plan itself would not have gone

17    effective but for this order.  My client right now, and

18    Mr. Dondero -- I'm sorry, Mr. Draper's client right now would

19    not be looking down a permanent injunction and exculpations

20    of their claims and releases of their claims without this

21    order.  It takes multiple orders to get to an effective plan

22    in Chapter 11, Your Honor, disclosure statement, plans

23    estimation, plan confirmation, et cetera.  This is merely the

24    last link in that chain.  Whether the court agrees with me or

25    not that we have creditor standing, we have standing --

1           THE CLERK:  One minute remains.

2           MR. RUKAVINA:  Thank you.

3       -- because the plan would not be effective.

4       Your Honor, very quickly, this court I submit has a duty

5   to supervise the Article I bankruptcy court.  That's the

6   whole point of Northern Pipeline -- Northern Marathon.  We

7   have cited and quoted Stern v. Marshall, a recent Supreme

8   Court case, where the Supreme Court says, "Any party may

9   appeal those determinations to the Federal District Court

10  where the Federal District Judge will review them," et

11  cetera.  The bankruptcy jurisdictional system does not work

12  if this court can't review it.  And your law clerk can find

13  it for you, Your Honor.  It came out yesterday.  It's a

14  Second Circuit opinion.  It's case number 20-2548.  In that

15  Second Circuit opinion standing was iffy.  The Second Circuit

16  didn't find standing under traditional notions, but it says,

17  "But the fact that this case is a one-off --

18          THE CLERK:  Time.

19          THE COURT:  All right.  Thank you, counsel.

20      All right.  Thank you, counsel for your arguments.

21      I'm going to ask that you remain on the link after I

22  leave the courtroom in case the court reporter has any

23  questions about any portion of your argument or any cases

24  that you cited.  Sometimes she does, sometimes she doesn't.

25  And then once that process is completed then you're welcome

1    to sign-off.

2         At this time the court takes the appeal under submission

3    and will issue its ruling.

4         Thank you, counsel.

5         The court will stand in recess.

6                        (End of proceedings.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1
2
3

# INDEX – ORAL ARGUMENT

| ORAL ARGUMENT | Page | Line |
|---|---|---|
| MR. RUKAVINA ............................................... | 3 | 19 |
| MR. DRAPER ................................................. | 10 | 4 |
| MR. POMERANTZ .............................................. | 13 | 23 |
| MR. RUKAVINA ............................................... | 30 | 13 |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

< Dates >
**February 2021**
16: 21
**JANUARY 25,**
**2022** 1: 18, 3: 1
**July 2021** 14: 13
**June 2021** 14: 8
**March, 2022**
35: 29
**$14** 9: 23, 19: 18
**$20** 13: 7
**$200,000** 9: 21
**$22.5** 5: 6
**$25** 5: 20, 6: 1,
6: 18, 8: 21,
8: 23, 13: 8


< 1 >
**1** 10: 16, 12: 2
**10** 23: 4, 24: 4,
35: 8
**10100** 1: 29
**11** 7: 13, 8: 14,
8: 17, 17: 8,
31: 20, 32: 24,
33: 11
**1100** 2: 41
**1127(b** 7: 1
**1129** 7: 18
**11th** 17: 17,
26: 7
**13** 35: 10, 35: 12
**13th** 1: 30
**14** 7: 19
**15** 10: 2
**1535** 2: 41
**15th** 35: 29
**19** 35: 6
**1927** 31: 21
**195** 19: 21


< 2 >
**20-2548** 34: 3
**2020** 16: 15
**21-CV-1895-D**
1: 5
**214-855-7587**
2: 7

**214.662.1557**
2: 43
**21st** 12: 23
**22** 24: 10, 24: 12
**23** 35: 10
**2500** 2: 13


< 3 >
**3** 1: 5, 35: 6
**3.3(b)(vi** 24: 23
**30** 35: 12
**310-201-0760**
1: 33
**310-227-6910**
1: 32
**363-M** 10: 24
**3800** 2: 5


< 4 >
**4** 24: 22, 35: 8
**4(d** 25: 3
**4th** 11: 16


< 5 >
**500** 2: 4
**504-299-3300**
2: 15
**504-299-3399**
2: 16
**55** 9: 19


< 6 >
**6** 11: 16
**650** 2: 12


< 7 >
**70130** 2: 14
**75201** 2: 6
**75242** 2: 42


< 8 >
**8.2** 24: 3, 24: 4
**880** 11: 16

< 9 >
**90067** 1: 31
**99** 20: 11
**99.8** 18: 23


< A >
**A.** 1: 21
**ability** 5: 11,
13: 13, 17: 8,
18: 4, 24: 15
**able** 8: 13
**accept** 16: 25
**acceptable**
16: 22, 17: 3,
27: 10, 27: 15,
27: 24
**accepted** 18: 23
**accurate** 7: 8
**acknowledges**
15: 2
**acquired** 20: 3
**action** 25: 2
**actions** 17: 16,
25: 11
**actively** 20: 13
**actually** 26: 6,
31: 2
**add** 3: 11, 4: 17,
6: 12, 22: 4
**addition** 24: 21
**additional** 7: 23
**address** 4: 13,
4: 16, 5: 25,
10: 6, 11: 5,
12: 18, 20: 8
**addressed** 6: 19
**addressing** 3: 23
**adjudicated**
9: 23
**administered**
26: 20, 27: 2
**administration**
26: 14
**administrative**
9: 24, 19: 18,
19: 20
**advised** 3: 14
**Advisors** 1: 10,

3: 21, 19: 16
**affected** 12: 12,
19: 20
**aggrieved** 27: 23
**ago** 17: 20
**agree** 27: 12
**agreed** 14: 25,
29: 17
**agreeing** 14: 18
**agreement**
23: 21, 24: 24,
26: 5, 29: 4
**agrees** 33: 13
**ahead** 11: 10
**Akard** 2: 4
**al** 1: 11
**allegation**
31: 5, 32: 12
**allegations**
15: 24
**alleged** 33: 1
**allocated** 3: 12
**allowed** 18: 21,
19: 19
**allowing** 10: 5,
19: 7
**alone** 6: 3
**alter** 12: 3,
19: 11, 30: 1
**Although** 16: 21
**amount** 18: 24,
20: 12, 26: 17
**Angeles** 1: 31
**announce** 3: 15
**answer** 4: 21,
24: 8
**anybody** 11: 25
**apologize** 5: 9
**appeal** 3: 4,
3: 22, 9: 13,
10: 13, 11: 4,
13: 4, 15: 2,
17: 13, 18: 16,
19: 4, 19: 7,
19: 8, 29: 23,
33: 22, 34: 16
**appealed** 20: 14
**appealing** 9: 17,
32: 8
**appear** 14: 19

Appellant 14:6,
18:13, 19:3,
19:14, 19:17,
23:2, 23:12,
28:20, 30:2,
32:15
Appellants
1:12, 2:2,
3:17, 3:21,
13:20, 15:3,
16:16, 18:16,
19:25, 20:5,
24:15, 25:21,
25:25, 27:19,
28:13
appellate
18:10, 18:11
APPELLEE 1:18,
1:27
applies 10:22
apply 11:23,
12:9, 15:4,
15:5, 32:6
appointed 15:25
appropriate
16:11, 27:4
approve 17:10
approved 7:8,
7:16, 25:1
approximately
19:21
April 9:25
arbitration
8:6, 28:24,
28:25, 29:5,
30:21
argue 9:9,
15:5, 25:21
argued 4:1
arguendo 6:5
ARGUMENT 1:20,
3:1, 3:4, 3:11,
23:3, 23:6,
23:12, 23:13,
23:14, 25:17,
26:8, 28:13,
28:20, 30:19,
30:22, 30:23,
31:1, 31:3,
32:15, 33:4,

34:12, 35:1,
35:4
arguments 32:5,
34:9
armed 18:17,
18:18
around 4:20
Article 24:22,
25:3, 33:19
Asbestos 20:6,
29:13, 29:15
aside 31:6,
31:8
assert 19:18
asserted 5:21,
28:12
assertion 4:16
Asset 15:22,
21:10, 22:15,
25:17, 25:20,
30:6
assets 16:1,
16:5, 16:7,
16:9, 18:7,
21:6, 21:7,
21:14, 22:11,
22:12, 22:19,
22:20, 22:23,
22:24, 22:25,
24:13
associate 32:18
Assume 6:5
attached 23:18
attacks 17:2
attention 24:22
August 17:17,
26:7
authority 17:5,
24:20, 26:13
authorize 26:6
authorized
17:6, 25:3,
25:5, 25:11,
26:1, 26:2,
26:4
available 13:8,
17:3, 19:22,
27:15
avoid 21:6,
22:11

aware 3:13
away 26:9
axe 10:10

< B >
back 6:11,
11:23, 12:9
backdated 14:23
balance 10:2,
18:13
Bankruptcy 3:4,
4:6, 4:8, 4:17,
6:22, 7:14,
7:21, 8:19,
12:15, 14:6,
14:12, 14:17,
15:2, 15:25,
16:5, 17:6,
17:9, 18:25,
19:19, 24:25,
25:13, 28:1,
30:23, 31:18,
31:25, 32:9,
33:19, 33:25
bar 10:18, 11:3
based 16:1,
20:7
baseless 31:6
basis 17:3,
19:6, 19:7,
27:25
became 29:16
become 15:3,
23:24, 26:3
becomes 19:4
begin 3:5, 3:16
beginning 5:17
believe 3:17,
7:11, 7:25,
10:7, 17:25
believed 28:25
below 23:13
beneficiaries
19:25, 20:2,
22:22, 25:8,
27:20, 28:8,
28:10, 30:9
beneficiary
28:12

Berryman 15:18
big 18:2
billions 31:16
bit 4:25
black 6:21
Blvd 1:29
board 26:4,
26:6, 26:10,
26:14, 27:3,
30:6
bodies 26:19
Brass 8:4, 8:5,
10:17, 20:5,
28:20, 29:21,
30:18
breach 5:22
brief 4:1,
5:14, 24:21
briefed 8:3,
28:18
briefing 25:21
Briefly 8:2,
27:8
broader 4:25
burden 8:11
business 5:24,
7:17
button 21:19

< C >
CA 1:31
call 3:21
called 7:21
capability
13:9, 13:13
Capital 1:5,
1:9, 1:16, 3:4,
24:17, 24:22
carefully 29:14
case 4:3, 8:10,
8:19, 10:24,
11:6, 12:5,
12:13, 12:21,
14:6, 15:10,
15:15, 15:17,
15:19, 15:20,
28:16, 28:20,
29:13, 29:21,
31:18, 32:10,

33: 22,   34: 3,
34: 6,   34: 11
cases 10: 15,
10: 16,   10: 20,
12: 2,   13: 16,
17: 15,   18: 10,
20: 6,   24: 21,
28: 18,   34: 12
cash 24: 9,
24: 10
categories 12: 2
Category 12: 2
cause 10: 19,
11: 3
CEO 16: 3
Certain 29: 17
certainly 9: 9,
10: 7,   31: 12,
32: 25
certify 35: 19,
35: 24
cetera 33: 12,
33: 24
chain 33: 13
challenging
31: 8
chances 14: 15
change 8: 7,
8: 11,   8: 13,
27: 5,   28: 13,
28: 22,   28: 24,
29: 4,   29: 6,
29: 18
changed 8: 6,
25: 22
changes 8: 4,
9: 8,   20: 7,   20: 9
changing 31: 1
Chapter 7: 13,
8: 14,   8: 17,
17: 8,   32: 24,
33: 11
Circuit 8: 8,
10: 17,   10: 22,
11: 1,   11: 6,
12: 21,   12: 24,
13: 18,   15: 2,
15: 6,   15: 12,
23: 10,   27: 22,
28: 20,   29: 8,

29: 13,   29: 19,
30: 18,   32: 9,
34: 2,   34: 3,
34: 4
circuits 15: 12
circumstance
19: 23
circumstances
9: 10
cite 12: 21
cited 13: 16,
24: 21,   33: 21,
34: 13
citing 10: 8
claimant 16: 4
claims 5: 20,
6: 1,   8: 5,   9: 13,
9: 24,   14: 9,
14: 19,   19: 3,
20: 1,   20: 3,
20: 12,   20: 20,
21: 10,   21: 12,
22: 15,   22: 17,
22: 21,   23: 23,
27: 19,   28: 12,
29: 4,   29: 15,
29: 19,   30: 3,
30: 5,   30: 20,
33: 9
class 20: 17
clear 13: 11,
19: 4,   33: 5
clearly 27: 22
CLERK 3: 13,
6: 12,   13: 1,
23: 4,   26: 21,
26: 23,   29: 10,
33: 15,   34: 1,
34: 7
client 33: 6,
33: 7
clients 31: 15,
32: 2,   32: 6,
33: 1
CMS 12: 22
co-counsel  3: 22
co-obligors
24: 12
Code 4: 8,   30: 23
collateral

23: 19
comes 17: 15
commenced 9: 14
comments 14: 1,
27: 21
Commerce 2: 41
committee 17: 4,
18: 19,   18: 21,
20: 11,   20: 13
companies 16: 7
company 28: 22,
28: 25,   29: 5,
29: 7
competent 7: 20,
19: 1
complete 25: 6
completed 34: 14
complex 15: 20,
15: 23,   16: 1
complexity
15: 17
complications
21: 6,   22: 11
complied 30: 24
comply 35: 24
compromise
30: 20
computer 2: 48
conceived 5: 25
concept 10: 16
concerned 31: 20
concerns 20: 8
concession 12: 6
concessions
12: 3,   12: 4
conclusion
29: 23
condition 9: 4,
27: 10,   27: 14
conditioned
16: 22
conducive 29: 1
Conference
35: 25
confirm 7: 22
confirmation
7: 18,   10: 13,
10: 14,   15: 6,
15: 8,   17: 19,
18: 3,   20: 3,

20: 4,   27: 20,
28: 2,   28: 21,
29: 8,   29: 16,
31: 3,   32: 10,
33: 12
confirmed 4: 8,
15: 10,   16: 21,
30: 4
confirming
10: 23
confusion 9: 15,
14: 21
Congress 6: 23
connection 14: 3
considered 15: 7
consist 16: 7
consistent
15: 12,   24: 7,
25: 16
constituents
32: 8
constitutes
28: 19
constitutional
12: 18,   14: 3
construing 8: 9
consummated
11: 19
consummation
10: 17,   10: 18
contemplated
9: 4,   30: 6
contempt 16: 19
contest 27: 25
contingent
13: 6,   13: 13,
27: 9,   27: 21
continuation
29: 24
continue 4: 12,
5: 12,   19: 8
contract 6: 21,
6: 22,   6: 23,
6: 24,   6: 25,
7: 1,   8: 13
contracts 21: 5,
22: 10
contrary 15: 9
contrast 29: 22
contribute

24: 17
controlled
19: 16,  19: 17,
21: 11,  22: 16
core  4: 6
corporate  21: 3,
22: 1
correct  5: 3,
14: 16,  26: 9
correctly  24: 25
cost  28: 5
costs  28: 9
Counsel  3: 11,
3: 16,  4: 11,
8: 18,  9: 12,
34: 8,  34: 9,
34: 18
couple  4: 11
courtroom  34: 11
Courts  18: 12
cover  3: 6
coverage  12: 9,
16: 23,  17: 3,
18: 5,  26: 18,
27: 8,  28: 4,
29: 2
covered  11: 24,
11: 25,  12: 7,
12: 10,  12: 14
COVID  14: 15,
14: 19
Covitz  9: 15
cowboy  32: 13
cowboys  31: 17
cram  7: 22
create  23: 17,
24: 1,  24: 15,
26: 15,  30: 8
created  4: 21,
6: 6,  8: 16,
8: 17,  8: 18,
8: 20,  21: 9,
22: 14,  23: 20,
24: 3,  25: 23,
29: 14
creation  25: 1,
25: 14,  26: 1,
26: 2
credibility
14: 21

creditor  7: 13,
8: 14,  9: 1,
9: 21,  12: 3,
12: 5,  13: 6,
18: 20,  19: 5,
20: 17,  25: 16,
26: 19,  27: 1,
33: 14
creditors  5: 8,
7: 4,  7: 6,  7: 9,
7: 11,  8: 8,
8: 21,  12: 11,
12: 15,  13: 8,
17: 9,  18: 17,
18: 18,  18: 20,
18: 24,  19: 2,
19: 22,  20: 5,
20: 6,  20: 11,
21: 9,  22: 15,
25: 19,  25: 21,
26: 12,  27: 4,
27: 6,  30: 5,
32: 24
critical  7: 13,
28: 24
cross  5: 1,  9: 2
CRR  2: 39,  36: 6
CSR  35: 19
cut  14: 23


< D >
Dallas  1: 3,
1: 11,  2: 6,
2: 42,  36: 9
Dandero  15: 25,
16: 15,  16: 19,
17: 2,  17: 4,
17: 18,  19: 16,
19: 18,  20: 20,
20: 21,  29: 24,
31: 14
date  16: 22,
16: 24,  17: 17,
17: 19,  25: 6,
26: 7,  27: 9,
27: 13
Davor  2: 2,  3: 20
day  35: 29
days  31: 24

ddraper@hellerd
raper.com  2: 17
deal  18: 2
dealing  4: 9
deals  4: 7
debt  16: 8
decided  27: 17
decision  7: 9,
15: 21,  23: 11
decision-making
26: 13
declaration
14: 22
deemed  27: 4
default  18: 8
defeat  31: 10
defendants
31: 22
defenses  29: 2
defer  8: 2
definitively
9: 22
democracy  7: 13,
8: 14,  32: 24
denied  8: 1,
31: 25
department  9: 16
describe  20: 24
designed  16: 17,
28: 4
destroy  19: 6
detail  5: 14,
7: 5
deteriorate
16: 9
determinations
33: 23
detrimental
29: 1
difference  4: 13
different  5: 5,
21: 11,  22: 2,
22: 16
difficulties
3: 10
direct  24: 22
disallowance
9: 18
disallowed
9: 17,  9: 18,

9: 25,  14: 24
disclose  14: 9
discloses  7: 4
disclosure  7: 3,
14: 13,  32: 20,
33: 11
discretion
24: 20,  25: 23,
25: 24,  26: 9,
26: 10,  26: 15,
26: 18,  30: 20
discussed  5: 13
discussing  3: 21
dismiss  3: 24,
9: 11,  19: 8,
24: 15
Dismissal  11: 3,
11: 17,  16: 10
dispositive
13: 17
disputed  20: 20
disputes  28: 23
disrupters  28: 2
distressed  16: 8
distribute
25: 19,  30: 8
distributed
28: 10
distribution
13: 8,  17: 9,
22: 22,  29: 14
distributions
11: 18
District  1: 1,
1: 2,  1: 22,
33: 23,  33: 24,
36: 8
divided  3: 17
Division  1: 3,
36: 9
DNO  9: 4,  9: 6,
16: 22,  17: 3,
17: 19,  18: 5,
25: 15,  26: 17,
27: 8,  27: 10,
27: 24,  28: 3,
28: 5,  28: 9
docket  14: 20
document  14: 23
documents

23:15,  23:24,
24:3,  24:19,
25:12,  28:15,
32:21
dollar 13:10,
20:12,  24:11,
24:13
dollars 24:9,
31:7,  31:9,
31:16,  33:2
Dondero 14:9,
27:15,  31:19,
32:4,  33:7
Douglas 2:10,
3:22,  10:4
down 7:22,  33:8
drafting 20:13
DRAPER 2:10,
2:11,  3:22,
8:2,  9:11,
10:3,  10:4,
11:8,  11:9,
11:10,  11:11,
11:15,  13:2,
13:19,  21:18,
21:21,  27:21,
33:7,  35:8
drukavina@munsc
h.com 2:8
due 23:24
Dugaboy 3:23,
13:5
duty 5:22,
33:18


< E >
earlier 30:25
easily 18:2,
29:8
economic 7:5
economics 8:7
effect 12:22,
30:5
effective
16:13,  16:22,
16:24,  17:7,
17:11,  17:12,
17:17,  17:18,
17:22,  18:23,

20:16,  26:7,
27:9,  27:13,
27:17,  33:6,
33:10,  33:17
effectively
16:10
effects 16:11
efforts 29:25
Eighth 11:6
either 10:25,
12:13,  16:11
elements 7:19,
7:23
eligible 4:18
Email 1:34,
2:8,  2:17
embarked 16:16
employed 10:10
employee 14:14
employees
12:13,  20:19
End 22:25,
34:20
enhance 18:12,
18:13
enjoin 32:10
enjoined 32:6,
32:7
Enormous 11:18
entered 14:10
entirely 30:9
entities 4:18,
4:22,  4:23,
14:9,  20:21,
22:2,  24:14,
25:6,  25:7,
29:24
entitled 25:8,
35:21
entity 21:3
Equitable 7:17,
10:9,  10:18,
10:19,  10:22,
11:2,  11:17,
12:1,  13:16,
14:2,  15:1,
15:4,  15:7,
15:13,  15:14,
15:18,  15:20,
16:10,  18:10

equitably 15:3,
19:8
equivalent 28:3
error 4:4,
14:16
essential 27:11
estate 16:4
estimation
33:12
et 1:11,  33:12,
33:24
evaluate 14:11
event 14:24,
15:22
everyone 31:17,
32:23
everything 7:7,
19:6
evidence 7:20
example 5:6,
7:5
exception 31:13
exculpations
33:8
Excuse 26:22
executed 28:15
execution 26:5,
26:6
exercise 5:24
exercised 26:11
exist 17:22
exit 18:8
expanded 23:7
expectation
12:7,  12:8
expectations
18:14,  19:12,
19:15,  20:1,
25:17,  27:4,
28:14,  30:2
expenses 23:1,
24:17,  25:7,
25:9,  25:20,
26:16,  27:3,
28:6,  30:8
experience 16:1
expert 8:19
express 4:9,
11:1
expressly 9:4,

10:22
extraordinary
14:8
extreme 7:2


< F >
facility 18:8
fact 9:3,  12:6,
12:7,  13:3,
18:4,  26:20,
27:2,  31:17,
34:5
factor 15:17,
15:21
factors 7:19
faithful 30:9
fall 12:2,  30:6
falls 13:12
fashion 11:20
fashioned 11:22
Fax 1:33,  2:16
Fed 11:16
Federal 33:23,
33:24
fees 35:24
few 10:6,  12:19
fiduciary 5:22,
18:19
Fifth 8:8,
10:17,  10:21,
11:1,  12:21,
12:24,  13:18,
15:1,  15:12,
23:10,  27:22,
28:20,  29:8,
30:18,  32:9
fight 32:12
filed 10:8,
12:23,  14:2,
14:13,  18:16,
31:22
final 9:23,
31:23,  33:3
finally 9:22
financial 16:1
find 8:11,
18:5,  32:18,
34:1,  34:4
findings 18:3

**First** 3:7, 4:1,
4:13, 6:21,
10:8, 12:19,
14:25, 15:5,
23:10, 23:25,
25:5, 26:1
**FITZWATER** 1:21
**Five** 9:13,
26:21, 26:23
**flexible** 7:17
**Floor** 1:30
**flow** 25:4,
25:18
**focusing** 14:1
**follow** 7:1,
18:1
**followed** 4:5
**footnote** 12:20,
12:23
**foregoing**
35:19, 35:20
**forgotten** 13:6
**format** 7:8,
35:24
**former** 20:18
**foul** 30:22,
30:23, 31:1,
31:2
**found** 15:14,
15:18, 16:5,
18:3, 25:13,
27:13, 29:8,
29:20
**four** 5:21, 7:6
**Fourth** 25:13
**fraud** 15:24
**freed** 28:11
**full** 3:12
**functional** 28:3
**FUND** 1:10,
24:14, 24:16,
25:6, 26:15,
27:3, 30:7
**fundamental**
6:23, 29:6
**fundamentally**
25:22
**funded** 24:9
**funding** 24:7
**funds** 5:2, 5:5,

5:7, 5:24,
6:18, 21:5,
22:10, 28:11
**future** 5:7,
28:23


< G >
**general** 21:3,
22:6, 22:8,
27:19
**generated**
21:13, 22:20
**give** 8:19
**given** 5:25,
26:18
**governing** 26:19
**governors** 7:18
**group** 22:24
**guarantee** 9:2,
16:25, 18:4
**GWI** 15:8


< H >
**half** 24:9,
24:10, 24:13
**hand** 5:5, 5:7
**handful** 20:18
**handle** 9:11
**handled** 32:20
**happen** 3:9
**happened** 21:17
**happening** 20:10
**harass** 16:17
**hard** 11:16
**Hardt** 2:3, 3:20
**harm** 19:2,
30:21, 30:23,
31:1, 31:2
**harmless** 4:4
**Harr** 2:3, 3:20
**HCFMA** 19:17
**hear** 5:10,
11:9, 13:23,
21:23, 30:14,
32:2
**hearing** 9:18,
31:3, 32:10
**heightened** 7:23

**held** 10:17
**Heller** 2:11
**Highland** 1:5,
1:9, 1:16, 3:4,
17:8
**highlight** 14:5
**hold** 5:19,
27:19
**home** 32:11
**HONORABLE** 1:21
**hope** 3:8, 6:18
**Horn** 2:11
**Hospital** 10:21
**housekeeping**
3:5
**HR** 9:16
**huge** 14:21
**Hunter** 9:15
**hypothetically**
6:15


< I >
**identified**
14:14
**iffy** 34:4
**impact** 7:5
**implement** 17:5,
25:2, 25:12
**implemented**
23:15
**implementing**
24:19
**important**
10:20, 20:25
**importantly**
5:9, 7:16,
9:20, 31:13
**impossible** 18:5
**inception** 24:10
**include** 23:8
**including** 26:14
**incorrect** 15:3
**increased** 8:25,
13:14
**increases** 13:9
**indemnification**
4:18, 5:1, 5:3,
5:19, 5:20,
6:1, 8:16,

8:25, 9:2, 9:3,
12:8, 12:14,
17:1, 17:16,
17:21, 18:4,
20:1, 20:23,
23:20, 24:2,
24:7, 24:8,
25:2, 31:5,
31:7
**indemnified**
23:7, 23:8
**indemnify** 4:24,
5:16, 6:7, 6:17
**indemnifying**
4:14, 5:15,
6:3, 6:4
**indemnity**
11:24, 17:6,
17:7, 17:10,
18:17, 18:18,
18:20, 19:10,
20:13, 23:3,
23:7, 23:14,
23:16, 23:17,
23:22, 23:23,
24:2, 25:1,
25:15, 25:23,
26:1, 26:2,
26:3, 26:5,
26:7, 26:8,
27:25, 28:3,
28:4, 28:11,
28:12, 28:13,
30:1, 30:9
**independent**
20:15
**INDEX** 34:21
**individually**
9:9
**influence** 27:1
**influenced**
26:19
**injunction**
31:24, 33:8
**injunctions**
33:3
**insiders** 12:16
**insolvent** 29:16
**instruct** 6:12
**insurance** 9:4,

9:6, 12:8, 17:19, 25:15, 27:10, 27:15, 27:24, 28:5, 28:22, 28:25, 29:5, 29:7
**intensified** 17:18
**interest** 7:7, 13:2, 13:5, 13:10, 13:13, 19:14, 32:25, 33:1
**interfering** 5:11
**internally** 9:15
**interrupt** 3:10, 3:14
**investors** 31:15
**involve** 18:10
**involved** 32:9
**issue** 8:20, 11:5, 13:18, 14:7, 14:22, 15:16, 27:8, 34:17
**issued** 14:7
**issues** 12:19
**it--** 6:8
**items** 10:6
**itself** 6:3, 33:5

< J >
**J.** 2:39, 35:19, 36:4, 36:6
**James** 19:16, 29:24, 32:3, 32:4
**JEFFREY** 1:27
**jeopardize** 17:24, 18:9
**jeopardizing** 19:2
**Jernigan** 14:7
**Joint** 29:13
**Jones** 1:28, 10:9
**jpomerantz@pszj**

**law.com** 1:34
**Judge** 1:22, 10:9, 14:7, 33:24
**judgment** 5:24, 7:18
**Judicial** 35:25
**junior** 19:22
**jurisdiction** 4:7
**jurisdictional** 33:25

< K >
**key** 8:14, 17:14, 25:17
**knowledge** 16:4
**known** 9:13, 32:22
**knows** 7:7
**Kopf** 2:3, 3:20

< L >
**LA** 2:14
**land** 16:8
**largely** 14:4
**last** 11:5, 25:16, 33:13
**Lastly** 15:17
**later** 8:6
**LAW** 3:13, 5:21, 6:12, 6:22, 6:24, 23:4, 28:17, 29:10, 34:1
**lawsuit** 31:23
**lawsuits** 31:22
**leading** 28:18
**leave** 12:4, 34:11
**legal** 4:21, 25:24, 26:3, 27:5
**legitimate** 27:25
**length** 7:5, 8:3
**letter** 6:22
**lieu** 25:15

**likely** 7:12, 18:8
**limit** 12:10, 15:13
**limited** 21:1, 21:2, 22:6, 22:7, 23:22, 24:5
**Line** 35:4
**link** 33:13, 34:10
**liquidation** 15:15
**liquidations** 15:14
**listen** 32:3
**litigants** 32:13
**litigating** 30:21, 31:17
**litigation** 4:22, 5:4, 6:5, 6:8, 6:16, 8:5, 8:6, 15:15, 16:16, 17:18, 18:1, 21:9, 21:12, 21:13, 21:14, 22:14, 22:17, 22:18, 22:21, 23:9, 23:21, 23:25, 24:4, 24:11, 24:16, 26:16, 27:16, 28:23, 31:14, 31:18
**litmus** 15:18
**little** 4:25
**LLP** 1:28
**logical** 31:12
**logistical** 4:24
**longer** 17:22
**look** 10:15, 11:6, 11:15, 11:16, 11:23, 12:1, 12:20, 13:16, 32:18
**looking** 33:8
**Los** 1:31
**lose** 3:7, 11:11
**loses** 17:16
**losing** 19:1

**lost** 6:9, 10:7, 11:8, 21:15, 21:24, 31:25
**loyalists** 20:20
**Lumber** 10:9

< M >
**majority** 21:7, 22:12
**maligned** 32:2
**managed** 16:10
**Management** 1:6, 1:10, 1:17, 3:4, 15:23, 16:24, 17:10, 17:15, 17:23, 18:8, 18:22, 19:1, 21:5, 22:10, 27:13
**managers** 17:14, 18:6, 20:15, 27:11
**managing** 16:1
**mandatory** 31:24
**Manges** 15:14, 16:11
**Marathon** 33:20
**Marshall** 33:21
**master** 4:23
**materially** 17:24
**mathematical** 13:11
**mathematics** 13:7
**matter** 3:3, 4:2, 4:3, 5:23, 6:1, 10:12, 23:16, 31:2, 32:14, 35:21
**matters** 3:5
**Mckenzie** 23:10
**mean** 7:23
**meantime** 8:23
**mechanical** 2:47
**mechanism** 7:2, 23:23, 29:14, 30:24
**meet** 16:13

members 18: 1
mention 14: 15,
27: 8
mentioned 7: 6
mentioning
11: 12
merely 33: 12
merits 14: 2,
19: 10,  20: 23,
23: 2,  23: 6,
32: 5
message 21: 21
microphone
21: 22
million 5: 6,
5: 20,  6: 2,
6: 18,  8: 21,
8: 23,  9: 23,
13: 7,  13: 8,
19: 18,  19: 21,
24: 9,  24: 10,
24: 13,  31: 7
millions 31: 9,
33: 2
minimal 11: 20
minute 6: 12,
19: 13,  33: 15
minutes 10: 3,
13: 1,  22: 4,
23: 4,  26: 21,
26: 23,  29: 10
miracle 18: 25
miraculously
14: 19
mischaracterize
s 23: 14
mismanagement
15: 24
Mistake 18: 2
modification
4: 10,  6: 20,
7: 2,  7: 10,
7: 12,  8: 1,  8: 3,
8: 9,  8: 12,  9: 7,
19: 11,  25: 17,
27: 7,  28: 19,
29: 9,  29: 21,
32: 20
modifications
4: 9,  10: 12

modified 28: 14,
28: 21,  29: 6
modify 6: 24,
6: 25,  29: 18,
30: 4
monetization
15: 22,  21: 10,
22: 16,  25: 20
monetize 18: 7
money 6: 6,  6: 8,
6: 16,  26: 17
Monica 1: 29
months 14: 20,
17: 20
moot 15: 3,  19: 9
mootness 10: 9,
10: 19,  11: 2,
11: 17,  12: 2,
12: 18,  13: 17,
14: 2,  14: 3,
15: 1,  15: 4,
15: 7,  15: 13,
15: 14,  15: 18,
15: 20,  16: 10,
18: 10
morning 3: 19,
13: 22,  14: 1
motion 7: 16,
8: 18,  8: 20,
14: 2,  14: 3,
23: 18
motions 3: 24,
9: 11
motivation 19: 3
movements 10: 22
MR. POMERANTZ
13: 22,  13: 25,
21: 23,  22: 1,
22: 5,  26: 22,
26: 25
MR. RUKAVINA
3: 19,  4: 19,
6: 14,  21: 17,
30: 14,  30: 17,
33: 16
multifactor
7: 17
multiple 14: 15,
31: 22,  33: 10
Munsch 2: 3,

3: 20
muted 21: 18,
21: 20


< N >
N.  1: 27
name 14: 14,
18: 16
narrow 10: 11
nature 19: 13
necessary 18: 6,
28: 6
need 3: 8
needed 3: 15
needs 5: 8
negative 9: 19
neither 15: 20,
23: 16
net 25: 9,  25: 19
New 2: 14,  5: 14,
8: 15,  9: 7,
24: 2,  31: 3
Nexpoint 9: 12,
9: 13,  9: 14,
14: 8,  14: 13,
19: 15,  19: 16
next 10: 20
none 20: 21
nonstop 32: 2
Nor 30: 4,  30: 22
Northern 1: 2,
33: 20,  36: 8
note 5: 6,
24: 11,  24: 13,
24: 14,  32: 17
nothing 25: 13,
29: 12,  29: 23
notice 9: 19,
31: 24
notion 31: 9
notions 34: 5
notwithstanding
27: 21
Number 10: 16,
10: 24,  12: 11,
13: 5,  34: 3


< O >

objected 18: 21,
20: 21,  29: 5
objection
28: 22,  29: 8
objections 20: 7
objects 27: 18
obligated 4: 24
obligation 5: 7,
24: 16,  24: 20,
25: 24,  26: 3
obligations
19: 12,  23: 17,
23: 20,  24: 2,
24: 3,  25: 2,
28: 4,  28: 14,
29: 17
obtained 27: 24
obtaining
16: 22,  27: 9
obviously 3: 8
occurs 3: 9
offensive 31: 18
Official 36: 7
Offshore 15: 16,
15: 20
Okay 4: 5,
11: 10,  11: 15,
22: 5,  26: 25
once 34: 14
One 10: 8,
10: 23,  13: 3,
14: 5,  18: 20,
31: 12,  31: 23,
33: 15
one-off 34: 6
onslaught
16: 16,  17: 18,
27: 16,  31: 14
operating 16: 7
opinion 11: 7,
34: 2,  34: 3
opposed 15: 14
option 17: 19,
17: 20
ORAL 1: 20,  3: 1,
3: 4,  35: 1,  35: 4
order 4: 17,
5: 15,  9: 18,
9: 23,  10: 13,
10: 14,  10: 23,

10:24, 10:25,
12:12, 14:8,
14:11, 15:3,
15:6, 16:12,
16:19, 17:12,
17:25, 18:3,
18:22, 19:11,
20:14, 23:17,
26:2, 26:9,
28:2, 30:1,
31:10, 33:6,
33:9
orders 10:23,
15:7, 15:8,
33:10
organizations
15:13
original 6:16
originally
4:21, 4:24,
7:11, 11:24
Orleans 2:14
others 31:5
otherwise 28:6
ought 8:12
outsiders 12:16
oversight 18:1,
26:4, 26:10,
26:14, 27:3
owe 33:1
own 4:24, 5:5,
6:18
owned 19:16,
19:17
owner 22:8


< P >
Pachulski 1:28
Pacific 10:9
Pack 15:8
Page 35:4
paid 8:8, 10:1,
13:9, 19:21,
19:22, 19:24,
20:1, 23:1,
25:9
pam_wilson@txnd
.uscourts.gov
2:40

PAMELA 2:39,
35:19, 36:6
papers 10:8,
11:14, 12:20
paradigm 18:15
part 32:19
participated
20:13
parties 7:7,
11:24, 12:13,
14:11, 16:12,
18:14, 19:12,
28:18, 29:17,
32:25, 33:1
partner 21:2,
21:3, 22:8,
22:9
partnership
21:2, 22:7,
23:22, 24:5
party 6:25,
23:18, 33:22
Pause. 6:10
pay 28:11
payment 25:19,
28:8, 28:9,
29:18
PC 2:3
pecuniary
12:22, 13:2,
13:5, 13:10
people 5:16,
6:3, 12:6,
23:7, 23:8
percent 18:24,
20:11
perhaps 21:19
permanent 33:3,
33:8
person 21:11,
22:16, 27:23
personnel 6:7,
6:17
picked 11:25
picking 12:17,
32:12
Pipeline 33:20
pivoted 17:4
place 12:4
planned 15:6

plans 8:17,
33:11
pleading 12:23
pleadings 10:7,
23:13
please 3:25
point 3:7,
5:18, 5:25,
7:10, 9:12,
14:5, 32:23,
33:20
POMERANTZ 1:27,
13:21, 21:16,
21:19, 23:5,
29:11, 30:12,
32:16, 35:10
portion 6:19,
34:12
positions 14:12
possible 5:20
Post 16:24,
17:18, 17:19,
29:16
post-confirmati
on 16:24, 20:9,
20:24, 25:7,
27:13, 29:3,
29:15
post-effected
25:6
potential 5:25
potentially
8:21, 28:10
Poydras 2:12
Prairie 15:19
prayer 28:14
precedent 9:4
preconfirmation
22:25
premise 26:8
premiums 28:9
prescribed 7:1,
35:25
preserve 24:18,
28:6
pressing 21:18
pretty 8:11,
13:11
principal 23:3,
23:6

principals 25:4
principle 30:10
prior 28:21
priority 29:14,
29:18
probably 9:25,
10:20
problem 8:9,
32:19
problematic
11:21
procedure 4:3,
4:5
proceed 3:18
proceeded 7:14,
7:25
Proceedings
2:47, 7:13,
35:20
proceedings.
34:20
proceeds 7:21,
21:13, 22:19,
22:23, 25:9,
25:18, 25:19,
30:6
process 25:20,
30:1, 34:14
produced 2:48
products 16:8
professional
16:3
professionals
4:25, 8:25,
31:11
prohibited 8:10
prohibits 25:14
projected 19:22
promissory 5:6,
32:17
properly 32:7
proposition
15:9
prosecuted 6:8
prosecution
21:10, 22:15
protect 17:1,
20:15
protecting
18:22, 19:5

protection
17: 16,  27: 12
proven 7: 20
provide 8: 6,
23: 19,  24: 19
provided 8: 5,
28: 23
provides 30: 23
provision 29: 6
provisions
11: 1,  23: 15,
24: 18,  25: 4
public 32: 22
pull 17: 23
purpose 23: 19
purposes 5: 3,
32: 15
pursued 21: 12,
22: 18

< Q >
question 5: 14,
6: 19,  8: 15,
24: 6
questioned
14: 16
questioning
30: 25
questions 4: 12,
4: 20,  14: 4,
34: 12
quick 10: 6
quickly 16: 9,
33: 18
quit 31: 11
quo 17: 13,
17: 14
quoted 33: 21
quoting 31: 14

< R >
ran 6: 7
Rather 24: 2,
27: 16
RE 1: 5,  3: 3
real 13: 5,
24: 6,  31: 13
really 4: 17,

10: 15,  19: 14,
27: 24
reason 17: 21,
20: 17,  27: 23
reasonably 7: 8
reasons 25: 25
Rebuttal 13: 20,
30: 13
recent 11: 6,
33: 21
recently 9: 14,
9: 17
recess 34: 19
recognized
18: 22
reconstituted
21: 1
record 31: 11,
32: 14,  32: 16,
33: 5,  35: 20
recovered 28: 10
reduced 13: 12
reengage 21: 22
regulatory
21: 6,  22: 11
reinstate 17: 13
reinstatement
17: 14
reiterate 4: 1
reject 7: 12
rejected 7: 11,
7: 22,  8: 1,
15: 20,  20: 18,
30: 18
related 14: 9,
20: 21,  21: 6,
22: 10,  29: 24
relating 25: 20
relationship
27: 5,  30: 5
relationships
14: 10
releases 33: 9
relied 29: 7
relief 11: 20,
11: 22,  16: 13,
17: 12
rely 17: 10
remain 13: 1,
26: 21,  26: 24,

29: 10,  34: 10
remained 17: 8,
22: 9
remaining 21: 7,
22: 12,  23: 4,
30: 8
remains 33: 15
remember 32: 18
removed 8: 21
reorganize
26: 16
reorganized
4: 22,  16: 3,
21: 1,  21: 4,
21: 14,  22: 9,
22: 20,  23: 9,
23: 22,  24: 1,
24: 5,  24: 12,
24: 18,  28: 7
repaid 5: 8
replaced 18: 2
replacement
18: 6
reply 5: 13,
14: 2
reported 2: 47
Reporter 2: 39,
3: 8,  5: 12,
34: 11,  36: 7
represent 31: 15
representatives
16: 18
representing
20: 11,  32: 7
represents 3: 23
required 9: 6,
15: 10
requires 9: 20,
15: 23
requiring 14: 8,
27: 6
reserve 5: 2,
5: 4,  9: 21,  27: 3
reserved 13: 20,
25: 9
reserves 4: 14,
24: 16,  25: 6,
25: 23,  26: 15,
26: 17,  28: 5,
30: 8

reserving 5: 7,
5: 24
resign 17: 25,
31: 6
resolve 18: 11,
28: 22
resolved 5: 21,
28: 23,  29: 5,
29: 19
respect 15: 1
Respectfully
31: 1
responsible
5: 15,  5: 16
restructuring
16: 2,  29: 20,
30: 1
result 15: 24,
18: 7,  29: 1
resulted 16: 18
retained 21: 5,
22: 9,  26: 10
return 6: 20
Reversal 17: 23
reversed 17: 25
reverses 17: 15
reversing 31: 10
review 33: 24,
34: 1
revolve 4: 20
rights 16: 11,
17: 1,  17: 16,
17: 21,  18: 5,
18: 11,  18: 12,
18: 13,  19: 5,
19: 12,  25: 22,
28: 14,  30: 4,
31: 7,  31: 20,
31: 21
RMR 2: 39,  36: 6
roadblock 29: 25
roles 16: 25
Room 2: 41
rug 17: 23
RUKAVINA 2: 2,
3: 20,  35: 6,
35: 12
Rule 9: 19,
31: 20
ruled 24: 25

ruling 34:17

< S >
s/pamela 36:4
safeguards 7:3
sale 10:25
sanctioned
31:19, 32:4
Santa 1:29
satisfied 23:25
satisfy 23:23,
29:15, 29:17
saying 6:15,
32:3, 32:4
says 12:21,
13:7, 33:22,
34:5
scalpel 10:10,
11:23, 12:9
scheme 29:19
scope 10:11
seated 26:12
Second 4:16,
7:10, 15:12,
25:8, 29:13,
29:19, 34:2,
34:3, 34:4
Section 4:9,
7:18, 24:4,
24:23, 31:21
secure 28:4
securitize 25:1
security 17:20,
23:19
seed 6:8
Seery 15:25,
16:17, 16:23,
17:24, 21:8,
22:13, 27:11,
31:4
self-insurance
17:5, 25:14,
27:18
self-insure
27:17
senior 28:7
separate 10:14
separated
21:10, 22:15

serious 15:24
seriously 18:9
serve 27:12
set 25:23,
31:6, 31:8
settlement 29:3
settlements
29:1
several 25:4,
31:6
sheet 23:18
Shipbuilding
10:21
shouldn't 32:14
sic 19:17
side 13:17
SIDNEY 1:21
sign-off 34:15
signed 32:21
significantly
19:2
similar 16:2
Simple 13:7,
15:19
simply 16:25,
17:12, 32:5
single 8:19
six 17:19,
31:24
sixth 9:14
Skull 15:8
slight 8:11
Sneed 10:21,
11:2, 15:8,
15:9
somehow 21:18
Someone 4:4,
5:10
Sometimes 34:13
soon 19:19
sophisticated
15:23
sophistication
18:6
Sorry 22:5,
33:7
sought 17:5,
31:24
sound 6:9,
11:8, 21:15,

30:22
specific 12:8
specifically
20:7
spend 19:13
spent 26:17
St 2:4
stand 14:4,
34:19
standard 14:25
standing 9:20,
13:18, 14:6,
14:11, 14:16,
14:25, 19:7,
27:23, 33:4,
33:14, 34:4
stands 15:9
Stang 1:28
stark 29:21,
29:22
started 11:13
state 6:22
statement 7:4,
14:22, 32:20,
33:11
States 1:1,
1:22, 23:18,
35:26
status 17:13,
17:14
statutory 18:19
Ste 2:5
stenography
2:47
Stern 33:21
stop 3:8
Street 2:12,
2:41
Stripped 18:4,
19:3
stripping 31:4
structure
20:24, 22:2,
25:16
structured 16:8
subject 33:2
submission
34:16
submit 33:18
subsidiary

21:4, 22:8
substance 3:22,
4:2, 4:6, 4:8,
7:24
substantial
10:16, 10:18
substantially
11:19
substituting
9:6
subtrust 4:15,
4:22, 5:19,
8:16, 17:25,
21:9, 21:12,
22:14, 22:17,
22:21, 23:9,
23:21, 24:1,
24:11, 24:16
subtrustee 18:1
success 16:6,
16:13, 18:9,
18:14, 19:2
successful
18:11
sued 6:22
sufficient
27:22
suit 18:2
Suite 2:13
summer 16:15
Superior 15:16,
15:19
supervise 33:19
support 14:25,
28:16, 28:19
supported
18:20, 18:21,
20:12, 20:14,
28:15, 28:16,
31:11
supporting
23:20, 25:12
Supreme 33:21,
33:22
switching 30:21
symbiotic 22:24
system 33:25

< T >

talked 22:6
technical 3:10
tells 7:6
ten 14:20
tens 33:1
terminated 20:19
terms 25:12, 32:17
test 7:18, 13:9, 13:10, 13:11, 15:18
Texas 1:2, 1:11, 2:42, 5:21, 15:19, 36:8
themselves 31:9
thereby 27:6
Third 7:16, 25:11
third-party 12:11, 21:5, 22:10
Though 10:11, 13:6, 27:14
thousands 31:15
threatened 5:25
threats 27:16
three 4:21, 10:15, 22:2
threshold 23:16
throughout 14:6
throw 29:25
tied 8:24
timing 29:18
together 22:19, 22:23
took 26:9, 30:24
totality 9:9
Track 23:11
tradiitional 34:5
TRANSCRIPT 1:20, 2:48, 35:20, 35:24
transferred 14:20, 14:23, 21:7, 21:12, 22:13, 22:17

transformed 25:24
transitioning 22:3
Transportation 23:11
treatment 12:4, 30:2, 30:5
trial 8:5, 9:24, 31:23
tried 19:19, 20:9, 29:4
TRO 16:18, 16:20
true 8:22, 12:22
trusted 31:16
trustee 5:23, 12:24, 16:4, 21:8, 21:13, 22:14, 22:18
trusts 8:17
truth 12:1
trying 18:11
turn 8:22, 20:23, 23:18
turned 11:14
Turning 19:10, 23:2, 23:6
Two 3:20, 3:23, 7:23, 10:15, 10:20, 10:22, 10:24, 12:2, 12:11, 13:1, 13:5, 22:4, 24:9, 25:25, 29:10, 31:15
TX 2:6
tying 6:1
types 10:23
typing 5:10

< U >
understand 10:12
understanding 5:1
undeveloped 16:7

undo 20:9
unfortunately 27:14
unilaterally 6:24, 6:25, 8:13
unique 16:8
United 1:1, 1:22, 35:26
universe 4:17
unless 14:4, 26:3
unquestionably 18:12
unsecured 18:16, 18:18, 18:19, 18:24, 19:3, 19:5, 19:22, 20:3, 20:12, 20:17, 27:19, 30:3
until 5:20, 9:14, 9:22, 26:4
unwilling 16:25
uphold 11:17
upstream 22:24, 30:7
upstreamed 22:21, 22:25
urge 8:18

< V >
v. 33:21
value 16:9, 24:18, 28:7
Various 23:24, 24:18
Veroblue 11:7, 11:12, 11:13, 11:16
vexatious 32:13
VIA 1:20, 3:1
violating 16:19
violation 9:19
virtually 11:19
virtue 11:1
vital 16:5
void 18:7

Voiding 19:1
voted 7:10
votes 20:18
VS 1:14

< W >
wait 11:19
waivable 27:14
waive 9:5
waived 9:5, 23:12, 23:13
Walker 10:21, 11:2
wanted 21:10, 22:15
warnings 3:13, 3:15
welcome 34:14
well-written 11:7
Whatever 32:5
Whether 13:10, 14:11, 24:6, 26:15, 31:2, 33:13
whole 32:23, 33:19
whom 5:16, 6:3, 20:21
will 3:8, 3:9, 3:11, 3:23, 9:11, 10:6, 14:1, 16:9, 17:20, 17:22, 17:23, 17:24, 18:12, 19:2, 19:18, 19:21, 19:23, 24:14, 31:6, 31:10, 31:11, 33:24, 34:17, 34:19
WILSON 2:39, 35:19, 36:4, 36:6
withdraw 14:18
withdrawing 29:7
withdrew 20:6
within 27:4

**without** 9:18,
16:25, 17:8,
18:5, 21:18,
27:12, 27:13,
33:9
**word** 18:25
**words** 18:25,
28:1
**work** 16:2,
20:20, 21:22,
22:19, 22:23,
33:25


< Y >
**years** 5:21,
6:2, 7:6, 8:23
**yesterday** 34:2
**yield** 10:2


< Z >
**zero** 8:22
**Ziehl** 1:28
**ZOOM** 1:20, 3:1,
10:5

1
2
3                    C E R T I F I C A T I O N
4
5
6       I, PAMELA J. WILSON, CSR, certify that the foregoing is a
7   transcript from the record of the proceedings in the
8   foregoing entitled matter.
9
10
11      I further certify that the transcript fees format comply
12   with those prescribed by the Court and the Judicial
13   Conference of the United States.
14
15
16      This the 15th day of March, 2022.
17
18
19
20
                              s/Pamela J. Wilson
21                            _____
                              PAMELA J. WILSON, RMR, CRR
22                            Official Court Reporter
                              The Northern District of Texas
23                                 Dallas Division
24
25